

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**
L.M. BOCCIGNONE

**DEFENDANTS**
SUTTER HEALTHCARE (MILLS PENINSULA HEALTH SERVICES), BARBARA "BOBBI" FOSTER, CLAUDIA CHRISTENSEN and DOES 1-97

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF San Mateo
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT San Mateo
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robert H. Gold
Gold & Associates LLP
235 Montgomery Street
Suite 747
San Francisco, CA 94104

ATTORNEYS (IF KNOWN)
Maureen E. McClain (SBN: 062050) Email: mcclain@kmm.com
Rossana S. Eltanal (SBN: 221145) Email: eltanal@kmm.com
Kauff McClain & McGuire LLP
One Post Street, Suite 2600
San Francisco, CA 94104      Tel: (415) 421-3111

**II. BASIS OF JURISDICTION** *(PLACE AN "X" IN ONE BOX ONLY)*

- [ ] 1. U.S. Government Plaintiff
- [ ] 2. U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** *(PLACE AN "X" IN ONE BOX ONLY)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury -Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers Liability | **PERSONAL PROPERTY** | [ ] 640 RR & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 650 Airline Regs | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Satellite TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [X] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing | [ ] 535 Death Penalty | | [ ] 871 IRS-Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | [ ] 445 Amer w/ disab - Empl | [ ] 555 Prison Condition | | | |
| | [ ] 446 Amer w/ disab - Other | | | | |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Section 301 of the Labor Management Relations Act of 1974 and the Employment Retirement Income Security Act of 1974 preempts Plaintiff's state law employment claims.

**VII. REQUESTED IN COMPLAINT:** [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $     CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES [ ] NO

**VIII. RELATED CASE(S) IF ANY** PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)   [X] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE

DATE
December 11, 2007

SIGNATURE OF ATTORNEY OF RECORD
ROSSANA S. ELTANAL

1    MAUREEN E. MCCLAIN (State Bar No. 062050)
     Email: mcclain@kmm.com
2    ROSSANA S. ELTANAL (State Bar No. 221145)
     Email: eltanal@kmm.com
3    KAUFF MCCLAIN & MCGUIRE LLP
     One Post Street, Suite 2600
4    San Francisco, California  94104
     Telephone:    (415) 421-3111
5    Facsimile:    (415) 421-0938

6    Attorneys for Defendants
     MILLS-PENINSULA HEALTH SERVICES,
7    SUTTER HEALTH, BARBARA FOSTER, AND
     CLAUDIA CHRISTENSEN

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12   L.M. BOCCIGNONE,                    CASE NO. _____
                                         (San Mateo County Court Case No.
13                  Plaintiff,           CIV 460718)

14   v.                                  PROOF OF SERVICE RE
                                         DEFENDANTS' NOTICE OF
15   SUTTER HEALTHCARE (MILLS            REMOVAL
     PENINSULA HEALTH SERVICES),
16   BARBARA "BOBBI" FOSTER, CLAUDIA     SECOND AMENDED
     CHRISTENSEN and DOES 1-97,          COMPLAINT FILED:   November 14, 2007
17                                       TRIAL DATE:        No date set.
                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

PROOF OF SERVICE RE DEFENDANTS' NOTICE OF REMOVAL          (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

## PROOF OF SERVICE BY HAND DELIVERY

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One Post Street, Suite 2600, San Francisco, California 94104. On **December 11, 2007**, I served a true and correct copy of the within documents:

1. **DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF INTERESTED PATIES**

2. **DECLARTION OF CLAUDIA CHRISTENSEN IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL**

3. **CIVIL COVER SHEET**

3. **JOINDER IN NOTICE OF REMOVAL OF ACTION**

on the interested parties in said action by placing true and correct copies in a sealed envelope and giving it into the care of **Freewheelin' Attorney Services** for same-day hand delivery to the parties as follows:

> **Robert H. Gold**
> **Gold & Associates**
> **235 Montgomery Street, Suite 747**
> **San Francisco, CA 94104**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **December 11, 2007**, at San Francisco, California.

_Kimberley Byars_
KIMBERLEY BYARS

4814-7714-1762.1

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

PROOF OF SERVICE RE DEFENDANTS' NOTICE OF REMOVAL

(SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1  Dennis D. Strazulo, Esq. (SBN 124695)
   Email:dstrazulo@strazlaw.com
2  Nancy McCoy, Esq. (SBN 184983)
   Email:nmccoy@strazlaw.com
3  STRAZULO FITZGERALD, LLP
   One Sansome Street, Suite 3500
4  San Francisco, California 94104
   Telephone: (415) 394-9500
5  Facsimile: (415) 934-9501

6  Attorneys for Defendant
   BARBARA FOSTER

7

8                    UNITED STATE DISTRICT COURT              **CRB**

9                  NORTHERN DISTRICT OF CALIFORNIA

10  L.M. BOCCIGNONE,                    CASE NO.:
11                                      (San Mateo County Court Case No.
        Plaintiff,                      CIV 460718)
12
        v.                              **JOINDER IN NOTICE OF REMOVAL
13                                      OF ACTION**
    SUTTER HEALTHCARE (MILLS
14  PENINSULA HEALTH SERVICES),         **Second Amended**
    BARBARA "BOBBI" FOSTER, CLAUDIA     **Complaint Filed: November 14, 2007**
15  CHRISTENSEN and DOES 1-97,          **Trial Date:** No date set

16      Defendants.

17

18

19      Defendant BARBARA FOSTER hereby joins in Defendants MILLS PENINSULA

20  HEALTHCARE SERVICES, SUTTER HEALTH, and CLAUDIA CHRISTENSEN's Notice of

21  Removal to this Court of the state court action described in the said Notice of Removal.

22
23  Date: December 11, 2007            STRAZULO FITZGERALD, LLP
24
25                                     By _____
26                                        Dennis D. Strazulo
                                          Nancy L. McCoy
27                                        Attorneys for Defendant BARBARA FOSTER

28

4698                            -1-
            JOINDER IN NOTICE OF REMOVAL ACTION

1   MAUREEN E. MCCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   JEFFREY D. POLSKY (State Bar No. 120975)
    Email: polsky@kmm.com
3   ROSSANA S. ELTANAL (State Bar No. 221145)
    Email: eltanal@kmm.com
4   KAUFF MCCLAIN & MCGUIRE LLP
    One Post Street, Suite 2600
5   San Francisco, California 94104
    Telephone:   (415) 421-3111
6   Facsimile:   (415) 421-0938

7   Attorneys for Defendants
    MILLS-PENINSULA HEALTH SERVICES,
8   SUTTER HEALTH AND CLAUDIA CHRISTENSEN

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12

13   L.M. BOCCIGNONE,                   CASE NO. _____
                                        (San Mateo County Court Case No.
         Plaintiff,                     CIV 460718)
14
     v.                                 **DEFENDANTS' NOTICE OF
15                                      REMOVAL AND CERTIFICATION
                                        OF INTERESTED PARTIES**
16   SUTTER HEALTHCARE (MILLS
     PENINSULA HEALTH SERVICES),        **28 U.S.C. §§ 1331 & 1441(b)**
17   BARBARA "BOBBI" FOSTER, CLAUDIA    (Federal Question Jurisdiction)
     CHRISTENSEN and DOES 1-97,
18                                      SECOND AMENDED
         Defendants.                   COMPLAINT FILED:   November 14, 2007
19                                     TRIAL DATE:        No date set.

20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
  MCGUIRE LLP
 ONE POST STREET
   SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF        CASE NO. _____
INTERESTED PARTIES                                       (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1    TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2    PLEASE TAKE NOTICE that Defendants Mills-Peninsula Health Services

3    ("MPHS"), Sutter Health[1] and Claudia Christensen hereby remove to this Court the state

4    court action described below and filed by Plaintiff L.M. Boccignone ("Plaintiff"). The

5    statutory basis for removal is federal question jurisdiction pursuant to 28 U.S.C. §§ 1331,

6    and 1441(b).

7        1.    On February 5, 2007, an action was commenced in the Superior

8    Court of California in and for the County of San Mateo, entitled <u>Lisa Maria Boccignone,</u>

9    <u>In Pro Per v. Bobbi Foster and Does 1-100</u>, Case No. CIV 460718. True and correct

10   copies of the summons and complaint are attached as **Exhibit A**. Plaintiff filed an

11   amended complaint, entitled <u>Lisa Maria Boccignone v. Bobbi Foster, Mills Peninsula</u>

12   <u>Health Service, Sutter Healthcare, Claudia Christensen and Does 1-97</u>, on July 31,

13   2007. A true and correct copy of the amended complaint is attached as **Exhibit B**. On

14   November 14, 2007, Plaintiff filed a second amended complaint, entitled <u>L.M.</u>

15   <u>Boccignone v. Sutter Healthcare (Mills Peninsula Health Services), Barbara "Bobbi"</u>

16   <u>Foster, Claudia Christensen and Does 1-97</u> (the "Complaint"). A true and correct copy of

17   the Complaint is attached as **Exhibit C**.

18       2.    Pursuant to 28 U.S.C. § 1446(a), true and correct copies of other all

19   pleadings, process and orders served on Defendants are attached as **Exhibit D**.

20       3.    Plaintiff personally served all Defendants with the Complaint on

21   November 14, 2007. Service was therefore complete as of that date.

22       4.    This Notice of Removal and Certification of Interested Parties Action

23   is being filed within 30 days of Defendants' initial receipt of the Complaint and is

24   therefore timely under 28 U.S.C. 1446(b). <u>Murphy Bros., Inc. v. Michetti Pipe Stringing,</u>

25   <u>Inc.</u>, 526 U.S. 344, 354 (1999); <u>Big B Automotive Warehouse Distrs., Inc. v. Cooperative</u>

26

27

28   [1] Plaintiff erroneously names Sutter Health and MPHS as a single entity, Sutter Healthcare (Mills Peninsula Health Services) in the Second Amended Complaint.

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 2 -

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF
INTERESTED PARTIES                          (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1    Computing, Inc., 2000 U.S. Dist. LEXIS 16363, *5-*6 (N.D. Cal. 2000). No Defendant

2    has yet appeared in the state court action.

3          5.    Jurisdiction: This action is a civil action of which this Court has

4    original jurisdiction pursuant to 28 U.S.C. § 1331. This action may be removed to this

5    Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b). Specifically,

6    Plaintiff's claims arise under Section 301 of the Labor Management Relations Act of

7    1974 ("LMRA") [29 U.S.C. § 185]. Furthermore, Plaintiff's claims relate to the

8    Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et

9    seq.

10          6.    Because of the Court's federal question jurisdiction, removal is

11    proper "without regard to the citizenship or residence of the parties." 28 U.S.C.

12    § 1441(b).

13          7.    Section 301 of the LMRA preempts all state law claims whose

14    outcome depends on an analysis of the express or implied terms of a collective

15    bargaining agreement. Cook v. Lindsay Olive Growers, 911 F. 2d 233, 237 (9th

16    Cir.1990); Young v. Anthony's Fish Grottos, Inc., 830 F. 2d 993, 997 (9th Cir.1987).

17          8.    Throughout her employment with Defendant MPHS, Plaintiff was

18    covered by a collective bargaining agreement ("CBA") in effect between MPHS and her

19    union representative, the California Nurses Association ("CNA"). (Declaration of Claudia

20    Christensen in Support of Defendant's Notice of Removal at ¶ 2, Exhibits 1 and 2.).

21          9.    One of Plaintiff's claims in the Complaint is that Plaintiff was fired

22    "without just cause". (Compl. at ¶¶ 75-77 (Ninth Cause of Action).) Plaintiff also claims

23    that MPHS "ignored" the union agreement in terminating her. (Compl. at ¶ 74.) The

24    CBA in effect at the time of Plaintiff's termination contains a provision that

25    termination of any RN who has been employed longer than a three to six month

26    introductory period is subject to the CBA grievance procedure to determine if just cause

27    existed for the termination. (Christensen Decl. at ¶ 3, Exhibit 2 (Article 25).) Article 26 of

28

- 3 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF
INTERESTED PARTIES                    (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1  the CBA also sets forth the grievance procedure which culminates in a final and binding

2  arbitration at Step 5 of the procedure. (Id.)

3        10.  CNA was notified of the decision to terminate Plaintiff on the date of

4  her termination. (Christensen Decl. at ¶ 4.) While CNA initially submitted a grievance

5  contending that Plaintiff's termination was not for just cause, the Union dropped the

6  grievance by not timely moving it through the steps of the CBA. (Id., Exhibit 3, 4.)

7  Additionally, Plaintiff took no steps to present any grievance concerning her termination

8  at MPHS. (Christensen Decl. at ¶ 4.) Furthermore, any question of whether a

9  termination of an employee, such as Plaintiff, was for just cause is subject to arbitration

10  under the CBA. (Id.)

11        11.  Plaintiff also contends that an alleged contract with her was violated

12  when her application for an award under MPHS's loan forgiveness program was

13  rejected. (Compl. at ¶¶ 26-29 (First and Second Causes of Action).) It is the policy of

14  MPHS to reject such applications if the RN applicant has received written disciplinary

15  action within one year of the date of the application. (Christensen Decl. at ¶ 5.) Written

16  disciplinary actions are also subject to the grievance procedure of the CNA. (Id.)

17  Therefore, Plaintiff's eligibility for the program was dependent upon the validity of

18  discipline that she received, which could have been, but was not, grieved by CNA. (Id.)

19        12.  Another of Plaintiff's claims is for "lost pay due to an unpaid

20  February through March 2006 suspension." (Compl. at ¶ 25:21-23.) Plaintiff's

21  suspension was imposed as a disciplinary action and was subject to being challenged

22  through the CBA's grievance procedure. (Christensen Decl. at ¶ 6.) At times in the

23  Complaint, Plaintiff alleges that discipline of her was "pretextual". (Compl. at ¶¶ 59, 71,

24  72, 73, 76.) All discipline of an RN, such as Plaintiff, is subject to being grieved under

25  the CBA. (Christensen Decl. at ¶ 6, Exhibit 5.) This grievance was likewise not further

26  pursued by CNA following Plaintiff's termination. (Id.)

27        13.  Furthermore, Plaintiff's twelfth cause of action alleging retaliation

28  also requires an interpretation of the CBA. (Compl. at ¶¶ 94-100, Exhibits N and O.)

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    Plaintiff alleges that she made a complaint concerning MPHS's understaffed Emergency

2    Department. (Id. at ¶¶ 22, 27, 29, 96.) The CBA in effect at the time of Plaintiff's alleged

3    complaint contains several provisions addressing staffing issues in Article 28.

4    (Christensen Decl. at ¶ 7, Exhibit 2.) Part of the Article 28 provisions is a mechanism for

5    RN's to raise staffing concerns initially to a manager and then to a committee, the

6    Staffing Committee, which is jointly composed of management and union

7    representatives. (Id.) Staffing issues therefore raise questions regarding the meaning

8    and application of Article 28 of the CBA. (Id.)

9           14.    As demonstrated above, resolution of Plaintiff's claims necessarily

10   entail the Court's interpretation of the provisions of the CBA. The state law claims

11   referenced above are therefore preempted by the federal jurisdiction of the LMRA.

12   Kirton v. Summit Medical Center, 982 F. Supp. 1381, 1386-1389 (N.D. Cal. 1997); Allis-

13   Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) ("[S]tate-law rights and obligations

14   that do not exist independently of private agreements, and that as a result can be waived

15   or altered by agreement of private parties, are pre-empted by those agreements.");

16   Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 689 (9th Cir. 2001) (Section

17   301 preempts "claims founded directly on rights created by collective-bargaining

18   agreements."). Plaintiff's claims are therefore completely preempted by Section 301 of

19   the LMRA qualifying the action for removal on the basis of federal question jurisdiction

20   pursuant to 28 U.S.C. §§ 1331 and 1441(b).

21          15.    Additionally, Plaintiff's claims are governed by ERISA, which

22   preempts her state law claims. (29 U.S.C. § 1144.) ERISA preempts state laws that

23   "relate to" an employee benefit plan governed by ERISA, including wrongful discharge

24   claims. Nishimoto v. Federman-Bachrach & Associates, 903 F. 2d 709, 713 (9th Cir.

25   1990) (The plaintiff's wrongful termination claim was preempted by ERISA where she

26   alleged her termination was based on her age and the defendants' desire to deprive her

27   of pension benefits.); Felton v. Unisource Corp., 940 F.2d 503, 507 (9th Cir.1991) (claim

28   brought under state wrongful termination and state disability discrimination law was

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 5 -

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF
INTERESTED PARTIES                                    (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1    preempted because plaintiff alleged that employer fired him to avoid paying his medical

2    insurance benefits after he contracted lung cancer); Tingey v. Pixley-Richards West,

3    Inc., 953 F.2d 1124, 1131 (9th Cir.1992) (wrongful termination claim preempted because

4    plaintiff's sole theory was that his employer terminated him to deny him medical

5    insurance benefits after his son was born with spina bifida). Causes of action "relate to"

6    an ERISA plan if they have "a connection with or reference to such a plan." Nishimoto v.

7    Federman-Bachrach & Associates, supra, 903 F. 2d at 713.

8         16.    Here, Plaintiff is a beneficiary seeking to recover benefits and

9    redress violations under 29 U.S.C. § 1132. Plaintiff identifies Defendants in the "unique

10   position of being Plaintiff's **Employer/Health Insurer/Healthcare Provider**." (Compl.,

11   ¶¶ 36, 50, 79, 80, 90, Exh. M; see also ¶¶ 25, 38, 52, 92.) In support of her

12   discrimination and wrongful termination claims (Counts III, V, VIII, X, and XI), Plaintiff

13   alleges that Defendants terminated Plaintiff's employment to save "themselves a

14   substantial amount of money in medical care not provided to Plaintiff and her baby," and

15   alleges she was "on Medi-Cal at the expense of the California taxpayer instead of Sutter

16   Health." (Compl., ¶¶ 38 and 52; see also¶ 73 ("Defendants...terminated Plaintiff so she

17   or her unborn baby would not cost Defendant any more money.").) As in the Ninth

18   Circuit cases cited above, Plaintiff alleges that she was terminated by MPHS to prevent

19   her from receiving benefits. In support of her allegations, Plaintiff references Exhibit M, a

20   summary of MPHS's benefit plans.[2] Plaintiff's claims "refer to, and is connected with, an

21   ERISA-covered plan, and is therefore preempted by ERISA." Nishimoto v. Federman-

22   Bachrach & Associates, 903 F. 2d at 713.

23        17.    Assignment of actions removed from the Superior Court for San

24   Mateo County to the San Francisco Division of the Northern District is proper pursuant to

25   Local Rules 3-2(c) and (d).

26   _____

27   [2] An "employee welfare benefit plan" as defined by ERISA includes any plan established or
     maintained by an employer for the purpose of providing for its participants through the purchase
28   of insurance medical, surgical, or hospital care or benefits, or benefits in the event of sickness,
     accident, disability, death or unemployment. 29 U.S.C. § 1002(1).

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 6 -

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF
INTERESTED PARTIES                                    (SAN MATEO COUNTY COURT CASE NO. CIV 460718)

1    18.    As required by 28 U.S.C. §1446(d), Defendants will provide prompt

2  written notice to Plaintiff of removal of this action to federal court, by service upon her

3  attorney of record.

4    19.    As required by 28 U.S.C. § 1446(d), Defendants will file a copy of

5  this Notice of Removal with the Clerk of the San Mateo County Superior Court, from

6  which this action is removed.

7    20.    Pursuant to Civil Local Rule 3-16, the undersigned certifies that the

8  following listed persons, associations of persons, firms, partnerships, corporations

9  (including parent corporations) or other entities (i) have a financial interest in the subject

10  matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest

11  in that subject matter or in a party that could be substantially affected by the outcome of

12  this proceeding:  None.

13

14  DATED:  December _11_, 2007          Respectfully submitted,

15                                     KAUFF MCCLAIN & MCGUIRE LLP

16

17                                     By: _____

18                                          ROSSANA S. ELTANAL

19                                     Attorneys for Defendants
                                       MILLS-PENINSULA HEALTH SERVICES,
20                                     SUTTER HEALTH AND CLAUDIA
                                       CHRISTENSEN

21

22  4824-0119-5010.1

23

24

25

26

27

28

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 7 -

DEFENDANTS' NOTICE OF REMOVAL AND CERTIFICATION OF
INTERESTED PARTIES

(SAN MATEO COUNTY COURT CASE NO. CIV 460718)



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
Bobbi Foster & DOES 1 TO 100

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Lisa Maria Boccignone, In Pro Per

```
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

F I L E D
SAN MATEO COUNTY

FEB 5 2007

Clerk of the Superior Court
By
            DEPUTY CLERK
```

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* 460718 |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
400 County Center, Redwood City, CA 94063
Southern Branch: Hall of Justice

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lisa Maria Boccignone, In Pro Per
853 Commodore Drive, #274, San Bruno, CA 94066, (650) 872-0639

| DATE: *(Fecha)* FEB 5 2007 | JOHN C. FITTON | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.    www.USCourtForms.com

11026952.tif - 2/5/2007 10:37:36 AM

Feb 05 2007 10:33AM  Gold and Associates        (4'5) 354-5405        p.6

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Lisa Maria Boccignone, In Pro Per
853 Commodore Drive, #274
San Bruno, CA 94066

TELEPHONE NO: (650) 872-0639   FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch: Hall of Justice

PLAINTIFF: Lisa Maria Boccignone, In Pro Per

DEFENDANT: Bobbi Foster &

☑ DOES 1 TO 100

**FILED**
SAN MATEO COUNTY

FEB 5 2007

Clerk of the Superior Court
By _____
DEPUTY CLERK

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
☐ AMENDED *(Number)*:

Type *(check all that apply)*:
☐ MOTOR VEHICLE   ☑ OTHER *(specify)*: Slander and Libel
☐ Property Damage     ☐ Wrongful Death
☐ Personal Injury     ☐ Other Damages *(specify)*:

Jurisdiction *(check all that apply)*:
☐ ACTION IS A LIMITED CIVIL CASE
Amount demanded ☐ does not exceed $10,000
☐ exceeds $10,000, but does not exceed $25,000
☑ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint
☐ from limited to unlimited
☐ from unlimited to limited

CASE NUMBER: CIV 460718

BY FAX

1. Plaintiff *(name or names)*: Lisa Maria Boccignone
   alleges causes of action against defendant *(name or names)*:
   Bobbi Foster
2. This pleading, including attachments and exhibits, consists of the following number of pages: **5**
3. Each plaintiff named above is a competent adult
   a. ☐ except plaintiff *(name)*:
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe)*:
      (3) ☐ a public entity *(describe)*:
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify)*:
      (5) ☐ other *(specify)*:
   b. ☐ except plaintiff *(name)*:
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe)*:
      (3) ☐ a public entity *(describe)*:
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify)*:
      (5) ☐ other *(specify)*:

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

COMPLAINT—Personal Injury, Property
Damage, Wrongful Death

Page 1 of 3
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

[1025252.1] - 2/5/2007 10:37:50 AM

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boccignone v. Foster | |

4. ☐ Plaintiff (name):
   is doing business under the fictitious name (specify):

   and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. ☐ except defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   c. ☐ except defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   b. ☐ except defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   d. ☐ except defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☐ Doe defendants (specify Doe numbers): _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☑ Doe defendants (specify Doe numbers): 1 TO 100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8. This court is the proper court because
   a. ☐ at least one defendant now resides in its jurisdictional area.
   b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other (specify):

9. ☑ Plaintiff is required to comply with a claims statute, and
   a. ☑ has complied with applicable claims statutes, or
   b. ☐ is excused from complying because (specify):

PLD-PI-001 [Rev. January 1, 2007]     COMPLAINT—Personal Injury, Property     Page 8 of 3
                                         Damage, Wrongful Death

Feb 05 2007 10:33AM C ld and Associates (4 ) 354-5405 p.8

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boccignone v. Foster | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
  - a. ☐ Motor Vehicle
  - b. ☐ General Negligence
  - c. ☐ Intentional Tort
  - d. ☐ Products Liability
  - e. ☐ Premises Liability
  - f. ☑ Other *(specify)*:

    Slander and Libel

11. Plaintiff has suffered
  - a. ☑ wage loss
  - b. ☐ loss of use of property
  - c. ☑ hospital and medical expenses
  - d. ☑ general damage
  - e. ☐ property damage
  - f. ☑ loss of earning capacity
  - g. ☑ other damage *(specify)*:

    Intentional and negligent infliction of emotional distress, loss of professional business reputation, possible physical ailments leading up to 8 week premature birth of her baby daughter, who suffered some respiratory difficulties & now has serious heart ailments.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
  - a. ☐ listed in Attachment 12.
  - b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
  - a. (1) ☑ compensatory damages
    - (2) ☑ punitive damages
    The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
    - (1) ☑ according to proof
    - (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: January 30, 2007

Lisa Maria Boccignone
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

11028062.tif - 2/5/2007 10:37:36 AM

PLD-PI-001

SHORT TITLE:
Boccignone v. Foster

CASE NUMBER:

10. The following causes of action are attached and the statements above apply to each (each complaint must have one or more causes of action attached).
    a. ☐ Motor Vehicle
    b. ☐ General Negligence
    c. ☐ Intentional Tort
    d. ☐ Products Liability
    e. ☐ Premises Liability
    f. ☒ Other (specify):

        Slander and Libel

11. Plaintiff has suffered
    a. ☒ wage loss
    b. ☐ loss of use of property
    c. ☒ hospital and medical expenses
    d. ☐ general damages
    e. ☐ property damage
    f. ☒ loss of earning capacity
    g. ☒ other damage (specify):

        Intentional and negligent infliction of emotional distress, loss of professional business reputation, possible physical ailments leading up to 8 week premature birth of her baby daughter, who suffered some respiratory difficulties & now has serious heart ailments.

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
    a. ☐ listed in Attachment 12.
    b. ☐ as follows:

13. The relief sought in the complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. (1) ☒ compensatory damages
       (2) ☒ punitive damages
       The amount of damages is (in cases for personal injury or wrongful death, you must check (1)):
       (1) ☒ according to proof
       (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows (specify paragraph numbers):

Date: January 30, 2007

Lisa Maria Boccignone
        (TYPE OR PRINT NAME)                                         (SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]            COMPLAINT—Personal Injury, Property            Page 2 of 3
                                                  Damage, Wrongful Death

04/26/2007  16:49  65503

Feb 05 2007 10:34AM  Gold and Associates       (415) 354-5405         p.10

PLD-PI-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boccignone v. Foster | |

FIRST _____        **CAUSE OF ACTION—General Negligence**    Page ___4___
    (number)

ATTACHMENT TO  ☑ Complaint  ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):*  Lisa Maria Boccignone

    alleges that defendant *(name):*  Bobbi Foster &

        ☑ Does  1_____  to  100_____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff

on *(date):* or about February 2, OR 3, 2006
at *(place):* Mills Peninsula Medical Center (herein after Mills Peninsula)

*(description of reasons for liability):*

Bobbi Foster began a rumor that plaintiff had engaged in sexual intercourse with her boyfriend in
his vehicle, a Nissan pickup truck, in the Mills Peninsula parking lot.  Plaintiff Boccignone denied
this "rumor", as did her boyfriend, but Boccignone had to suffer the spreading of the story
through Mills Peninsula where she worked.  She was also suspended without pay for three weeks
before the matter was dropped by Mills Peninsula, and the incident paperwork later removed from
her record/personnel file.

Approximately six months later, under circumstances not considered serious in the standard of
care/business practice model for an Emergency Room and new nurse (having been taken out of
the Emergency Room program early due to her high quality of care), Ms. Boccignone was let go
for still not specified "cause" from Mills Peninsula Medical Center without her EDD insurance,
while she was five months pregnant. This necessitated her going on public assistance for her
baby's medical care.  The baby was born two months premature and under weight, with ongoing
heart defect.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

        **CAUSE OF ACTION—General Negligence**

Code of Civil Procedure 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

11026962.tif - 2/5/2007 10:37:20 AM

**EXHIBIT** 

1  ROBERT H. GOLD (STATE BAR NO. 146136)
   GOLD & ASSOCIATES
2  235 Montgomery Street
   Suite 747
3  San Francisco, CA 94104
   Telephone: (415) 354-5400
4  Facsimile: (415) 354-5405

5  Attorney for Plaintiff

6          SUPERIOR COURT OF THE STATE OF CALIFORNIA

7            SAN MATEO COUNTY, UNLIMITED JURISDICTION

8

9  LISA MARIA BOCCIGNONE,                | Case No. 460718

10          *Plaintiff,*                 | FIRST AMENDED COMPLAINT TO
                                          | SUBSTITUTE TRUE NAMES OF "DOE"
11          v.                           | DEFENDANTS, AND FOR:
                                          | 1. PREGNANCY DISCRIMINATION,
12                                        | 2. CANCER DISCRIMINATION,
   BOBBI FOSTER, MILLS PENINSULA         | 3. WRONGFUL TERMINATION IN
13 HEALTH SERVICES, SUTTER               | VIOLATION OF CALIFORNIA
   HEALTHCARE, CLAUDIA CHRISTENSEN       | CONSTITUTION ARTICLE 1, SECTION 8,
14 and DOES 1-97,                        | 4. FALSE LIGHT,
                                          | 5. RETALIATION, AND
15          *Defendants.*                | 6. INTENTIONAL OR NEGLIGENT
                                          | MISREPRESENTATION [OF EMPLOYMENT
16                                        | BENEFIT OF REPAYMENT OF STUDENT
                                          | LOANS]
17
                                          | JURY TRIAL DEMANDED [AT THIS TIME]
18

19

20          Plaintiff LISA MARIA BOCCIGNONE, in conjunction with the following causes of action

21 against defendants, each and all of them, alleges as follows:

22                                **PARTIES**

23

24      1.  Plaintiff was hired as an Emergency Department Registered Nurse (R.N.) by MILLS-

25          PENINSULA HEALTH SERVICES on approximately January 23rd or January 24th of 2005.

26      2.  Upon the filing of the Complaint, the Plaintiff, being ignorant of the true name of the

27          Defendant and having designated the Defendant in the Complaint by the fictitious name of

28

_____
            AMENDED COMPLAINT—Boccignone v. Foster, et al.
                              - 1 -

**ORIGINAL**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Doe Number One (1), and having discovered the true name of Defendant to be MILLS-PENINSULA HEALTH SERVICES (hereafter MILLS-PENINSULA), amends the Complaint by substituting the fictitious name wherever it appears in the Complaint.

3. Upon the filing of the Complaint, the Plaintiff, being ignorant of the true name of the Defendant and having designated the Defendant in the Complaint by the fictitious name of Doe Number Two (2), and having discovered the true name of Defendant to be SUTTER HEALTH, amends the Complaint by substituting the true name for the fictitious name wherever it appears in the Complaint.

4. Upon the filing of the Complaint, the Plaintiff, being ignorant of the true name of the Defendant and having designated the Defendant in the Complaint by the fictitious name of Doe Number Three (3), and having discovered the true name of Defendant to be CLAUDIA CHRISTENSEN, amends the Complaint by substituting the true name for the fictitious name wherever it appears in the Complaint.

5. Plaintiff is informed and believes and therefore alleges that Defendant SUTTER HEALTH is a private non-profit corporation domiciled in California, with nearly 99% of this entity located wholly in California, which: owns, rents, operates, and/or manages Defendant MILLS-PENINSULA and many other hospitals; employs nurses and other staff at MILLS-PENINSULA; and negotiates numerous Collective Bargaining Agreements, under which some nurses and other staff are employed at MILLS-PENINSULA.

6. Plaintiff is informed and believes and therefore alleges that Defendant MILLS-PENINSULA is a private non-profit California subsidiary of SUTTER HEALTH, also 99% domiciled in California, and MILLS-PENINSULA, a subsidiary/division of SUTTER HEALTH, located at 1501 Trousdale Drive in Burlingame, California, and Mills Health Center located at 100 South San Mateo Drive in San Mateo, California.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

7. In the remainder of this pleading, Defendants MILLS-PENINSULA and SUTTER HEALTH are referred to collectively as MILLS-PENINSULA.

8. Plaintiff is informed and believes and therefore alleges that Defendant BOBBI FOSTER is the Emergency Department Director of MILLS-PENINSULA, and that Defendant FOSTER is domiciled in San Mateo County, California.

9. Plaintiff is informed and believes and therefore alleges that Defendant CLAUDIA CHRISTENSEN is the Assistant Director of Human Resources of either MILLS-PENINSULA or SUTTER HEALTH, but Plaintiff does not know where Defendant CHRISTENSEN is domiciled and/or her true employment title within Sutter Heathcare.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named and sued herein as DOES 4 through 100, inclusive, are presently unknown to Plaintiff who, therefore, sues said Defendants by fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of Doe Defendants when the same have been ascertained. Plaintiff alleges on information and belief that each of the fictitiously named Defendants is in some way responsible for the events, transactions, and occurrences referred to herein.

11. At all times herein mentioned, each and every defendant was the agent and/or employee of each and every other defendant, and in so doing the things alleged each defendant was acting within the course and scope of such agency and employment, and in so doing the acts herein alleged each defendant was acting with the consent, permission, and/or authorization of each of the remaining defendants. All defendant actions herein alleged were approved or ratified by the officers/supervisors of each defendant or their superiors.

## JURISDICTION AND VENUE

12. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 11 of this Complaint as though fully set forth herein.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

13. Jurisdiction and venue are proper in San Mateo County Superior Court because: all parties are wholly or partially domiciled within the territorial limits of this Court's jurisdiction, Defendant SUTTER HEALTH regularly does business through MILLS-PENINSULA within the territorial limits of this Court's jurisdiction, the events giving rise to the instant action all occurred within the territorial limits of this Court's jurisdiction, and many, if not all, of the witnesses are located within the territorial limits of San Mateo County Superior Court's jurisdiction as well as a primary cause of action as a violation of the California Constitution, Article I, Section 8.

## STATEMENT OF FACTS

14. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 13 of this Complaint as though fully set forth herein. Plaintiff files this Amended Complaint pursuant to an Order of the Court.

15. Plaintiff was hired as an Emergency Department Registered Nurse (R.N.) by MILLS-PENINSULA HEALTH SERVICES on approximately January 23rd or January 24th of 2005.

16. Plaintiff now resides in San Mateo County, California. When Defendant MILLS-PENINSULA HEALTH SERVICES recruited Plaintiff for employment at a job fair, Plaintiff was a resident of Huntington Beach, California. At this time, there is no claim of wrongdoing made by Defendants outside of San Mateo County, California.

17. Plaintiff's position at MILLS-PENINSULA was her first employment as a Registered Nurse after finishing Nursing School. She was recruited with inducements including, but not necessarily limited to, employer payment of her student loans and moving allowances for moving to Northern California.

18. From the start of Plaintiff's employment at MILLS-PENINSULA on January 23rd or January 24th of 2005 through May 30, 2005, Plaintiff received positive, if not glowing, written evaluations of her work, technical competence, critical thinking, interpersonal relations, and

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

customer service. (See Performance Recognition attached as Exhibit A. See Exhibit B—

*Rose Grams* from other MILLS-PENINSULA staff and patients, with patient names

redacted to protect their medical privacy. All Exhibits attached to this Amended Complaint

are incorporated herein by reference.)

19. Defendants have a pattern and practice of irregularities in employment-related documents;

one example is the Performance Recognition attached as Exhibit A—which states it is an

appraisal of work from January 24, 2005 through May 30, 2005, but the signatures of

Defendant Foster and Plaintiff Boccignone are dated May 7, 2005. Plaintiff is informed and

believes and therefore alleges that employment documents pertaining to Plaintiff are the

responsibility of Defendants FOSTER and CHRISTENSEN.

20. On July 8, 2005, Plaintiff made a written objection to being assigned as the virtual *charge*

*nurse* (in lay person's language, the supervisor) on shift in the Emergency Department,

regardless of the fact Plaintiff received the Charge Nurse's higher rate of pay.  (See

*Assignment despite objection*/inpatient attached as Exhibit C, documenting that although

Plaintiff was a relatively new and inexperienced Registered Nurse, she was the only R.N. on

shift qualified to do POC [Point of Care] testing, resulting, and care.)

21. On July 10, 2005, Plaintiff made a written objection to being assigned as the virtual charge

nurse on shift in the Emergency Department. (See Assignment Despite Objection/Inpatient

attached as Exhibit D, documenting that that although Plaintiff was a relatively new and

inexperienced Registered Nurse, she was the only R.N. on shift qualified to perform all POC

[Point of Care] labs, testing, resulting, and other duties.)

22. On August 24, 2005, Defendants accused Plaintiff of poor performance of her nursing duties

on the August 6th to August 7, 2005 night shift, and disciplined Plaintiff by giving her a

"final written warning" and placing her on unpaid leave (suspension) despite Plaintiff's

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

objection that the cause of her difficulties was that the Emergency Department was understaffed (only three licensed nurses on duty with *over* fifteen patients).

23. On or about January 2, 2006, Plaintiff Boccignone received a bonus in connection with her employment.

24. On or about July 3, 2006, union representative Shawn Bartlett filed a grievance against Defendant Foster on behalf of Plaintiff Boccignone for forcing Plaintiff to sign a mostly blank job evaluation form and threatening Plaintiff with possible employment termination in 90 days.

25. The grievance hearing, which was scheduled for August 29, 2006, never occurred as on August 28th Plaintiff Boccignone's doctor (obstetrician) placed her on bed rest through August 30th.

26. Plaintiff is not bringing claims at this time in the Amended Complaint for failure by Defendants to pay Plaintiff two (2) weeks termination pay, pay for shifts Plaintiff was not allowed to work as originally scheduled due to the February, 2006 suspension, failure to correctly itemize Plaintiff's pay stubs, pay for meal breaks (pursuant to *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, *; 155 P.3d 284, **; 56 Cal. Rptr. 3d 880, ***; 2007 Cal. LEXIS 3596), or for waiting time and/or penalties on pay violations.

## FIRST CAUSE OF ACTION

## (PREGNANCY DISCRIMINATION)

27. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. During January of 2006, Plaintiff Boccignone became pregnant, and on February 2, 2006 Plaintiff suffered a miscarriage (a medical condition related to pregnancy, which involves significant blood loss and consequently fatigue).

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

29. Thirteen (13) days later on February 15, 2006, Plaintiff was still fatigued, and requested permission from her charge nurse to take a break and sleep. The charge nurse Brian Johnson granted permission to sleep, a reasonable accommodation for this medical condition related to pregnancy, and Plaintiff slept during her break. During this break, there were no patients in the Emergency Department. Defendant FOSTER, later, retroactively withdrew this permission and on March 16, 2006 wrote Plaintiff a "final written warning" for sleeping. (See Exhibit E.)

30. Defendants FOSTER admitted under oath that she knew Plaintiff had suffered a miscarriage, but when questioned "isn't fatigue a normal symptom of women who have a miscarriage…" replied "no." Def. FOSTER went on to blame Plaintiff:, "if Lisa had, was still having [fatigue from the miscarriage] then she should not have returned to work to her night shift and her regular duty." (See EDD Appeal hearing transcript attached hereto as Exhibit F.)

31. On or about June 1, 2006, Plaintiff was informed that she was seven to twelve weeks pregnant. On August 4, 2006, Plaintiff gave Defendant Foster Plaintiff's Obstetrician's signed written request for accommodation of Plaintiff's temporary disability due to pregnancy, specifying no lifting over 30 pounds, and limiting exposure of Plaintiff's unborn baby to x-rays and infections exposure from August 4th through Plaintiff's then-anticipated January 1, 2007 commencement of maternity leave. (See Exhibit G.) Defendant Foster and Senior Nurse, antagonist, Penny Hutchings discussed giving Plaintiff light duty, but stated they were uncertain how to comply with Plaintiff's doctor's recommendations—so they were complied pursuant to Plaintiff's OBGYN's warning letter. Defendants never again discussed accommodating Plaintiff's pregnancy disability, and never provided light duty or any other accommodations.

32. Contrary to the signed doctor's request for accommodation of pregnancy, Plaintiff and her unborn baby were repeatedly exposed to x-rays and numerous infections, including but not

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

limited to Rocky Mountain Spotted Fever and Dengue Fever, as if Plaintiff had never

requested pregnancy disability accommodation at all via written request by her OBGYN..

33. Furthermore, Defendants owed a higher duty to Plaintiff to provide pregnancy

accommodation as Defendants were in the unique position of being Plaintiff's

Employer/Insurer/ and healthcare provider. (See Exhibit H.)    Defendants  knew of both

Plaintiff's miscarriage and her subsequent pregnancy disability.  Defendant employers had a

duty under the Fair Employment and Housing Act (hereafter FEHA) regarding both

instances of pregnancy-related disability to initiate a dialog with Plaintiff offering disability

accommodations, even if Plaintiff never requested accommodations.  A DFEH right to sue

letter on this issue was Notice on July 13, 2007, Plaintiff has sixty [60] days from that date

to present to Defendant after service of the complaint, pursuant to said the terms stated on

said Right to Sue documentation

34. Defendant employers knew Plaintiff had had a miscarriage, further evidenced by the fact that

some MILLS-PENINSULA employee accessed Plaintiff's vaginal ultrasound, and displayed

said vaginal ultrasound on the Emergency Department overhead monitor for all to see.

Plaintiff's name was clearly labeled on the ultrasound image within the defendant's record

keeping and she was the only patient with that last name at that hospital at that time.

Plaintiff's HIPPA rights and rights under California law to medical privacy were violated.

35. As Defendants are the employer/insurer/ and healthcare provider, they use as a TPA a

healthcare risk manager, Benefit and Risk Management Services (Exhibit I). In so much as

that information for paying the bills for her injuries and investigating work related claims

[not worker's compensation with a permanent disability, but a cut hand, possible infection

due to being stuck by a stray needle] Defendants were in a position to know that Plaintiff's

work in the Emergency Department made her pregnancy higher risk, due to repeatedly

exposing Plaintiff to X-rays and numerous infections and other risks from many outlets.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Defendants were also in a position to access the results of genetic testing they performed (as healthcare provider) on Plaintiff's unborn baby. After creating the risk that Plaintiff could give birth to a gravely ill baby needing expensive healthcare, Defendants (a self insured healthcare provider) terminated Plaintiff's employment, potentially saving themselves a substantial amount of money in medical care not provided to Plaintiff and her baby (subsequently born two months premature--with a heart murmur).

36. Plaintiff received a right to sue letter from the Department of Fair Employment and Housing (DFEH), having received said Right to Sue letter on July 13, 2007.

## SECOND CAUSE OF ACTION

## (PERCEIVED CANCER DISCRIMINATION)

37. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. As Plaintiff's employer, healthcare provider, and health insurer, Defendants has actual and constructive knowledge that Plaintiff's thyroid condition was being treated by a medical doctor by use of radioactive iodine. Consequently, Defendants regarded Plaintiff as being disabled by thyroid cancer.

39. Defendants owed a higher duty to Plaintiff to provide disability accommodation of her chronic medical condition as Defendants were in the unique position of being Plaintiff's healthcare provider and health insurer, in addition to being Plaintiff's employer. (See Exhibit H.) Because Defendants were in a position to know of Plaintiff's chronic (thyroid gland) medical condition, Defendant employers had a duty under FEHA to initiate a dialog with Plaintiff offering disability accommodations, even if Plaintiff never requested accommodations. Defendants never initiated any dialog with Plaintiff about any disability accommodations, and no accommodations were provided.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

AMENDED COMPLAINT—Boccignone v. Foster, et al.

40. Furthermore, employer had actual notice of plaintiff's thyroid condition because she requested medical leave for radiation treatment, but Defendants denied Plaintiff's requested medical leave. (Exhibit J.)

41. Fatigue is a common symptom of cancer and/or a diagnosis of borderline cancer. On February 15, 2006, Plaintiff was normally tired and requested permission from her charge nurse to take a break and sleep. The charge nurse, Brian Johnson, granted permission to sleep, a reasonable accommodation for cancer or a diagnosis of borderline cancer, and Plaintiff slept during her break. During this break, there were no patients in the Emergency Department. Defendant FOSTER later retroactively withdrew permission, and on March 16, 2006 wrote Plaintiff a "final written warning" for sleeping. (See Exhibit E.)

42. Plaintiff's perceived by defendant chronic illness (thyroid cancer or borderline diagnosis of cancer), and requests for medical leave of absence for treatments with radioactive iodine, were an inconvenience to Defendants.

### THIRD CAUSE OF ACTION

### (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### CALIFORNIA CONSTITUTION ARTICLE 1, SECTION 8)

43. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. Plaintiff claims that Defendants terminated her employment in violation of public policy as set forth in the California Constitution, Article 1, Section 8, which provides:

> A person may not be disqualified from ... pursuing a business, profession, vocation, or employment because of sex....

45. Pregnancy discrimination, a cause of action set forth above, is a species of sex discrimination, and is therefore prohibited by Section 8. Section 8 is the embodiment of the California public policy that, despite the general rule that neither a contracted employee nor

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

an employee at-will can be terminated for no reason, or for arbitrary and/or irrational

reasons, prohibited by law.  (See Exhibit K—*Phillips v. St. Mary Reg'l Medical Ctr.*, 96 Cal.

App. 4th 218, *; 116 Cal. Rptr. 2d 770, **; 2002 Cal. App. LEXIS 1600, ***; 18 I.E.R. Cas.

(BNA) 616.)

46. It is a violation of public policy, and a violation of § 8, to terminate the employment of a

pregnant woman on the grounds that her pregnancy temporary disability makes her an

inconvenient employee.

47. On August 24, 2005, Defendant FOSTER gave Plaintiff a "final written warning" for poor

employment performance of nursing duties.  However, this warning appears to be pretext in

light of the fact that Plaintiff was paid an employment-related bonus on or about January 2,

2006.

48. On March 16, 2006, Defendant FOSTER gave Plaintiff a "final written warning" for poor

employment performance of nursing duties, and allegedly being a danger to patients.

However, this warning appears to be pretext in light of the fact that Plaintiff was paid as

*Preceptor* (experienced nurse who trains new, inexperienced nurses) and/or charge (the

nurse who is the shift supervisor, in lay person's terms) during the pay periods of April 9-

April 22, 2006, May 7-May 20, 2006, May 21-June 3, 2006, June 4-June 17, 2006, June 18-

July 1, 2006, July 2-July 15, 2006, July 16-July 29, 2006, August 13-August 26, 2006, and

August 27-September 9, 2006.  (See documents of Plaintiff's pay attached as Exhibit L.)

49. Defendant FOSTER alleges she terminated Plaintiff's employment on September 7, 2006

because Plaintiff was allegedly a danger to patients.  However, this allegation that Plaintiff

was a danger to patients appears to be pretext in light of the fact that Plaintiff was paid as

preceptor (experienced nurse who trains new, inexperienced nurses) and/or charge (the nurse

who is the shift supervisor, in lay person's terms) during the pay periods of April 9-April 22,

2006, May 7-May 20, 2006, May 21-June 3, 2006, June 4-June 17, 2006, June 18-July 1,

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 364-5400
FACSIMILE: (415) 354-5405

2006, July 2-July 15, 2006, July 16-July 29, 2006, August 13-August 26, 2006, and August

27-September 9, 2006. (See documents of Plaintiff's pay attached as Exhibit L.)

50. Defendants, despite the rules and regulations set forth in the Collective Bargaining

Agreement with the California Nurses Association not being raised at this time but possible

in a later amended complete depending on discovery of the present causes of action, ignored

said Agreement and terminated Plaintiff so she or her unborn baby would not cost Defendant

any more money.

## FOURTH CAUSE OF ACTION

### (FALSE LIGHT)

51. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50 of

this Complaint as though fully set forth herein.

52. On or about February 11, 2006, while on break during the night shift, Plaintiff was visited at

work by her boyfriend. Plaintiff and her boyfriend were sitting in his truck in the hospital

parking lot, socializing and eating dinner. Plaintiff is informed and believes and therefore

alleges that she and her boyfriend were seen in the truck by a security guard, presently

believed also to be Defendants' employee.

53. On, or about, February 24, 2006, Defendant FOSTER telephoned to inform Plaintiff that she

was being placed on unpaid administrative leave. A nurse union representative Linda

Campagna telephoned Plaintiff later that same day, and informed Plaintiff that the

administrative leave was due to a statement made by the aforementioned security guard to

Defendant FOSTER that Plaintiff had been lewd in the parking lot on the night of February

11th. Sometime during the administrative leave (February 24, 2006 through March 16,

2006), Defendant FOSTER informed Plaintiff that the security guard had written an incident

report documenting said alleged lewd behavior by Plaintiff; said incident report has never

been produced to Plaintiff despite repeated requests. By March 16th Defendant FOSTER

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

dropped the allegations of lewd behavior, but only after publicly humiliating Plaintiff by questioning numerous doctors and other staff if the allegations were true. (See Exhibit M.)

54. After Plaintiff's employment by Defendants was terminated, Plaintiff had been offered nursing employment at Kaiser Permanente in South San Francisco, but the employment offer was rescinded on September 15, 2006 after Kaiser telephoned Defendants and received a negative employment reference.. As stated above, Defendant FOSTER'S March 16, 2006 and September 7, 2006 allegations that Plaintiff is an incompetent and dangerous nurse seem pretextual in light of the fact that Defendant FOSTER permitted Plaintiff to be assigned to work as a preceptor and/or charge nurse during the pay periods April 9-April 22, 2006, May 7-May 20, 2006, May 21-June 3, 2006, June 4-June 17, 2006, June 18-July 1, 2006, July 2-July 15, 2006, July 16-July 29, 2006, August 13-August 26, 2006, and August 27-September 9, 2006. (See documents of Plaintiff's pay attached as Exhibit L.)

## FIFTH CAUSE OF ACTION

### (RETALIATION)

55. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. On July 8, 2005 and on July 10, 2005, Plaintiff made written objections (Exhibits C and D) to being assigned as the virtual charge nurse (in lay person's language, the supervisor) because she was a relatively new and inexperienced nurse.

57. Plaintiff defended herself in writing for having difficulty with her employment performance on August 6, 2005 because the department was understaffed (only three Registered Nurses working to care for more than fifteen patients in violation of California Code of Regulations, Title 22, § 70217). (See Quality Assurance Occurrence Report attached as Exhibit N, and § 70217 attached as Exhibit O.)

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

58. On August 24, 2005, Defendants retaliated by placing Plaintiff on unpaid leave, and placing a Performance Correction Notice in Plaintiff's personnel file containing a "final written warning" that she could be fired. (See Quality Assurance Occurrence Report attached as Exhibit N, § 70217 attached as Exhibit O, and Performance Correction Notice attached as Exhibit P)

59. On February 2, 2006, Plaintiff suffered a miscarriage. From February 4, 2006 through February 20, 2006, Plaintiff was ill with a sinus infection, and she called in sick to work on February 8th and February 9, 2006. On February 15, 2006, Plaintiff slept during a break with the permission of charge nurse Brian Johnson. Defendants retaliated by denying Plaintiff's request for medical leave for perceived cancer treatment on February 16-February 26, 2006.

60. Plaintiff called in sick to work on February 21st, February 22nd, February 23rd, and February 24, 2006. Defendants retaliated by placing Plaintiff on unpaid administrative leave from February 24th through March 16, 2006.

61. On August 4, 2006, Plaintiff requested accommodation of her temporary pregnancy disability, and requested maternity leave from January 1, 2007-May 6, 2007. On August 6, 2006, Plaintiff requested days off from work on October 31st and November 1, 2006. On August 28, 2006, Plaintiff declined to work a double shift because she did not want to miss her doctor's appointment that day for amniocentesis. On August 29th and August 30, 2006, Lisa called in sick, pursuant to doctor's orders that she be on bed rest. On September 7, 2006, Defendants FOSTER retaliated by signing a letter terminating Plaintiff's employment.

## SIXTH CAUSE OF ACTION

### (INTENTIONAL OR NEGLIGENT MISREPRESENTATION)

62. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

63. Defendants represented to Plaintiff that MILLS-PENINSULA provided loan repayment of Registered Nurse employees' student loans as an employment benefit, and that disciplinary action against a loan repayment applicant could lead to disqualification (see Loan Forgiveness documents attached as Exhibit Q), but Defendant never warned Plaintiff Boccignone that they would bring disciplinary action to disqualify her by accusing her of inadequate job performance on a shift where the Emergency Department was understaffed (more than fifteen patients and only three Registered Nurses) in violation of California Code of Regulations, Title 22, § 70217. (See Exhibits N,O, and P.)

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

**ON THE FIRST CAUSE OF ACTION (PREGNANCY DISCRIMINATION):**

    a.    $280,000.00 in special damages;

    b.    $500,000.00 in general damages;

**AS TO ALL CAUSES OF ACTION:**

    a.    $1,000,000.00;

    b.    Reasonable attorneys' fees;

    c.    All costs of suit incurred herein;

    d.    Exemplary damages according to proof at trial; and

    d.    Such other and further relief as the Court may deem proper.

**JURY TRIAL DEMANDED [AT THIS TIME]**

At this time, Plaintiff demands trial of all issues by a jury.

Respectfully submitted,

Dated: July 31, 2007

Robert H. Gold
Attorney for Plaintiff

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**EXHIBIT A**

# Mills-Peninsula Health Services – Performance Recognition Cover Sheet

MAY 9 2005

EMPLOYEE SERVICES

| Employee Name: | Lisa Maria Boccignone | Title: | Staff Nurse | Empl ID: | 3601681 |

| Department: | Emergency Services-*Introductory* | Appraisal Period From: | 1/24/05 | To: | 5/30/2005 |

**Evaluator Summary/Comments:**

Enter rating for each section below using whole numbers:

| | Initiative |
| | Punctual |
| | Professional attire |

| | | |
|---|---|---|
| Minimal Requirements: | [ ]1 | [ ]2 | [X]3.0 | [ ]4 |
| Technical Competence: | [ ]1 | [ ]2 | [X]3.0 | [ ]4 |
| Critical Thinking: | [ ]1 | [ ]2 | [X]3.0 | [ ]4 |
| Interpersonal Relations/Customer Service: | [ ]1 | [ ]2 | [X]3.0 | [ ]4 |

**Overall Appraisal:**   [ ]1    [ ]2    [X] 3.0    [ ]4

An overall score of 1 or 2 requires a developmental period or extension of new employee orientation at the end of which an updated appraisal must be done.

Manager to indicate re-evaluation date here: 5/2006.  Goals for improvement must be outlined on Employee Development Plan – Part A.

Evaluated by [name] / [title]:  _Betti Fuller RN Reviewer_  5/7/05
                                                                    Date

Employee's Signature:  _Lisa Maria Boccignone_   05/07/200_
                                                                Date

License Date:  _____
CPR/BCLS Date:  _____
Date Reviewed Job Description:  _on file w/dept_
*Attached Copies of Licenses and CPR/BCLS*

**Evaluatori Comments:**

| Priority to get along with others |
| Smiles |
| Strives to offer excellent care |
| Learning ED practice |
| Can be compassionate |

**Employee Comments:**

Perfo_ _pce Appraisal for Staff Nurse
Appraisal Period:

# Mills-Peninsula Health Services – Performance Recognition – Part A, Development Plan

| Goal: | Recommended Action / Education: | Timeframe for Accomplishment: |
|---|---|---|
| *Management Developed Goals/Objectives:* | | |
| 1. Being 100% independent "RSC ability" | daily practice | 6 months Dec |
| 2. accepting criticism from pro | daily practice | 3/in 3 months CWC |
| 3. leadership course | course wbcy | 3/in 6 months Dec |
| 4. | | |
| 5. | | |
| *Employee-identified Goals/Objectives:* | | |
| 6. Delegation # skills | course work inservices | 3/in 6 months Decenbe |
| 7. Need to IV starts | Daily Practice weekly | ASAP |
| 8. Be more Assertive | Course work inservices | 3/in 6 months |

**Assessment of Prior Performance Period's Goals:**
Note: Refer to Part A of prior year's evaluation and assess achievement

_____

_____

_____

**Career Development Interests:**
What are your long-range career ambitions? I want to get my TNCC, MICN, and BSN in ED/Trauma
[ ] Career interests are currently met in your present position.
[✓] Long-range career interests, preference for future assignments, and/or desirable career development activities:

1. TNCC, MICN, BSN in ED/Trauma
2. become a preptor
3. work more independently & more interactions of EKG's

**Employee Initials:** LMb
(Signifies that the information contained in this Career Development Interests section was provided by the employee and accurately re-states the employee's own career development interests.)

Perfor    )ce Appraisal for Staff Nurse
Appraisal Period:

# Mills-Peninsula Health Services Performance Recognition – Part B, Key Job Functions

Validation Codes: Record Audit (RA); Direct Observation (DO); Test (T); Skills Checklist (SCL); Simulation (S);Patient/Survey/Feedback (PS/FF); Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior; 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

| Technical Competency Assessed<br>Key job functions from job description that are major/high volume, infrequently performed but consequential, recently introduced, or troublesome; include performance criteria/standards. | Validation:<br>[See Key above] | Performance Rating:<br>[See Key above] | Comments: |
|---|---|---|---|
| 1. Provides direct patient care, evaluates outcomes, consults with other health team members and adjusts nursing care plan as indicated to ensure optimal patient care. Completes initial nursing admission assessment and history and develops individual care plans for assigned patients. | DO, CF | 3.0 | Lisa Maria does consistent patient care, and is able to assess and evaluate the outcome. Documentation is accurate and thorough |
| 2. Assesses and monitors patient's medical condition and reports changes to appropriate personnel. | DO, CF | 3.0 | Monitors her patients closely while in the ED. |
| 3. Administers medications to patients within specific guidelines. (4=0 minor errors; 3=1 minor error; 2=2 minor errors; 1=1 major or 3 or more minor errors) | DO, CF | 3.0 | Careful with medication administration, cross checks and follows the principles of safe administration. |
| 4. Writes initial nursing histories, assesses patients' conditions and develops individual care plans for patients assigned to the unit. Documentation is complete and accurate. Initial nursing histories are documented in accordance with unit standards. Ongoing documentation is 100% current and accurate in accordance with unit standards. | DO, CF | 3.0 | Lisa Maria documents her care well, she completes her assessment and reviews the patients past history. Documentation reflects the patient's chief complaint their primary reason for being in the ED. |
| 5. Assess patient's/significant other's readiness to learn, prepares for discharge and provides appropriate educational materials. Documents teaching and ensures that all disciplines participate in the teaching plan. | DO, CF | 3.0 | Does a complete job of providing discharge instructions to the patient and their family members. |

Personnel Appraisal for Mills-Peninsula

Appr: ____  Period: ____

# Mills-Peninsula Health Services Performance Recognition – Part B, Key Job Functions

Validation Codes: Record Audit (RA); Direct Observation (DO); Test (T); Skills Checklist (SCL); Simulation (S);Patient/Survey/Feedback (PS/FF); Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior, 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

| Technical Competency Assessed<br>Key job functions from job description that are major/high volume, infrequently performed but consequential, recently introduced, or troublesome; include performance criteria/standards. | Validation:<br>[See Key above] | Performance Rating:<br>[See Key above] | Comments: |
|---|---|---|---|
| 6. Assumes a professional leadership role in assisting with staff development. Orients, instructs, trains and evaluates nursing team members. Performance validated based on feedback from staff being oriented and direct observation. | DO, CF | 3.0 | Lisa Maria is still learning the ED at this point in time, consistently meeting standards of practice. Has the potential to be a future preceptor. |
| 7. Performs and functions in a leadership role which includes acting as a relief charge nurse and delegating as necessary. Willingly assumes responsibility and acts as a role model for staff. | DO, CF | 3.0 | Lisa Maria is to new to assume charge responsibilities, we hope in the future that she will be interested in assisting with Charge Nurse duties. |
| 8. Maintains a safe, comfortable and therapeutic environment for patients/families in accordance with MPHS standards. Adheres to all JCAHO and Title XXII standards and ensures equipment meets preventive maintenance standards and is fully operational. | DO, CF | 3.0 | Practices safety and follows established policies and procedures when she is working in the ED. She knows the standards from JCAHO and DHS and follows the standards. |

**Overall Section Rating:**    [  ] 1  [  ] 2  [ X ] 3.0    [  ] 4

Perfo    nce Appraisal for Staff Nurse
Apprai...l Period:

# Mills-Peninsula Health Services Performance Recognition – Part C, Key Generic Standards

Validation Codes: Record Audit (RA); Direct Observation (DO); Patient/Survey/Feedback (PS/FF); Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior, 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

| Minimal Requirements: | Does Not Meet Expectations: | Meets Expectations: | Comments: |
|---|---|---|---|
| 1. Complies with established hospital and department dress and personal grooming policies. | | 3.0 | Follows established standards |
| 2. Plans and coordinates time-off so as not to interfere with department scheduling. | | 3.0 | Flexible and cooperative with her time |
| 3. Arrives, begins and concludes work as scheduled. Minimizes incremental of overtime through swiping in and out within established time frames (no more than seven minutes early or late). | | 3.0 | Punctual, and follows standards |
| 4. Takes breaks and meal periods within established guidelines. Secures supervisory approval in advance when unable to take required rest periods and meal periods. | | 3.0 | Follows CN recommendations and directions |
| 5. Completes all time records according to policy. | | 3.0 | Follows policy |
| 6. Works in a manner which ensures his/her own safety and the safety of others. Knowledgeable about department safety/disaster plan. | | 3.0 | Practices safety, knows the safety policies, if on duty here would assist in disaster. |
| 7. Compliant with all Infection Control standards and annual TB test. | | 3.0 | Compliant with IC policies |
| 8. Provides documentation of valid license/certification as required by the job. | | 3.0 | Maintains license and certifications to continue working in the ED |
| 9. Attends/reads minutes for at least 75% of staff meetings. Keep up-to-date with necessary departmental communications and policies. | | 3.0 | Attends regular and mandatory staff meetings and reads departmental updates when posted. |
| 10. Completes required annual M3 coursework and all required unit specific competencies. | | 3.0 | Completes required training on line with a minimum or reminders. |

Appr'   | Period: _____

# Mills-Peninsula Health Services Performance Recognition – Part C, Key Generic Standards

Validation Codes: Record Audit (RA); Direct Observation (DO); Patient/Survey/Feedback (PS/FF), Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior; 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

**Overall Appraisal:**
[ ] 1    Not all minimum requirements fully met
[X] 3    All minimum requirements fully met

| Critical Thinking Skills | Validation: (See Key Above) | Performance Rating: (See Key Above) | Comments: |
|---|---|---|---|
| 1. Takes initiative to share relevant information, issues and concerns directly and assertively with appropriate persons. | DO/CF | 3.0 | Takes it upon herself to report necessary information as appropriate. |
| 2. Identifies potential problem situations and takes appropriate action to minimize any negative impact. | DO/CF | 3.0 | Can see the problems before they happen and acts to prevent any negative outcome. |
| 3. Knows when to get help from immediate supervisor or other resources as appropriate. | DO/CF | 3.0 | Reports 'up' appropriately. |
| 4. Solves problems effectively and creatively. | DO/CF | 3.0 | Consistent problem solving skills–experienced |
| 5. Effectively prioritizes work; meets deadlines. | DO/CF | 3.0 | Can prioritize without difficulty |
| 6. Uses supplies and resources conservatively. | DO/CF | 3.0 | Uses supplies appropriate and without excess waste |
| **Overall Appraisal:**    [ ] 1    [ ] 2    [X] 3.0   [ ] 4 | | | |

| Interpersonal Relations/Customer Service - Standards of Conduct | Validation: (See Key Above) | Performance Rating: (See Key Above) | Comments: |
|---|---|---|---|
| 1. INTEGRITY and ACCOUNTABILITY – Demonstrates uncompromising ethics (#1&2) Accountable for actions. Adheres to Sutter Health Standards for business conduct, Mills-Peninsula policies and procedures and Standards of Conduct. | DO/CF | 3.0 | Accountable for her assignment and reporting the outcomes for to the Charge Nurse. She follows establish policies and procedures to do this. |
| 2. EXCELLENCE – Continuously exceeds organizational, professional and customer expectations.  (#7) Completes and demonstrates job duties/tasks and takes initiative to follow through until service is completed. | DO/CF | 3.0 | Lisa Maria has worked to work to earn the respect of her peers and the ED physicians. She cares about her patients and their families when they are in the ED. |

Perf‑  ance Appraisal for Staff Nurse
App.  al Period:

# Mills–Peninsula Health Services Performance Recognition – Part C, Key Generic Standards

Validation Codes: Record Audit (RA); Direct Observation (DO); Patient/Survey/Feedback (PS/FF); Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior; 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

| | | | |
|---|---|---|---|
| 3.   HONESTY – Commitment to truthful and open conduct in all aspects of work and workplace relationships.<br>(#24) Performs duties in a safe, ethical and honest manner. | DO/CF | 3.0 | Lisa Maria practices safely and ensures that her patients are not harmed while they are in the ED.  She acts as an advocate for them and shares information with them pertinent to their diagnosis |
| 4.   TEAMWORK – The ability to work unselfishly with others toward a common goal or vision.<br>(#27) Takes ownership of any problem that customers bring to my attention by handling those things that I can, takes responsibility for contacting the appropriate person for things that I cannot solve and follow up with the customer to ensure that the issue was resolved. | DO/CF | 3.0 | Lisa Maria is experienced and shares that with others, she is not afraid to teach or assist in problem solving. |
| 5.   RESPECT – Treats everyone with patience, consideration and dignity.<br>(#44) Respects all individuals' beliefs, ideas and contributions in a courteous supportive manner. | DO/CF | 3.0 | Not judgmental-treats patients with kindness, compassion and dignity. |
| 6.   INITIATIVE – Anticipates the needs of others and proactively responds.<br>(#58) Takes the first step in providing service without being asked by anticipating, identifying and resolving concerns/challenges in day-to-day activities. | DO/CF | 3.0 | Takes the initiative to help and assist other nurses when the help is needed to keep the ED running smoothly. |
| 7.   SERVICE – Exceeds performance standards and expectations while enhancing the quality of care to our customers and the quality of the work environment.<br>(#65) Listens carefully to the needs of others, be patient and tolerant in responding to those needs and demonstrates a willingness to go the extra mile when providing service. | DO/CF | 3.0 | Lisa Maria offers consistent customer service by attending to her patients and family member concerns in a timely fashion. |

Appr: 'Period:

# Mills-Peninsula Health Services Performance Recognition – Part C, Key Generic Standards

Validation Codes: Record Audit (RA); Direct Observation (DO); Patient/Survey/Feedback (PS/FF); Co-Worker Feedback (CF).

Performance Rating Key: 1=Resists behavior, 2=Behavior inconsistent; 3=Meets behavior expectations; 4=Facilitates behavior/role mode for colleagues.

| | | |
|---|---|---|
| 8. COMMUNICATION – Efficiently and compassionately communicates with patients, visitors, customers and fellow employees.<br>(#87) Makes eye contact and smile at customers.<br>(#47) Treats others with courtesy and respect, avoiding rudeness and sarcasm. Accepts constructive feedback.<br>(#98) Consistently resolves concerns and follows up as needed. | DO/CF | 3.0 | Lisa Maria continues to work at coming in with a positive attitude and associated behaviors. She can be kind to her peers when she is focused on her positive attitude. |
| **Overall Appraisal:** | [ ]1  [ ]2  [X]3.0  [ ]4 | | |

**EXHIBIT B**



# YOU DESERVE A
# ROSE
REWARD OUTSTANDING SERVICE EXCELLENCE ✓

**AM RECOGNIZING:**

*Lisa Maria Boccignone* (I think)

INT FIRST / LAST NAME

*Emergency*
DEPARTMENT

☑ MILLS HEALTH CENTER? ☑ PENINSULA MEDICAL CENTER

☐ OTHER FACILITY

~~ROM:~~

☑ A PATIENT / GUEST ☐ AN EMPLOYEE
☐ A VOLUNTEER ☐ A MEMBER OF THE PROFESSIONAL STAFF

**ECOGNITION FOR:**

For her outstanding work.
She is so wonderful, patient
and caring. She knows
how to make her patients
smile when they need it.
Thank you Lisa for making
me feel so comfortable. I
know I was in great hands
under your care.

THANK YOU FOR TAKING
THE TIME TO LET US KNOW
ABOUT A JOB WELL DONE.

*respect · initiative · communication · teamwork · service*

*excellence · honesty · accountability · integrity*

---



# YOU DESERVE A
# ROSE
REWARD OUTSTANDING SERVICE EXCELLENCE ✓

**I AM RECOGNIZING:**

*Lisa Maria Boccignone*

PRINT FIRST / LAST NAME

**DEPARTMENT**
☐ MILLS HEALTH CENTER ☑ PENINSULA MEDICAL CENTER
☐ OTHER FACILITY

**FROM:** *Claude*

☐ A PATIENT / GUEST ☑ AN EMPLOYEE
☐ A VOLUNTEER ☐ A MEMBER OF THE PROFESSIONAL STAFF

**RECOGNITION FOR:**

Lisa Maria has been a young R.N.
in E.R. who has been demonstrating
excellent sense of communications
with her co-workers and patients.
Lisa Maria is advocating her patients
by reading their physiological
and emotional needs. Thanks!

Claude

THANK YOU FOR TAKING
THE TIME TO LET US KNOW
ABOUT A JOB WELL DONE.

*respect · initiative · communication · teamwork · service*



## YOU DESERVE A ROSE

REWARD OUTSTANDING SERVICE EXCELLENCE

FEB 0 1 2006

M RECOGNIZING:

_isa Marie
NT FIRST/LAST NAME

Emergency Room
PARTMENT

☐ MILLS HEALTH CENTER ☐ PENINSULA MEDICAL CENTER

☐ OTHER FACILITY

OM: ▓▓▓▓▓▓▓▓▓▓▓

☐ A PATIENT/GUEST ☐ AN EMPLOYEE
☐ A VOLUNTEER ☐ A MEMBER OF THE
PROFESSIONAL STAFF

ECOGNITION FOR:

She was very skilled
t her job and had a
wonderful bedside
manner. She made
our experience
here much more
pleasant.

THANK YOU FOR TAKING
THE TIME TO LET US KNOW
ABOUT A JOB WELL DONE.

---

## YOU DESERVE A ROSE

REWARD OUTSTANDING SERVICE EXCELLENCE

I AM RECOGNIZING: A good nurse can make a hospital stay much less difficult

Lisa Marie Boccignone
PRINT FIRST/LAST NAME

Emergency
DEPARTMENT

☐ MILLS HEALTH CENTER ☐ PENINSULA MEDICAL CENTER

☐ OTHER FACILITY

FROM:

☒ A PATIENT/GUEST ☐ AN EMPLOYEE
☐ A VOLUNTEER ☐ A MEMBER OF THE
PROFESSIONAL STAFF

RECOGNITION FOR:

She has been a speedy
and very efficient
care giver. She has
also been very friendly
and seems genuinely
focused on making
me feel less anxious
and more comfortable.

THANK YOU FOR TAKING
THE TIME TO LET US KNOW
ABOUT A JOB WELL DONE.

FROM ▓▓▓▓▓▓▓▓▓▓

*respect   initiative   excellence   honesty   accountability   integrity   teamwork   service   communication*



**YOU DESERVE A ROSE**

Reward Outstanding Service Excellence

---

## Card 1 (left)

I AM RECOGNIZING:  ~~APR~~ APR 1 2 2006

Lisa Marie (Boccignone)

PRINT FIRST / LAST NAME

Em RN

DEPARTMENT

☐ MILLS HEALTH CENTER    ☐ PENINSULA MEDICAL CENTER
☐ OTHER FACILITY

FROM: ▮▮▮▮▮▮▮▮▮▮

☐ A PATIENT / GUEST    ☐ AN EMPLOYEE
☐ A VOLUNTEER    ☐ A MEMBER OF THE PROFESSIONAL STAFF

RECOGNITION FOR:

Efficient, friendly manner
and sense of humor.
An excellent person
to have on ER staff

*respect · initiative · communication · team*

---

## Card 2 (right top)

**YOU DESERVE A ROSE**

Reward Outstanding Service Excellence

I AM RECOGNIZING:  **JUL 2 6 2006**

Lisa Maria Boccignone

PRINT FIRST / LAST NAME

ER

DEPARTMENT

☐ MILLS HEALTH CENTER    ☒ PENINSULA MEDICAL CENTER
☐ OTHER FACILITY

FROM: ▮▮▮▮▮▮▮▮▮▮

☒ A PATIENT / GUEST    ☐ AN EMPLOYEE
☐ A VOLUNTEER    ☐ A MEMBER OF THE PROFESSIONAL STAFF

RECOGNITION FOR:

Outstanding
Compassionate
Humane
Care !

*excellence · respect · initiative · honesty · communication · accountability · team*

---

## Card 3 (bottom, rotated)

**YOU DESERVE A ROSE**

Reward Outstanding Service Excellence

I AM RECOGNIZING:  APR 1 2 2006

Lisa Maria

PRINT FIRST / LAST NAME

Emergency Room.

DEPARTMENT

☐ MILLS HEALTH CENTER    ☒ PENINSULA MEDICAL CENTER
☐ OTHER FACILITY

FROM: Dennis Sisk - Security

☐ A PATIENT / GUEST    ☒ AN EMPLOYEE
☐ A VOLUNTEER    ☐ A MEMBER OF THE PROFESSIONAL STAFF

RECOGNITION FOR:

CARING NATURE - On March 26
We HAD A PATIENT PASS. AWAY. I
OB served LISA MARIA As she Talked
To The Family Members - She was so
compassionate and caring, it
made me proud to work here.

THANK YOU FOR TAKING
THE TIME TO LET US KNOW

*integrity · accountability · honesty · excellence · respect · initiative · communication · teamwork · serv...*

**EXHIBIT C**

**ASSIGNMENT DESP. OBJECTION / INPATIENT**

You must first verbally protest your assignment to your supervisor at the time you believe it is inappropriate or unsafe. This is usually at the beginning of the shift, but may occur at any time. If your supervisor does not make a satisfactory adjustment to the assignment, complete this form to the best of your knowledge and distribute the ADO copies according to the instructions on the reverse side.

**SECTION I**
I/We __Lisa Maria Borcignone RN__

Registered Nurse(s) employed at __Mills - PenInsula - ER__ _____ __1900 - 0730__
                                        Facility              Unit/Dept              Shift

hereby protest my/our assignment as: ☐ primary nurse, ☐ charge nurse, ☒ relief charge ☐ team leader ☐ team member _____
given to me/us by __Dr/Mgt Penny & Katarine__ on __July 8, 2005__ _____
                        Name / Title                              Date / Time

As a patient advocate, in accordance with the California Nursing Practice Act, this is to confirm that I notified you that, in my professional judgment, today's assignment is unsafe and places my patients at risk. As a result, the facility is responsible for any adverse effects on patient care. I will, under protest, attempt to carry out the assignment to the best of my ability.

**SECTION IIa.** See Title 22 Revisions on reverse side.

I am objecting to the aforementioned assignment on the grounds that: (check all that apply)

☒ I was given an assignment where I did not receive                    __Date of large__
   ☐ orientation to the unit.                                            __07/08/05__
   ☒ training to competently perform my assigned duties and responsibilities.
☒ I was given an assignment which posed a potential threat to the health and safety of my patients (explain in Section V).
☐ Staffing/Skill mix is/was insufficient to:
   ☐ meet the individual patient care needs/requirements of my patients.
   ☒ perform effective assessments of patients assigned to me.
   ☐ meet the teaching/discharge needs identified by my patient's condition.
   ☒ provide breaks to prevent fatigue, accidents, and/or errors.
☒ The unit is/was staffed with
   ☒ unqualified/licensed/unlicensed/certified staff.
   ☐ excessive registry personnel whose competency was not communicated to me.
☐ Direct patient care duties did not allow time for charge nurse duties (clinical supervision/coordination of care).
☐ ICU/CCU patient(s) requiring ☐ 1:1 or ☐ 1:2 nurse staffing ratio are/were not staffed at this level.
☐ New patients were transferred or admitted to unit without adequate staff.
☐ Patient(s) placed inappropriately on the unit, required a higher level of care than could be provided.
☐ I was forced to work beyond my scheduled hours (mandatory overtime).
☒ Other (explain in Section V)

**SECTION IIb.** Working Conditions: (circle)
Meal period missed (YES)/NO   Break missed (YES)/NO   Overtime worked (YES)/NO

**SECTION III** Type of unit:

| | | | | |
|---|---|---|---|---|
| ___Med/Surg | ___ICU/CCU | ___Stepdown/TCU | ___Nursery | ___PACU |
| ___L&D | ___NICU | ___OR | ___Peds | ___Psych |
| ___SNF | ___Telemetry | _X_ER | ___Post-partum | ___Other |

Patient Classification System Name: _____
Census __6__ Acuity high _X_ average ___ low ___ Unit capacity: _____
Staffing system variance (difference between acuity hours and staffed hours) __Drs 1RS + MD__ __An tech, no SCS__

**SECTION IV** Patient care staffing count:   Clerk? ☐ Yes   ☒ No BRAUL 12 0000

| | Regular | Float/Casual | Registry | | Regular | Float/Casual | Registry |
|---|---|---|---|---|---|---|---|
| RN | | | | | | | |
| LVN | | | | OTHER | | | |

**SECTION V** Brief Problem Statement:
POT testing, GT/ANG __Dr 1 RN & 1 and both new to the facility's program assigne - E no a__

**SECTION VI** Complete this section as appropriate.
Patient care affected (This may need to be filled out at the end of your shift.) (Inappropriate Nursing care not done/not done effectively (i.e. assessment, evaluation, personal care, treatments, teaching, charge duties, transfers/admissions, delays, etc.)

Potential/actual hazard that resulted from this situation: __Unknown for all charge notes as I was only briefly oriented to them by Cynthia RN prior to MyShift Friday!__

**SECTION VII - Action:**
Notified Supervisor: __Penny Hutchings__   __07/08/2005__
                        Name / Title                          Date / Time

Supervisory response: _____

Other persons notified: __MD Torre bene & MD Adams 07/08/2005__
                            Name/Title                               Date / Time

Other persons' response: _____

**EXHIBIT D**

**ASSIGNMENT DESP... OBJECTION / INPATIENT**                    NURSES ASSOCIATION

You must first verbally protest your assignment to your supervisor at the time you believe the assignment is unsafe. This is usually at the beginning of the shift, but may occur at any time. If your supervisor does not make a satisfactory adjustment to the assignment, complete this form to the best of your knowledge and distribute the ADO copies according to the instructions on the reverse side.

**SECTION I**
I/We ___Lisa Maria Boccignone RN_____

Registered Nurse(s) employed at __M.115-Peninsula ER___    Unit/Dept ____    Shift __17??-3730__
Facility

hereby protest my/our assignment as: ☐ primary nurse ☑ charge nurse ☑ relief charge ☐ team leader ☐ team member
given to me/us by _J. Gaili / Penny / Katrina_____ on __July 8, 2005__    noon
Name / Title    Date / Time

As a patient advocate, in accordance with the **California Nursing Practice Act**, this is to confirm that I notified you that, in my professional judgment, today's assignment is unsafe and places my patients at risk. As a result, the facility is responsible for any adverse effects on patient care. I will, under protest, attempt to carry out the assignment to the best of my ability.

**SECTION IIa.** See Title 22 Revisions on reverse side:
I am objecting to the aforementioned assignment on the grounds that: (check all that apply)                Date of
☒ I was given an assignment where I did not receive                                                        Charge 07/10
   ☐ orientation to the unit.
   ☐ training to competently perform my assigned duties and responsibilities.
☒ I was given an assignment which posed a potential threat to the health and safety of my patients (explain in Section V).
☐ Staffing/Skill mix is/was insufficient to
   ☐ meet the individual patient care needs/requirements of my patients.
   ☒ perform effective assessments of patients assigned to me.
   ☐ meet the teaching/discharge needs identified by my patient's condition.
   ☐ provide breaks to prevent fatigue, accidents, and/or errors.
☒ The unit is/was staffed with
   ☒ unqualified licensed/unlicensed/certified staff.
   ☐ excessive registry personnel whose competency was not communicated to me.
☐ Direct patient care duties did not allow time for charge nurse duties (clinical supervision/coordination of care).
☐ ICU/CCU patient(s) requiring   ☐ 1:1 or ☐ 1:2  nurse staffing ratio are/were not staffed at this level.
☐ New patients were transferred or admitted to unit without adequate staff.
☐ Patient(s) placed inappropriately on the unit required a higher level of care than could be provided.
☐ I was forced to work beyond my scheduled hours (mandatory overtime).
☒ Other (explain in Section V)

**SECTION IIb. Working Conditions:** (circle)
Meal period missed? YES (NO)    Break missed? YES NO    Overtime worked? YES NO

**SECTION III** Type of unit:
☐ Med/Surg    ☐ ICU/CCU    ☐ Stepdown/TCU    ☐ Nursery    ☐ PACU
☐ L&D    ☐ NICU    ☐ OR    ☐ Peds    ☐ Psych
☐ SNF    ☐ Telemetry    ☒ ER    ☐ Post-partum    ☐ Other

Patient Classification System: Name: _____
Census ____ Acuity: high ____ average ☒ low ____   Unit capacity ____ 2 RNs, 1 MD, a tech or secret.
Staffing system/variance (difference between acuity hours and staffed hours) ____    Clerk? ☐ Yes ☒ No (title)

**SECTION IV** Patient care staffing count:

|  | Regular | Float/Casual | Registry |  | Regular | Float/Casual | Registry |
|---|---|---|---|---|---|---|---|
| RN |  |  |  | AIDE |  |  |  |
|  |  |  |  |  |  |  |  |

**SECTION V** ... was potentially ... LAB ... to perform all the duties. Temporarily scheduled charge nurse called in sick...

**SECTION VI** Complete this section as appropriate.
Patient care affected? (This may need to be filled out at the end of your shift, if appropriate) Nursing care not done/not done effectively (i.e. assessment, evaluation, personal care, treatments, teaching, charge duties, transfers/admissions delayed, etc.)

Potential/actual hazard that resulted from this situation: required for all charge duties. Patient care was potentially compromised by being understaff & no aide added to duties.

**SECTION VII - Action:**
Notified Supervisor: __Penny Hutchings, Manager ED__    07/11/05 6?-
    Name / Title    Date / Time    box

Supervisory response: _____    07/10/05  22.0

Other persons notified: __MD Molander__    _____
    Name/Title    Date/Time

Other persons' response: _____

**EXHIBIT E**

# PERFORMANCE CORRECTION NOTICE

**Disciplinary Level:**
- ☐ Verbal Warning
- ☐ Written Warning
- ☐ Investigatory Leave
- **x** Final Written Warning

**Employee Name: Lisa Maria Boccignone**

**Department Name: ED**

**Manager Name: Foster/Hutchings**

**Subject:**
- ☐ Policy procedure violation
- ☐ Performance transgression
- ☐ Behavior/conduct infraction
- ☐ Workflow impact problem
- ☐ Other

**Prior Notifications:**

| Type | | Date | Subject |
|---|---|---|---|
| ☐ | Verbal | | [Fill In Subject Here] |
| ☐ | Written | | [Fill In Subject Here] |
| X | Final Written | 8/30/05 | Patient Care |

**Incident Description:**

Over a 4-week period in February Lisa Maria was observed using a cell phone to text message during work hours. She was repeatedly reminded to stop and to take care of patients.

2/15/06 - while caring for a demented patient Lisa Maria was heard threatening the patient by saying "I can hit you too."

2/15/06 - Lisa Maria went to the lounge and slept while she was on duty even though she is aware that sleeping while on duty is not allowed.

During this same time period Lisa Maria was observed taking long breaks for lunch and had to be reminded that her meal break is 30 min long. When changing an elderly patient Lisa Maria was observed using excess force to remove the diaper rather than turning the patient to remove it in a more gentile manner.

**Performance Improvement Plan:**

1. Measurable/Tangible Improvement goals.
I expect that phone messaging during work will cease.
I expect that your breaks will be taken according to policy.
I expect that you will not sleep at any time while you are on duty.
I expect that your work with fellow employees and patients will be in compliance with all of the Standards of Conduct and Customer Service.

2. Training or special direction to be provided:
I recommend that you continue to use Assist U
I will provide you with another copy of the Standards of Conduct and Customer Service.

3. Interim performance evaluation necessary?
Your performance will be formally re-evaluated in 30 days and on an ongoing basis after that.

4. Our Employee Assistance Program (EAP) Provider, The Assist U, can be confidentially reached to assist you at 800-750-5595. This is strictly voluntary. A booklet regarding the Assist U is provided for you.

5. In addition, I recognize that you may have certain ideas to improve your performance. Therefore, I encourage you to provide your own Personal Implement Plan Input and Suggestions.

**Outcomes and Consequences:**

**Positive:**
If you meet your performance goals and work to the established professional standards no further disciplinary action will be taken regarding this issue.

**Negative:**
This is your second final written warning. If at any time you fail to meet your performance goals by not working in accordance with established professional standards it will result in termination of your employment with MPHS.

**Scheduled review Date:**

**Employee Comments and/or Rebuttal:**
(Attach additional sheets or Employee Original if needed)

Rebuttal to follow 03/16/2006

_Employee Signature_        03/16/2006        _Bobbi Foster, RN_        3/16/06
                             _Date_           _Manager Signature_ ED Director   _Date_

**EXHIBIT F**

Lots of slightly inaudible noise & talking. Sounds like they were introducing Mills witnesses.

Judge: Hearing is now conveniened. Today is Thurs, 3/1/07, we're in session at San Francisco, California, presiding is administrative law judge DJ Sorvino, hearing is being recorded. Present is the claimant, Lisa Maria, am I pronouncing your last name correctly?

LMB: Boccignone

Judge: Boccignone, ok. Representing her today, your name sir?

RHG: Robert Gold, from Gold & Associates.

Judge: Ok, and with you today?

RHG: my legal assistant, Elizabeth Winchell.

Judge: W-I-N-C-H-E-L-L?

EW: correct.

Judge: Representing the employer, Mills Peninsula Health services, is, your name sir?

OC: George McKennan (???)

Judge: and with you today is, your name please?

BF: Barbara Foster

Judge: and we have an observer…

CC: Claudia Christianson

Judge: ok, and you'll be observing?

CC: yes

Judge: ok and in this matter, Ms. Boccignone has appealed from a department determination dated October 10, 2006 which found Ms. Boccignone in case #1996856 not qualified for benefits based on a finding she was discharged for misconduct connected with work. Misconduct is defined as a substantial breach of an important duty owed by the employee to the employer, which shows a willful or wanton disregard to that duty and intends to injure the employer. The employers account is reimbursable. There is an additional issue of whether the claimant had good cause for failure to appear at a previously scheduled hearing. Good cause includes things like mistakes, inadvertence, surprise and excusable neglect. It does not include negligence, carelessness or procrastination.
The order of testimony will begin with the employer who has the burden of proof, then Ms. Boccignone will present her evidence in testimony. I'll be asking questions. After you have heard and understood the

: she was a 12 hour person she had a schedule set up where she worked so many in one then she'd be off for a period of time

RHG: oh no, I'm sorry we're not on the same page I'm not saying she's off schedule because she was not scheduled to be there, she was placed on suspension

BF: oh, at the end of the month of February, not prior

RHG: so there was four days of that she was placed on suspension correct

BF: right, after it was the end of the month that she was put on suspension

RHG: that would cut down on the four weeks

BF: No, this was four weeks prior

RHG: well it says over a four week period of February and February has 28 days so I'm just trying to be specific <??>

BF: alright, I understand, but over a period of time over a period of four weeks it came to light in the month of February

RHG: ok

BF: cause her peers were finally had reached a point where they were complaining bitterly

RHG: ok, we'll talk about her peers in one second, uh are you aware of the fact that Lisa uh had a miscarriage on February 2, 2006

BF: yes I was

RHG: ok so there was a line here that Lisa Maria went to the lounge and slept while on duty even though she's aware that sleeping on duty's not allowed isn't fatigue a normal symptom of women who have a miscarriage after the first couple of weeks <01:00:19>

BF: uh

RHG: again, that's a yes or no question, you're a nurse

BF: No, I wouldn't answer that with a yes

RHG: you don't think when women have miscarriages and they have the blood and the fetus come out they have fatigue and emotional depression for the first couple of weeks after they have miscarried

BF: yes, I would agree with that

2u

RHG: you would agree or would not

BF: I would agree, but if Lisa had was still having that then she should not have returned to work to her night shift and her regular duty

RHG: well obviously you knew about it correct

BF: I knew that she had had a miscarriage

RHG: right, and you're the supervisor you're the charge nurse, correct

BF: no, I'm the director

RHG: you're the director, you're the top lady

BF: um huh

RHG: so you're the one who would make the decision overall if someone's capable of being at the hospital or not wouldn't you

BF: no her doctor made that decision in returning her to work

RHG: but you're her supervisor

BF: right

RHG and if you feel the person who's working because of a physical ailment even though their trying to be a good trooper is working shouldn't' be there it's your job to send them home isn't it

OC: objection she's answered that question he's repeating his question

Judge: it's been asked and answered

RHG: ok, let me go over this for one second please so she's she's being criticized for text messaging cell phone use is not allowed in the hospital, is that correct

BF: it, it's allowed

RHG: uh, so why is she being criticized

BF: because she was spending the better part of her shift according to her peers text messaging to where they had to remind her to get up and take care of her patients

RHG: ok <can't understand>, who is this

BF: that's my assistant

25

**EXHIBIT G**

**Mills-Peninsula**
**Health Services**

A Sutter Health Affiliate

## REASONABLE ACCOMMODATION REQUEST FORM

Title I and Title V of the Americans with Disabilities Act of 1990 (ADA) and California's Fair Employment & Housing Anti-Disability Discrimination Law prohibit employment discrimination against qualified individuals with disabilities. Mills-Peninsula Health Services (MPHS) supports the Americans with Disabilities Act (ADA) and California's Anti Disability Discrimination Law (FEHA) and will not discriminate in any employment activity against a qualified applicant or employee with a disability. We will make reasonable accommodations to persons with qualifying disabilities unless to do so poses undue hardship. MPHS's Employee Services and Department Manager shall review this request for accommodation in confidence. An examination by a physician of MPHS's choosing may be required to arrive at a reasonable accommodation resolution. Please attach a note from your provider indicating what the reasonable accommodation is.

MPHS may require that you complete the "Authorization for Disclosure of Medical Information" form, as it may be necessary to contact your healthcare provider. This information, if obtained, would be held in confidence and only used to determine the need for reasonable accommodation and implementing accommodation solutions. If you choose not to authorize these disclosures, MPHS will evaluate your request on the basis of the best information available.

**To:** _Bobbi Foster_
(Department Head)

**From:** _Lisa Maria Boccignone RN_
(Name of person requesting accommodation)

**Address:** _853 Commodore Dr #274_
       Street                                   Apt. #

_San Bruno     CA     94066_
City                      State                Zip

**Telephone: Home:** _650-872-0639_ **Alternate #:** _650-515-6944_

1.  I am requesting accommodation because (*circle one*):   A   or   **(B)**

    **(A)**   I am applying for employment. The accommodation requested would allow me to perform the essential job functions of the position I am applying for (position title):

    **(B)**   I am currently employed by MPHS and request a reasonable accommodation. My current job title is: _RN_

2.  My specific functional limitation is _pregnancy_. The accommodation I am requesting is described below. (Describe the type of accommodation; if it is a purchasable item list model, number, cost, where it can be obtained, etc., suggestions for work site or examination site modifications or specific job duties which may be restructured or shared to facilitate employment, or utilize a MPHS program, activity or service.)
_Not lifting over 30lbs, limit exposure to infectious materials & x-rays_

Over

3.  What is the requested duration of your requested accommodation? (Please be specific)

August 04/2006 — Jan 1st 2007

4.  Describe how this accommodation will assist you. *(Please attach additional sheets as necessary)*

Prevent infections & harm to the fetus

5.  Please provide your healthcare provider's information:

Name: Neil St. rson

Address: 1828 El Camino Real STE 805
Street

Burlingame          CA          94010
City                    State          Zip

Phone: 650 - 692-3819

Fax: 650 - 552-0386

## EMPLOYEE CERTIFICATION

I certify that I have a disability or medical condition that requires reasonable accommodation, which will be met by acquiring the equipment, services, or work adjustments described above.

Signature: _____    Date: 08/04/2006

❖ Return this completed form to your Manager.  They will in turn send it to Human Resources.

3.    What is the requested duration of your requested accommodation? (Please be specific)
August 04, 2006 — Jan 1st 2007

4.    Describe how this accommodation will assist you. *(Please attach additional sheets as necessary)*
Prevent infections & harm to the fetus

5.    Please provide your healthcare provider's information:
Name: Neil St. Son
Address: 1828 El Camino Real STE 805
Street
Burlingame          CA          94010
City                           State                 Zip
Phone: 650 - 692-3818
Fax:    650- 552- 0386

## EMPLOYEE CERTIFICATION

I certify that I have a disability or medical condition that requires reasonable accommodation, which will be met by acquiring the equipment, services, or work adjustments described above.

Signature: Rosa Markel Cryan          Date: 08/04/2006

❖  Return this completed form to your Manager.  They will in turn send it to Human Resources.

## Mills-Peninsula Health Serv
### Pregnancy Information Form

**EMPLOYEE:**  Complete this section and forward to your physician to complete. Return completed form to your Manager.

Name: LISA Maria Porcignone

Site: [X] Mills  both  [X] Peninsula  [ ] Other

Home Address: 853 Commodore Dr # 274

Department: Emergency

City: San Bruno  CA  Zip: 94066

Manager/Supervisor: Bobbi foster

Home Phone: 650-872-0639

Job Title: RN    Shift: 1900-0730

Signature: Lisa Maria Porcignone

Date: 08/04/06

I authorize my physician to furnish my employer any information regarding my condition that relates to my work environment.

Job Duties and Environment (To be described by Employee):

All RN DUTIES including moving pts, assisting patients, triage, invasive procedures, exposure to potentially infectious materials

Estimated last day of work: Jan 1, 2007

Estimated return to work date: May 6, 2007

**PHYSICIAN:**  Complete this section and return to the employee. Thank you.

The above named person is under my care for pregnancy, and will be examined by me at regular intervals.  After reviewing the above description of the patient's duties and working environment, it is my opinion that she should be able to perform her work without undue risk of injury to the health of mother, child, patients or fellow employees.  I recommend that she should not work beyond the date indicated.

Estimated date of Delivery: 1/30/07

Employment should not exceed estimated date of: 36 WKS Jan 1, 2...

Recommendations or limitations: Not lifting in excess of 30 lbs, limiting exposure to infectious wastes & x rays.

Physician Name (print):
PENINSULA WOMENS HEALTH
MEDICAL GROUP INC.
1828 EL CAMINO REAL STE 805
BURLINGAME, CA 94010
Nell Sthers

Address: 1828 El Camino Real Ste 8

City: Burlingame, CA 94010

Signature: _____ M.D.

Date: 08/04/2006

Phone: 650 692-3818

**DEPARTMENT MANAGER COMMENTS:**  Manger forward to Employee Services, Attn: Annette J. Barraza, Benefits

Signature: _____    Date: _____

**EMPLOYEE SERVICES COMMENTS:**

Signature: _____    Date: _____

Mills-Peninsula Health Services
Employee Services
1783 El Camino Real
Burlingame, CA 94010
Phone: 650-696-5635
Fax: 650-696-5698

5

**Mills-Peninsula**
**Health Services**

A Sutter Health Affiliate

# REASONABLE ACCOMMODATION REQUEST FORM

Title I and Title V of the Americans with Disabilities Act of 1990 (ADA) and California's Fair Employment & Housing Anti-Disability Discrimination Law prohibit employment discrimination against qualified individuals with disabilities. Mills-Peninsula Health Services (MPHS) supports the Americans with Disabilities Act (ADA) and California's Anti Disability Discrimination Law (FEHA) and will not discriminate in any employment activity against a qualified applicant or employee with a disability. We will make reasonable accommodations to persons with qualifying disabilities unless to do so poses undue hardship. MPHS's Employee Services and Department Manager shall review this request for accommodation in confidence. An examination by a physician of MPHS's choosing may be required to arrive at a reasonable accommodation resolution.

MPHS may require that you complete the "Authorization for Disclosure of Medical Information" form, as it may be necessary to contact your healthcare provider. This information, if obtained, would be held in confidence and only used to determine the need for reasonable accommodation and implementing accommodation solutions. If you choose not to authorize these disclosures, MPHS will evaluate your request on the basis of the best information available.

To: Bobbi Foster
(Department Head)
From: LISA MARIA BOCCIGNONE RN
(Name of person requesting accommodation)
Address:
853 Commodore Dr # 274
Street
San Bruno          CA          Apt. #     94066
City                           State              Zip
Telephone:
(Home)    650-872-0639
(Work)    650-696-5446

1.  I am requesting accommodation because (circle one):    **A**    or    (**B**)

    **(A)**    I am applying for employment. The accommodation requested would allow me to perform the essential job functions of the position I am applying for (position title):

    _____

    (**B**)    I am currently employed by MPHS and request a reasonable accommodation. My current job title is:  _Registered nurse_

2.  My specific functional limitation is  _Pregnancy_
    The accommodation I am requesting is described below. (Describe the type of accommodation; if it is a purchasable item list model, number, cost, where it can be obtained, etc., suggestions for work site or examination site modifications or specific job duties which may be restructured or shared to facilitate employment, or utilize a MPHS program, activity or service.)

    _____
    _____
    _____
    _____

3.  What is the requested duration of your requested accommodation?

    _____

4.  Describe how this accommodation will assist you. (**Please attach additional sheets as necessary**)

    _____
    _____

5.  Please provide your healthcare provider's information:

    **Name:**  _Neil Stinson_

    **Address:**  _1828 El Camino Real STE 805_

    Street

    _Burlingame_                    Apt #    _CA    94010_

    City                              State              Zip

    **Phone:**  _650 - 692 - 3818_

    **Fax:**  _____

## EMPLOYEE CERTIFICATION

I certify that I have a disability or medical condition that requires reasonable accommodation, which will be met by acquiring the equipment, services, or work adjustments described above.

**Signature:** _Chris McBeroy_    **Date:** _____

MPHS Employee Services
Personnel Policy #1.16                              Page 8 of 10

# FMCNA

## CERTIFICATION OF HEALTH CARE PROVIDER

(Attach Job Description)

1. Employee's Name: **LISA Baccignone**

2. Patient's Name (if different from employee): _____

3. The following categories describe what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the appropriate category:

   ☐ (1) Hospital Care - Inpatient care (overnight) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

   ☐ (2) Absence Plus Treatment - A period of incapacity[2] of more than three consecutive calendar days, that also involves:
   - treatment[3] two or more times by a health care provider, by a nurse or physician's assistant under the direct supervision of a health care provider, or a provider of health care services under orders of, or on referral by, a health care provider; or
   - Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[4] under the supervision of the health care provider.

   ☒ (3) Pregnancy - Any period of incapacity due to pregnancy or prenatal care

   ☐ (4) Chronic Conditions requiring Treatments - A chronic condition which:
   - Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under the direct supervision of a health care provider.
   - Continues over an extended period of time (including recurring episodes of a single underlying condition); and
   - May cause episodic rather than a continuing period of incapacity[2] (e.g. asthma, diabetes, epilepsy, etc.)

   ☐ (5) A period of incapacity[2] which is permanent or long term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, severe stroke, or the terminal stages of a disease.

   ☐ (6) Multiple Treatments (Non-Chronic Conditions) - Any period of absence to receive multiple treatment by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer, severe arthritis, or kidney disease.

   ☐ (7) None of the above.

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of the above categories:

   *Pregnancy / premature delivery of baby.*
   *12/13/06 to 1/24/07*

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking leave.

[2] "Incapacity for purposes of FMLA and this form is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom.

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment include, for example, a course of prescription medication or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over the counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

5. 12,05,06 Approximate date the condition commenced

01,24,07 Probable duration of condition

Will it be necessary for the employee to work intermittently
or to work on a less than full time schedule?   ☐ yes   ☒ no

If yes, state the necessary schedule adjustments and probable duration:

If the condition is (3) pregnancy or (4) chronic state whether the patient is presently incapacitated[2] and the likely
duration and frequency of episodes of incapacity[2].

Yes from 12/05/06 to 1/24/07

6. Will additional treatments be required?   ☒ yes   ☐ no

If these treatments will be on an intermittent or part time basis, provided the following:

Number of treatments? Monthly to weekly
Frequency? Monthly to weekly
Actual or estimated dates? 6/08/06, 7/07/06, 8/04/06, 9/01/06, 9/28/06, 10/26/06, 11/15/06, 12/05/06
Recovery period? 6 weeks postpartum

Will any of these treatments be provided by another provider of health services?   ☐ yes   ☒ no

Will a regimen for continuing treatment be required under your supervision?   ☒ yes   ☐ no

If yes, provide a general description (e.g. prescriptions, drugs, physical therapy, etc)

Monthly to weekly office visits, prenatal vitamins,
and a 6 week postpartum check up

7. If the medical leave requires the employee to be absent from work because of the employee's own
condition (including pregnancy or chronic condition), is the employee unable to perform work of any kind?   ☒ yes   ☐ no

Is the employee unable to perform any one or more of the essential functions of the
employee's job (please refer to the attached job description)?   ☒ yes   ☐ no

If yes, list the essential functions the employee is unable to perform:

All work related duties

If the above does not apply, is it necessary for the employee to be absent from work for treatment?   ☐ yes   ☐ no

8. If the leave is required to care for a family member of the employee with a serious health condition,
does the patient require assistance for basic medical or personal needs or safety, or for transportation?   ☐ yes   ☐ no

If no, would the employee's presence to provide psychological comfort
be beneficial to the patient or assist in the patient's recovery?   ☐ yes   ☐ no

If the patient will need care only intermittently or on a part time basis, please indicate the probable duration of this need:

Signature of Physician/Practitioner: _____   Date: 12/21/06

Type of Practice (Field of Specialization, if any): OB/GYN

Please Print Name Address & Phone # of Physician/Practitioner: 1828 El Camino Real #805
Burlingame, Ca 94010   650-692-3818   Nell Stinson MD

(This form must be returned to employer)

White - Employee File   Yellow - Employee   Pink - Physician

**EXHIBIT H**



PEOPLE

# BENEFITS

employee benefits guide

Effective Jan. 1 - Dec. 31, 2007





**Mills-Peninsula Health Services**

A Sutter Health Affiliate



# BENEFITS

employee benefits guide

**Effective Jan. 1 - Dec. 31, 2007**

*Medical   Dental   Vision   Flex Spending Accounts*
*Long-Term Disability   Life Insurance*

## Easy steps to staying informed

It is important to stay up to date about your benefits program to ensure you take advantage of all it has to offer. Here are four easy steps:

- Read this booklet to familiarize yourself with the Mills-Peninsula benefits program;
- Follow the steps shown in Your Enrollment Guide on page 6 to sign up for benefits;
- Carefully review each issue of the employee newsletter, Weekly Update, as well as all memos entitled "RE: Your Benefits" that are sent to your home or distributed with your paycheck;
- Call the Benefits Office with any questions as well as when a family or job status change affects your benefits.

## Important Note for RNs:

If you are a registered nurse covered by the CNA contract, your labor agreement takes precedence over the benefits described in this booklet and the procedures to be followed in connection with those benefits, to the extent they differ. If you are a per diem employee, you have the option to purchase medical insurance at Mills-Peninsula's cost. If you are a contractual per diem employee, you have the option to purchase medical and dental insurance at Mills-Peninsula's cost.

## Discrepancies between this Benefits Book and official plan documents

This Benefits Book contains brief summaries of the benefit programs Mills-Peninsula provides for eligible employees. The purpose of these summaries is to acquaint employees with the general provisions of the applicable plans. For purposes of brevity and simplicity, they do not contain full statements of each of the terms, conditions and limitations of the plans. Consequently, if there is any real or apparent conflict between this Benefits Book and the terms, conditions or limitations of the official plan documents, the provisions of the official plan documents will control. Employees are therefore encouraged to review those documents for more detailed information concerning the plans. You may request copies of those documents from the Benefits Office.

# Your Mills-Peninsula Health Services Benefits Program

**Effective Dates: 1/1/2007 - 12/31/2007**

Please note that this booklet is intended to summarize the provisions of Mills-Peninsula's benefit plans. Although ev
effort has been made to ensure the accuracy of this booklet, if this booklet differs from applicable plan documents, tl
the terms and conditions of those documents will prevail. You may request copies of those documents from the Bene
Office.

Although Mills-Peninsula intends to continue indefinitely the plans described in this booklet, it reserves the right to
change, amend, require contributions and change those contributions, and/or to terminate any plan at any time for
active, retired and/or terminated employees. Termination of a plan will not affect any claim incurred while the plan
was in force.

## Resources

### Information:

| | | |
|---|---|---|
| Benefits Office: | Carol Cruise | Ext. 5017 |
| | Carol Hing | Ext. 5784 |

### Medical Plans:

MPHS Point of Service Health Plan
Benefit Risk Management Services
administrator - (Group #10081)    1-800-988-8373
customersupport@brmsonline.com

US Scripts Pharmacy
Information    1-800-460-8988
(Group #1560)
www.usscripts.com

Mills-Peninsula PPO
Plus and Classic Plans    1-800-988-8373
customersupport@brmsonline.com

Mills-Peninsula Medical Group
Member Services    650-240-8096

Pacificare HMO (66766)    1-800-624-8822
www.pacificare.com

CCN    1-800-988-8373

### Dental Plans:

Delta Dental Premier Plan    1-888-335-8227
(Group #2444)
www.deltadentalca.org

### Vision Plan:

Vision Service Plan    1-800-877-7:
(Group #108419)
www.vsp.com

### Flexible Spending Accounts:

Medical Reimbursement    1-800-988-8:
Fax: 866-410-0:

Dependent Care    1-800-988-8:
Fax: 866-410-0:

### Voluntary — Sheltered Retirement Plans – 403(l Accounts:

Lincoln Financial Services    1-800-359-8:
Rod Acord (Medical Center)    925-659-0:
Peter Morris (Health Center)    650-578-8:

Fidelity Investments (67797)
Customer Service    1-800-343-0:
R.M. Weber Insurance Services
Dan Taylor    1-800-659-3:

### Employee Assistance Program:

Assist U    1-800-750-5:

### Long-Term Disability Plans:

Hartford    1-800-289-9
UNUM    1-800-421-0:
MetLife    1-800-300-4:

### Sutter Health Retirement Services:

| | | |
|---|---|---|
| Lisa Swift | A-L | 1-916-286-6: |
| Kathy Milam | M-Z | 1-916-286-8: |
| Or toll free | | 1-888-280-9: |

# Your Enrollment Guide

To help you enroll for benefits, the chart below shows your benefit options, the actions you need to take to enroll or waive your participation, and the deadlines.

You will find online benefits (vbas) Reference Guide in the envelope included with this booklet.

During the Annual Enrollment period, online instructions will be available in Human Resources or go to www.vbas.com/sutter.

| Your Benefit Options | Actions to take | Deadlines |
|---|---|---|
| *Medical Plans:*<br>Mills-Peninsula Point of Service<br>Mills-Peninsula PPO<br>Pacificare HMO<br>Waive participation<br>     (option available online) | Enroll online at www.vbas.com/sutter<br>Enroll online at www.vbas.com/sutter<br>Enroll online at www.vbas.com/sutter<br>Enroll online at www.vbas.com/sutter | Enroll online no later than effective date. ₁<br>Enroll online no later than effective date. ₁<br>Enroll online no later than effective date. ₁<br>Enroll online no later than effective date. ₁ |
| *Dental Plan:*<br>Delta Dental Premier Plan<br>Waive participation | Enroll online at www.vbas.com/sutter<br>No action required. | Enroll online no later than effective date. ₁<br>None. |
| *Vision Plan:*<br>Vision Service Plan<br>Waive participation | Enroll online at www.vbas.com/sutter<br>No Action required. | Enroll online no later than effective date. ₁<br>None. |
| *Flexible Spending Accounts:*<br>Health Care Expense Account and/or<br>Dependent Care Assistance Account<br><br>Waive participation | Enroll online at www.vbas.com/sutter<br><br>No action required. | Day before effective date. ₁<br><br>None. |
| *Life Insurance Plans:*<br>Group Term Life/AD&D<br>     Insurance Plan<br><br>Optional Life Insurance Plan<br><br>Long Term Disability Plan<br><br>Retirement Plan<br><br>Voluntary 403(b) Retirement Plan | Enroll online at www.vbas.com/sutter (no option to waive).<br><br>Enroll online at www.vbas.com/sutter<br><br>No action required.<br><br>Fill out and return election form.<br><br>Contact a representative listed under Resources on page 4, or request carrier information from Benefits Office. | As soon as possible and whenever beneficiary designation changes.<br><br>Enroll online no later than effective date. ₁<br><br>None.<br><br>Submit no later than effective date. ₁<br><br>None. |

₁ Your effective date is the first of the month following 60 days from your hire date or the date you become eligible for benefits. We recommend you enroll online within one week of your orientation date to ensure ample time for processing prior to your effective date.

## Section highlights

The boxed section below is a brief summary of the general rules that apply to all of the medical, dental and vision plans. Details follow.

---

### Eligibility*

You must be a benefit status employee and work a regular schedule of at least 40 hours in each biweekly pay period.*

### Enrollment

Enroll online at www.vbas.com/sutter prior to your effective date. Unless you have a family or job status change or your special enrollment rights apply, you may only change your coverage at annual enrollment. **Note: you must enroll online to participate in health coverage.**

### Costs

You and Mills-Peninsula share the cost of coverage options. You pay your share of the cost of coverage through pre-tax premiums, which saves you money in taxes.

### Coordination of benefits

If you are covered by another group health plan in addition to Mills-Peninsula's, the plans work together to pay medical benefits based on which plan is primary and which is secondary.

### When coverage ends

In most cases, coverage for you and your dependents ends the last day of the month in which you terminate, are no longer a benefit status employee, or request termination of your coverage at annual enrollment or due to a family or job status change.

### Coverage continuation

If your coverage terminates, you and your dependents may be eligible for medical, dental and vision continuation coverage or may be able to convert to an individual medical plan.

---

## Am I eligible to participate?

You may participate in the medical, dental and vision plans if you are classified as a benefit status employee on the Mills-Peninsula payroll and work a regular schedule of at least 40 hours in each biweekly pay period.* Your participation begins on your effective date, which is the first of the month after 60 days from your hire date or, if later, your benefit status date.

Persons who, for payroll purposes, are treated as independent contractors or leased employees, even if later determined to be common law employees, are not considered eligible employees under the plan. In addition, employees who are in a job classification covered by a collective bargaining agreement are excluded from coverage under the plan unless eligibility under the plan has specifically been extended to such employees through the collective bargaining agreement.

## Are dependents eligible to participate?

Dependents who are eligible for coverage under the medical, dental and vision plans include your:

- Spouse, unless legally separated or divorced;
- Unmarried children up to age 19 who are more than 50 percent dependent on you for financial support (this includes stepchildren, legally adopted children or children placed for adoption, and children under legal guardianship);
- Unmarried children of any age who are incapable of self-sustaining employment due to a physical handicap or mental retardation before attainment of age 19 and qualify as your dependents for federal income tax purposes;
- For coverage under the Mills-Peninsula Point of Service Health Plan and Mills-Peninsula PPO Plan: unmarried children between ages 19 and 25 if they qualify as your dependents for federal income tax purposes;
- For coverage under the Pacificare, Delta Dental and Vision Service Plan: unmarried children up to 19 and to age 25 if they are full-time students at an accredited school and qualify as your dependents for federal income tax purposes as determined by the claim administrator;

*All per diem employees have the option to purchase medical coverage. Contractual per diem employees may purchase medical and dental coverage. For more information, contact the Benefits Office (see Resources on page 4).

9

## General Information (continued)

- If dependents are eligible for coverage with both parents, they may not carry dual coverage with MPHS. Employees with spouses or domestic partners also employed by Mills-Peninsula and eligible for benefits may be enrolled in individual plans, or may enroll in a single plan. However, their dependents may only be covered by one parent.

## Can I add new dependents to my medical coverage?

If you have dependents due to birth, adoption, placement of adoption or marriage, you must enroll them within 60 days of the event. Their coverage will be effective as indicated in the chart below right. You and your dependents may not be eligible for all of these plans. See the section on page 16 entitled Your Medical Options. See special enrollment rights on page 59.

## How do I enroll?

Go to www.vbas.com/sutter to enroll no later than your effective date as defined on page 6. If you are covered under another group health plan or an individual health insurance policy and want to waive medical coverage, you must enroll online no later than your effective date. You will be eligible for a cash out payment if you are a benefit status employee and waive benefits online and are not enrolled in your spouse's plan at MPHS. The cash out payment is paid biweekly in your paycheck.

If you do not enroll during your initial enrollment period and later wish to do so, you must wait until the annual enrollment period, unless you have a qualifying family or job status change or qualify under special enrollment rights.

### Dependent coverage effective dates

| Point of Service | Birth | Adoption | Marriage· |
|---|---|---|---|
| MPHS PPO | Immediate | Physical custody | Immediate |
| Pacificare | Immediate | Physical custody | 1st of next month |
| Delta Dental | Immediate | Physical custody | Immediate |
| Vision | 1st of next month | 1st of next month | 1st of next month |
| Flexible Spending Account | 1st of next month | 1st of next month | 1st of next month |

· Enrollment form must be submitted within 60 days of qualifying event for coverage.

## Health Plan Biweekly Contributions*

| | Mills-Peninsula Point of Service Health Plan | Mills-Peninsula PPO Plus | Mills-Peninsula PPO Classic | Pacificare HMO | Vision Service Plan | Delta Dental |
|---|---|---|---|---|---|---|
| **Noncontractuals:** | | | | | | |
| Employee Only | $5.00 | N/A | $12.00 | $12.00 | $3.00 | $3.00 |
| Employee Plus Spouse/Partner | $26.00 | N/A | $28.00 | $28.00 | $5.00 | $6.00 |
| Employee Plus Children | $24.00 | N/A | $26.00 | $26.00 | $5.00 | $6.00 |
| Employee Plus Family | $30.00 | N/A | $35.00 | $35.00 | $5.00 | $8.00 |
| **RN Contractuals:** | | | | | | |
| Employee Only | $0 | $9.23 | $0 | $6.92 | $2.31 | $0 |
| Employee Plus One Dependent | $16.15 | $25.38 | $20.77 | $20.77 | $4.62 | $6.92 |
| Employee Plus Two or More Dependents | $18.46 | $30.00 | $20.77 | $20.77 | $4.62 | $6.92 |

* For per diem, COBRA, and leave of absence rates, contact the Benefits Office.

# Chart of Administration Information for the Mills-Peninsula Benefit Plans

| | Mills-Peninsula Health Services Point of Service Health Plan | Mills-Peninsula PPO Plans | Pacificare | Delta Dental Premier Plan | Vision Plan Accounts | Flexible Spending | Life/AD&D Insurance Plan | Supplemental Life Insurance | Long-Term Disability |
|---|---|---|---|---|---|---|---|---|---|
| Plan Name Plans | Mills-Peninsula Health Services Point of Service Health Plan | Mills-Peninsula Health Services PPO Classic and PPO Plus | Mills-Peninsula Health Services Pacificare HMO | Mills-Peninsula Health Services Dental Premier Plan | Mills-Peninsula Health Services Vision Service Planning Account | Mills-Peninsula Health Services IRC Section 125 Flexible Spending Benefits for | Group Basic Life & Accidental Death, Dismemberment and Loss of Sight and Loss of Program | Group Supplement Life and Dependent Life Insurance for Health Services Employee of Mills-Peninsula | Group Long-Term Disability Plan for Employees of Mills-Peninsula Health Services |
| Plan Number | 506 | 506 | 506 | 506 | 506 | 508/509 | 506 | 506 | 506 |
| Type of Plan | Welfare benefit plan; Group medical benefits | Welfare benefit plan; Group medical benefits | Welfare benefit plan; Group medical benefits | Welfare benefit plan; Group medical benefits | Welfare benefit plan; Group medical benefits | IRC Section 125 flexible spending account program | Welfare benefit plan; Group basic life, AD&D, and loss of sight benefits | Welfare benefit plan; Group supplemental life and dependent life benefits | Welfare benefit plan; Group long-term disability benefits |
| Source of Plan Contributions | Mills-Peninsula Health Services and participating employees | Mills-Peninsula Health Services and participating employees | Mills-Peninsula Health Services and participating employees | Mills-Peninsula Health Services and participating employees | Mills-Peninsula Health Services and participating employees | Participating employees | Mills-Peninsula Health Services | Mills-Peninsula Health Services and participating employees | Mills-Peninsula Health Services |
| Plan Year | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 | Jan. 1 - Dec. 31 |
| Type of Administration/ Funding | Benefits are furnished under a health care plan funded by the plan sponsor Benefits are self insured | Benefits are furnished under a health care plan funded by the plan sponsor Benefits are self insured | Benefits are furnished under a health care plan funded by the plan sponsor Benefits are self insured | Benefits are furnished under a health care plan funded by the plan sponsor Benefits are self insured | Benefits are furnished under a health care plan funded by the plan sponsor Benefits are self insured | Benefits are provided from Mills-Peninsula general assets | Benefits are provided in accordance with the provisions of the applicable group policy | Benefits are provided in accordance with the provisions of the applicable group policy | Benefits are provided in accordance with the provisions of the applicable group policy |
| Plan Administrator | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 650-696-5678 |
| Agent for Service of Legal Process | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 | Mills-Peninsula Health Services 1783 El Camino Burlingame, CA 94010 |

**EXHIBIT I**

nd Risk Management Services – employee benefit administration solutions

http://www.bmrsonline.com/brms_advantage.asp



## The BRMS Advantage

- ▸ TRUSTED AND VALUED RELATIONSHIPS
- ▸ BENEFIT ADMINISTRATION WITH VBAS®
- ▸ CASE STUDIES AND TESTIMONIALS

## The BRMS Advantage

**Personal Service and Genuine Care**
We work directly with each customer - on a personal level - to ensure we align with your corporate goals, improve your employee benefit efficiency and effectiveness, and reduce your healthcare costs.

With a senior member of our executive team overlooking all accounts, and an Account Management Team (consisting of a seasoned Account Executive who is supported by Account Representatives and a toll free Customer Support Call Center), each client receives personal care and direct access to the answers they need.

*BRMS focuses on building quality relationships*

### Your Account Management Team



**Building Trusted & Valued Relationships to Reduce Healthcare Costs**
BRMS focuses on building quality relationships — both internally and externally — to ensure we align with your corporate healthcare goals, and reduce your costs, so you can focus on building relationships with your employees.

t and Risk Management Services – employee benefit administration solutions

http://www.brmsonline.com/brms_advantage.asp

home | © 2006 brms | California web design by graviate design studio
the brms advantage | about us | services | contact us | site map | privacy
policy

Learn More

**Exclusive Employee Benefit Administration Technology**
Our Virtual Benefits Administration System (Vbas®) is BRMS' exclusive, proprietary technology
solution that manages your member's benefit data, eligibility, enrollment, reporting and
consolidated billing online.

Vbas® empowers employers and employees to manage the entire benefit process via the Internet,
eliminating timely processes, paperwork and errors.

**Employer Advantage**

One secure database houses all employee data
Online communication reduces paperwork
Automated systems enforce plan eligibility
Billing reconciliation reduces errors
Consolidated billing provides one invoice
HR and Payroll data exchange saves time and ensures data integrity
Pre-scheduled custom reports are ready when you need them

**Employee Advantage**

Empowerment to manage their own benefits
24-7 online access anytime, anywhere
Toll-free customer support to answer benefit questions

Learn More

**Experience & Knowledge**
BRMS' experienced senior management team has been working in the employee benefit industry
since the mid-1970's and is comprised of inventive seasoned professionals that enjoy
developing creative solutions that contain
healthcare costs.

Managing over $600 million in employee benefit
premiums annually, our executives are known
for providing valuable insight to HR
professionals and health insurance committees
on a multiplicity of employee benefit
management topics, including:

*Because we are using
Vbas ®], we were able
to make better
benefit decisions
and cut our
administration
costs in half.*

6/11/2007 12:16 PM