and Risk Management Services – employee benefit administration solutions

http://www.brimsonline.com/brms_advantage.asp

Employee benefit risk assessments and plan management *Stockton School District*
Creative funding options
Custom, hands-on consultation
Advanced web-based administration
solutions
Ongoing education on new regulations, compliance issues and industry standards

<u>Learn More</u>

it and Risk Management Services -- employee benefit administration solutions

http://www.brmsonline.com/about.asp

# aBbrms™
Benefit & Risk Management Services



HOME
PROVIDER DIRECTORY
VBAS® MEMBER ACCESS
BROKER SITE™

The BRMS Advantage | About Us | Services | Contact Us | Broker Site

**About Us**

- ▸ WHITE PAPERS
- ▸ PRESS RELEASES
- ▸ EXECUTIVE TEAM
- ▸ EDI CARRIERS
- ▸ JOB OPPORTUNITIES
- ▸ BROKER SITE

**Mission:**
To exceed our customer's expectations by improving healthcare information access and management, simplifying the benefit administration process, and reducing healthcare costs with best-in-class technology and well-trained staff.

## Benefit Administration & Healthcare Risk Management Specialists

*Leading*
*benefit administrator*
*and healthcare*
*risk manager*

Established in 1994, Benefit & Risk Management Services, Inc. (BRMS) is a leading benefit administrator and healthcare risk manager that delivers innovative technology and administration solutions that control rising healthcare costs.

One of the first to introduce employee benefit administration technology solutions, our services are powered by our exclusive Virtual Benefits Administration System (Vbas®) — a proprietary database and administration system that allows employers to save time and money by automating management of the benefit supply chain and empowering employees to self-service their benefits.

Our clientele includes both public and private sector organizations, including industry leading IT companies, vineyards, hospitals, credit unions, homebuilders, school districts, unions and more.



**Education Division**
*Custom Solutions for the*
*Special Challenges Schools Face*

As employee benefit and healthcare managers, we have led the education industry in creative membership and eligibility administration solutions. One of our first clients was a California Unified School District. Ten years later, we are still containing costs for that same client along with over 50 other School Districts throughout the state. In addition, BRMS is helping school districts throughout the country – from New York to California, and Florida to Idaho — to contain their benefit costs with our innovative administration and technology solutions.



© 2006 brms | California web design by graviate design studio

home | the brms advantage | about us | services | contact us | site map | privacy policy

With a special Education Division, staffed by a team of industry veterans with dedicated experience in the Education market, we help School Districts throughout the nation to streamline and reduce employee benefit expenses. Contact us for more information.

View our Education Market Case Studies

**Healthcare Division**
*Specializing in Healthcare Service*
*Provider Employee Benefits*
BRMS has extensive experience in working with healthcare service providers, from large hospitals to mental health, counseling, and care program providers, to name a few. Presently, BRMS manages the consolidated billing and eligibility, as well as the COBRA, FSA, HIPAA and retiree healthcare accounts for over 40 Healthcare facilities representing more than 35,000 employees. In addition, we offer various levels of TPA services designed especially for hospitals and other healthcare service providers who have self-insured their Medical, Dental and Visions programs. These lives all have multi-level network benefits in which BRMS has purchased or contracted (on their behalf) one or more of the network tiers.

Given our extensive expertise in managing the unique challenges that healthcare organizations face when considering self-funding, many providers turn to BRMS to reduce their risk and increase their administration efficiencies. Contact us for more information.

**BRMS Services:**

Vbas® Online Benefit Administration & Enrollment

Employee Communication
Online Enrollment
Data Management
EDI Transfers

http://www.brmsonline.com/about.asp

6/11/2007 12:17 PM

and Risk Management Services – employee benefit administration solutions

Automated Reports
Benefit Statements
Consolidated Billing

Third Party Administration Services
Claims Administration
FSA/HSA/HRA Administration
COBRA Administration
Customer Support Call Center
Auditing

Risk Management
Risk Assessment and Insurance Underwriting
Self-Insured Coverage
Fully-Insured Coverage
Re-Insurance Underwriting and Placement
Medical Management
Utilization Review
Data Warehousing & Reporting
PPO Network Management.

Benefit & Risk Management Services, Inc.
10860 Gold Center Drive, Suite 300
Rancho Cordova , CA 95670
Toll Free: 800.959.4767
Phone: 916.858.2950
Fax: 916.858.2970
Email: info@brmsonline.com

http://www.brmsonline.com/about.asp

6/11/2007 12:17 PM



## gBbrms™
Benefit & Risk Management Services

**Services**

▼ **RISK MANAGEMENT**

- RISK ASSESSMENT AND
  INSURANCE UNDERWRITING
- MEDICAL MANAGEMENT
- UTILIZATION REVIEW
- DATA WAREHOUSING & REPORTING
- PPO NETWORK DEVELOPMENT

▼ **THIRD PARTY ADMINISTRATION**

▼ **VBAS® ONLINE BENEFIT
ADMINISTRATION & ENROLLMENT**

| HOME |
| PROVIDER DIRECTORY |
| VBAS® MEMBER ACCESS |
| BROKER SITE |

| The BRMS Advantage | About Us | Services | Contact Us | Broker Site |

### Risk Assessment and Underwriting

*We excel in alternative strategies to manage your risk.*

BRMS specializes in asset protection and cost containment - proactively identifying and controlling your healthcare risk.

We excel in alternative strategies to manage your risk, such as self-funding, expert underwriting and placement of reinsurance and stop-loss (if required), and affordable fully-insured coverage with leading healthcare insurance providers.

**Self-Funded Coverage**
BRMS can help you determine whether and how to self-fund your company's employee benefit program.

We have the expertise to educate you on the advantages and risks of self-funding and how to protect those risks with stop-loss insurance programs. We will walk you through a step-by-step plan to explore whether this alternative funding solution is a good fit for your company.

In implementing a self-funded benefit program, we employ seasoned industry veterans to design an optimal benefit plan for each organization and benefit group.

You also receive extensive reporting with our inclusive data warehouse, to review and analyze claims activity for better decision making.

When losses occur due to unforeseen situations, we aggressively take action to control the loss with a fully-staffed utilization review and medical management teams.



Learn More about Self-Funding

Fully-Insured Coverage





r Health

https://www.vbas.com/vbas/sutter_login.asp



*Sutter Health*
With You. For Life.

Virtual Benefits Administration System (Vbas)

*Welcome to your*
Online Benefits!

Secure Sign In

**Site Security**

**User Name**

To sign in, enter your Lawson Employee Number in the above field.

**Password**

Your initial password is the last four digits of your Social Security number and the year of
your birth. For example, if your SSN was 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 and your birth year was 1970, then
your password would be 6789197O.

2007-06-11

[ SIGN IN ]

◇ Forgot Your Password, Click Here

   If you do not know or have an email address associated with your User Account, please contact your
   HR or Benefits Department directly.

◇ Minimum System Requirements, Click Here

◇ System Maintenance Schedule, Click Here

◇ Privacy Policy, Click Here

11-JUN

**EXHIBIT J**



**Mills-Peninsula**
**Health Services**

A Sutter Health Affiliate

RECEIV
MAR 2 3 2006
EMPLOYEE SERVICES

COPY
**LEAVE OF ABSENCE FORM**

## EMPLOYEE DATA

Emp. Name: LISA MARIA BOCCIGNON    Home Address: 853 Commodore Dr #

Position: RN    Emp. No. 3601368    City: San Bruno    Zip: 94066

Department: Emergency    Home Phone: 650 - 872 - 0636

Work Site:    Mills ☒    Peninsula ☒    Other ☐

Scheduled Hours Per Pay period: 72    Department Manager: Penny / Bobbi

Hire Date: Jan 2006    Manager Notified: ☒Yes ☐No Date: 02/28/06

## EMPLOYEE REQUEST

Request is for:    ☒ Leave of Absence    ☐ Extension of Original Leave of Absence

My last day scheduled to work will be (or was): 02 / 17²⁰ / 06

I will be off from work starting: 02 / 17²⁰ / 06 and expect to return to work on: 02 / 26 / 06.
(First Day not at Work)    (Estimated Date of Return)

## I will be away from work for the reason(s) checked below: ( ✓ Check all that apply)

⇨ **Illness or non-work-related injury** ☒
   Do you want to use your PTO when your Old Sick/ESL are depleted?    ☒Yes ☐ No

⇨ **Hospitalization** ☐
   ■ _____(date)    Comments:
   Do you want to use your PTO when your Old Sick/ESL are depleted?    ☐ Yes ☐ No

⇨ **Surgery** ☐
   ■ _____(date)    Elective?: Yes or No
   Do you want to use your PTO when your Old Sick/ESL are depleted?    ☐Yes ☐No

⇨ **Work-related injury or illness** ☐
   ■ Date of Injury: _____    ■ Date Injury first reported:_____
   Do you want to use your PTO when your Old Sick/ESL are depleted?    ☐Yes ☐No

⇨ **Military Leave (Active or Reserve duty)** ☐
   *A copy of your orders must be attached*
   Do you want to use your PTO when your salary continuation has ended?    ☐Yes ☐No

⇨ **Pregnancy, childbirth or related medical condition** ☐
   Do you want to use your PTO when your Old Sick/ESL are depleted
   during Pregnancy Disability?    ☐Yes ☐No

   **a.**    **Birth of my child** ☐
      ■ Date of birth or expected birth: _____

   **b.**    **Placement of a child with me for adoption or foster care** ☐
      ■ Date of placement or expected placement: _____

⇨ **Absence due to a "serious health condition" of my son, daughter, spouse or parent** ☐

   ■ Relationship of individual to me: _____

*(The term "son or daughter" is defined under FMLA as a biological, adopted, or foster child, a stepchild, a ward, or a child of a person standing in loco parentis; who is under age 18, or 18 years of age or older incapable of self-care because of a mental or physical disability. The term "parent" does not include parent law. A certification form will be provided for the health-care provider to complete. The form must be submitt Employee Services within 15 calendar days. For more information, refer to Personnel Policy #2.19)*

⇨ **Do you want to use eligible ESL(Old Sick) hours through Kin Care (AB109)?**   ☐Yes ☐No

   *(Hours may be available if you need time off to care for a parent, spouse or child)*

⇨ **Will apply for Paid Family Leave Program**   ☐Yes ☐No

   To provide care for parents, children, spouse or registered domestic partner or to bond with a new child.

   ■ Relationship of individual to me: _____

By submitting this request, I hereby acknowledge receiving a copy of the Mills-Peninsula Health Services' Leave of absenc policies and the Leave of Absence book. I understand that failure to abide by the policies contained in the Leave book an failure to return to work at the end of the approved leave period may result in delay or denial of leave, or it may resu disciplinary action up to and including voluntary termination of your employment. I further acknowledge that leaves of abs may be concurrently charged against my entitlement to leave under all appropriate federal and state laws and that all requ are subject to approval by my Department Manager and Employee Services.

I certify that the above statements are true.

Employee's Signature: ~~Ora McBrroyMu~~   Date: 03 / 24 / 2006

# Return this form to the Disability Management Office in Employee Services.

**EMPLOYEE SERVICES APPROVAL (TO BE COMPLETED BY EMPLOYEE SERVICES ONLY)**

Provisional Designation of Federal Medical Leave Act of 1993 & California Family Rights Act

☒No, does not qualify for FMLA/CFRA:   *Late Notification*

   ➢ Has not worked 1250 hours in the previous 12 months ☐

   ➢ And/or has not employed at MPHS for 1 year ☐

   ➢ Has already used 12 weeks of FMLA/CFRA in the last 12 month period ☐

☐ Yes, qualifies for FMLA/CFRA. Pending receipt of Medical Certification

FMLA/CFRA notification letter provided to Employee on 3 / 24 /06 by _____, Employee Services

☐ Kin Care Leave: Eligible for _____ hours of CSL, Old Sick, or ESL (Pending receipt of Medical Cert.)

Mills-Peninsula Health Services
Employee Services, Disability Mgmt.
1783 El Camino Real
Burlingame, CA 94010
**Phone:** (650) 696-5635
**Fax**   (650) 696-5698

CC: Manager, Payroll, *(Workers' Comp. Coordinator or the Staffing Office if applicable)*   Loareq.doc 1/06

**EXHIBIT K**

Filed 2/14/02

# CERTIFIED FOR PUBLICATION

# COURT OF APPEAL, FOURTH DISTRICT

# DIVISION TWO

# STATE OF CALIFORNIA

| | |
|---|---|
| FREDERICK PHILLIPS, | E029143 |
| Plaintiff and Appellant, | (Super.Ct.No. VCV 018084) |
| v. | OPINION |
| ST. MARY REGIONAL MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Reversed.

Kampf, Schiavone & Associates and James L. Price for Plaintiff and Appellant.

Foley & Lardner, Richard M. Albert, Muira K. Mishra, and Michael A. Graham for Defendant and Respondent.

## 1. Introduction

Plaintiff Frederick Phillips filed a wrongful termination action against defendant St. Mary Regional Medical Center, a nonprofit, religious corporation, alleging that defendant retaliated against him for filing a complaint for race and sex discrimination with the Department of Fair Employment and Housing (DFEH) and the Equal

1

Employment Opportunity Commission (EEOC). Plaintiff claimed that defendant violated the public policy set forth in the Fair Employment and Housing Act (FEHA),[1] article I, section 8 of the California Constitution (Section 8), and Title VII of the Civil Rights Act of 1964 (Title VII).[2] In response to a demurrer filed by defendant, the trial court found, as a matter of law, that plaintiff failed to state a cause of action for wrongful termination because the cited authorities were inadequate to overcome the religious-entity exemption under the pre-amended version of FEHA.

In challenging the court's decision sustaining defendant's demurrer, plaintiff argues that all three sources of public policy were adequate to support his claims for wrongful termination. Although we reject plaintiff's reliance on FEHA, which at the time of plaintiff's termination completely exempted religious entities from liability under its provisions, we agree with plaintiff that Section 8 and Title VII are alternative sources of fundamental and well-established public policy sufficient to support plaintiff's common law cause of action for wrongful termination. Accordingly, we reverse the trial court's judgment.

## 2. Background

In November of 1995, plaintiff began his employment as a social worker at St. Mary Regional Medical Center.

---

[1] Government Code section 12900 et seq.

[2] 42 United States Code section 2000e et seq.

2

In January of 1998, plaintiff filed a complaint with DFEH for race and sex discrimination. In his complaint, plaintiff alleged that, because he was an African-American male, defendant subjected him to discriminatory treatment with regards to certain employment benefits, including pay raises, job duties, and family care and medical leave under the Family Rights Act.[3] On August 19, 1998, plaintiff and defendant entered a settlement agreement resolving the allegations of discrimination.

Less than three months later, on November 9, 1998, defendant terminated plaintiff's employment at the medical center.

In November of 1998, plaintiff filed another complaint with DFEH alleging that defendant suspended and later terminated him because of his earlier complaint for race and sex discrimination. Defendant informed plaintiff that the reason for its employment decision was plaintiff's poor judgment in transferring a patient to another facility.

On May 24, 1999, plaintiff filed his original complaint for the following causes of action: breach of implied contract; breach of the covenant of good faith and fair dealing; retaliation in violation of FEHA; and wrongful termination in violation of public policy. Defendant filed its motion for summary judgment or summary adjudication on the ground that plaintiff's at-will employee status barred his claims for breach of implied contract and breach of the covenant of good faith and fair dealing. Defendant also asserted that it was exempt under FEHA as a nonprofit, religious corporation. As to plaintiff's final cause of action, defendant noted that plaintiff failed to identify a particular public policy.

---

[3] Government Code section 12945.1 et seq.

3

The trial court granted defendant's motion for summary adjudication as to plaintiff's first three causes of action, but denied the motion as to the last cause of action for wrongful termination in violation of public policy. The court granted plaintiff leave to amend his complaint to identify a particular public policy.

On April 19, 2000, plaintiff filed his first amended complaint for wrongful termination in violation of public policy under FEHA, Section 8, and Title VII. In his complaint, plaintiff alleged that defendant terminated him in retaliation for filing a complaint with DFEH and EEOC for race and sex discrimination.

Defendant demurred to plaintiff's first amended complaint on the ground that plaintiff failed to plead facts sufficient to state a cause of action. In support of its demurrer, defendant made the following arguments: FEHA could not support plaintiff's public policy claim because it was exempt from FEHA as a matter of law; Section 8 did not provide the basis for a wrongful termination claim based on retaliation; and Title VII did not apply because plaintiff failed to file his complaint with the EEOC.

At the hearing on August 29, 2000, the trial court noted that plaintiff's complaint included allegations that he had filed claims with both DFEH and EEOC. During the same hearing, the trial court noted that the parties had failed to provide adequate briefing on how the Legislature's recent amendment limiting the religious-entity exemption under FEHA affected plaintiff's claim for wrongful termination in violation of public policy. On this subject, the court requested that the parties submit supplemental briefing.

4

In his supplemental brief, plaintiff argued that the court should consider California's current public policy, as manifested in the amended version of FEHA, because defendant should have foreseen that the Legislature would limit the religious-entity exemption. Defendant responded that the amended version of FEHA could not serve as the basis of plaintiff's wrongful termination in violation of public policy cause of action because the amendments could not be applied retroactively, and because religious-entity liability was not the firmly established public policy in California at the time of plaintiff's termination.

After receiving all further briefing from the parties, the trial court sustained defendant's demurrer without leave to amend.

### 3. Standard of Review

On appeal from a judgment of dismissal following the sustaining of a demurrer, we exercise our independent judgment in determining whether the complaint states, or can be amended to state, a cause of action as a matter of law.[4] In making this determination, we assume the truth of all properly pleaded material facts.[5]

### 4. Wrongful Termination in Violation of Public Policy

The tort cause of action for wrongful termination in violation of public policy provides a vehicle for recourse that otherwise would be unavailable under general rules of

---

[4] *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672.

*[footnote continued on next page]*

5

the at-will employment doctrine.[6] First recognized by the California Supreme Court in

*Tameny v. Atlantic Richfield Co.,*[7] this public policy exception allows an employee to

bring a tort cause of action against an employer who terminates an at-will employment on

a ground that violates fundamental public policy.[8] The exception is based on the

principle that, although an employer may terminate an at-will employee for no reason, or

any arbitrary or irrational reason, the employer has no power to terminate the employee

for a reason contrary to the law or fundamental public policy.[9]

Despite broad acceptance of the public policy exception, "[t]he difficulty . . . lies

in determining where and how to draw the line between claims that genuinely involve

matters of public policy, and those that concern merely ordinary disputes between

employer and employee. This determination depends in large part on whether the public

policy alleged is sufficiently clear to provide the basis for such a potent remedy."[10]

---

*[footnote continued from previous page]*
    [5] *Crowley v. Katleman, supra*, 8 Cal.4th at page 672; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 218.

    [6] *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1089, overruled in part by *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, footnote 6.

    [7] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178.

    [8] *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 887.

    [9] *Gantt v. Sentry Insurance, supra*, 1 Cal.4th at page 1094.

    [10] *Gantt v. Sentry Insurance, supra*, 1 Cal.4th at page 1090.

6

To support a wrongful discharge claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interest of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."[11]

By limiting the sources of public policy to constitutional and statutory provisions, the California Supreme Court recognized that the concept of public policy was "notoriously resistant to precise definition."[12] Thus, "courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]"[13] Moreover, "[a] public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees

---

[11] *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 894; see also *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1112; *Gantt v. Sentry Insurance, supra,* 1 Cal.4th 1083, 1090, citing *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 669-670.

[12] *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095; see also *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 76.

*[footnote continued on next page]*

7

are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded."[14]

### 5. FEHA

Plaintiff offers three sources of public policy, the first of which is FEHA. Plaintiff contends that Government Code sections 12920 and 12940 of FEHA serve as a source of fundamental public policy for his claim of wrongful discharge. Plaintiff also contends that, despite the religious-entity exemption in the pre-amended version of FEHA, the court should have applied the amended version of FEHA retroactively because defendant's liability for such discriminatory conduct was foreseeable.

We conclude that, while FEHA may be a source of fundamental public policy, well-established law, as set forth in the pre-amended version of FEHA, at the time of plaintiff's termination bars his common law claim under FEHA.

FEHA establishes a civil right to be free from job discrimination based on certain classifications including race and sex.[15]  Government Code section 12920 provides: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment

---

*[footnote continued from previous page]*

[13]  *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095.

[14]  *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095.

*[footnote continued on next page]*

8

without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical disability, medical disability, medical condition, marital status, sex, age, or sexual orientation." FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy.[16]

However, FEHA does not serve as a policy basis where another statutory provision exempts defendant from liability. In *Jennings v. Marralle*,[17] the plaintiff sued the defendant for wrongful termination in violation of public policy under FEHA against age discrimination. There, the plaintiff alleged that the defendant terminated her to prevent her from receiving her benefits under defendant's pension plan.

In *Jennings*, the California Supreme Court noted that, while FEHA stated a public policy against employment discrimination based on age, FEHA also limited its application to employers of five or more employees.[18] The court advised that, in extracting public policy from legislation, courts must consider the entire statutory scheme in conjunction with any language limiting its application.[19] Government Code section

---

[footnote continued from previous page]

[15] Government Code section 12921; *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 891.

[16] *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 909.

[17] *Jennings v. Marralle* (1994) 8 Cal.4th 121.

[18] *Jennings v. Marralle, supra*, 8 Cal.4th at page 130.

[footnote continued on next page]

12926, subdivision (d), defines "employer" as "any person regularly employing five or more persons." The court reasoned: "We agree with plaintiff that the public policy declared by the Legislature in section 12920 applies to all employers. It does not follow, however, that in declaring that policy the Legislature intended to create the basis for a common law tort action and to thereby subject employers whom it expressly exempted from FEHA coverage to liability for age discrimination."[20] The court concluded that FEHA's age discrimination policy did not support the plaintiff's cause of action for wrongful discharge in violation of public policy against a defendant that employed fewer than five employees.[21]

In *Kelly v. Methodist Hospital of So. California*,[22] the California Supreme Court addressed another limitation on qualified employers. As here, in *Kelly*, the defendant was a nonprofit, religiously-affiliated hospital. The defendant terminated plaintiff, a 50-year-old nurse, because she refused to return to work after her medical leave expired. In her lawsuit, plaintiff included a claim for wrongful termination based on age in violation of public policy under FEHA.

---

*[footnote continued from previous page]*

[19] See *Jennings v. Marralle, supra*, 8 Cal.4th at page 134; see also *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 904.

[20] *Jennings v. Marralle, supra*, 8 Cal.4th at page 134.

[21] See *Jennings v. Marralle, supra*, 8 Cal.4th at page 136.

[22] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th 1108.

10

Government Code section 12926, subdivision (d) provided that an "employer" did not include a nonprofit religious entity.  Before the amendments, as discussed below, qualified religious entities enjoyed complete exemption from FEHA's requirements.[23] Therefore, the court found the defendant exempt from the plaintiff's claim for wrongful termination in violation of public policy under FEHA.[24]

Likewise, in this case, defendant, as a nonprofit, religious corporation, is exempt from plaintiff's common law claim under FEHA.  And, plaintiff does not challenge defendant's qualification as a nonprofit, religious entity within the meaning of Government Code section 12926, subdivision (d).

Nevertheless, plaintiff, in citing *Dabbs v. Cardiopulmonary Management Services*,[25] argues that the current version of FEHA, which limited the scope of the religious-entity exemption, may serve as the basis of public policy for her wrongful termination claim.

In 1999, the Legislature enacted Government Code section 12922, which provides: "Notwithstanding any other provision of this part, an employer that is a religious corporation may restrict eligibility for employment in any position involving the

---

[23] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at pages 1116, 1119.

[24] *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at page 1126.

[25] *Dabbs v. Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437.

11

performance of religious duties to adherents of the religion for which the corporation is organized."[26]  The Legislature also enacted Government Code section 12926.2. Subdivision (c) of that provision reads:  "Notwithstanding subdivision (d) of Section 12926 and except as otherwise provided in paragraph (1) or (2), 'employer' includes a religious corporation or association with respect to persons employed by the religious association or corporation to perform duties, other than religious duties, at a health care facility operated by the religious association or corporation for the provision of health care that is not restricted to adherents of the religion that established the association or corporation."[27]

As stated earlier, to support a wrongful discharge claim, the public policy must be, among other things, well established at the time of plaintiff's termination.[28]  Obviously, legislation enacted after plaintiff's termination neither existed, nor was well established at the pertinent time.  Although the pre-amended version of FEHA was inconsistent with federal civil rights law,[29] we cannot impose civil liability upon an employer under

---

[26]  Statutes 1999, chapter 913, section 1.

[27]  Statutes 1999, chapter 913, section 2.

[28]  *Stevenson v. Superior Court, supra*, 16 Cal.4th at pages 890, 894.

[29]  See *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at page 1118 (discussing Title VII).

12

FEHA—a legislative scheme that expressly precluded application of its provision to such employers.[30]

Furthermore, the newly enacted provisions of FEHA are not retroactive. Generally, statutes do not apply retroactively unless the Legislature clearly indicated otherwise.[31]  Also, a retroactive statute affects the parties' rights and obligations that exist before the statute's adoption.[32]  In regards to the FEHA amendments, plaintiff concedes that the Legislature made no express provision for retroactive application.  Under the circumstances in this case, the amendments substantially affect defendant's liability under FEHA.  This case does not resemble the situation presented in *Dabbs*, which involved an act, that became operative two months after the plaintiff's termination, but neither changed nor conflicted with existing statutory law and policy that supported the plaintiff's wrongful discharge claim.[33]  In this case, the presumption against retroactive application would preclude plaintiff's reliance on the newly-enacted provisions of FEHA as the basis of public policy for his wrongful discharge claim.

---

[30]  See *Jennings v. Marralle, supra*, 8 Cal.4th at page 132.

[31]  *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1348, quoting *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244.

[32]  *Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 880.

[33]  *Dabbs v. Cardiopulmonary Management Services, supra*, 188 Cal.App.3d at pages 1443-1444.

We conclude that the trial court properly found that FEHA did not support plaintiff's cause of action for wrongful discharge in violation of public policy.

### 6. Section 8

Plaintiff also claimed that defendant terminated his employment in violation of public policy as set forth in Section 8. Section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

Although defendant acknowledges that Section 8 may provide the public policy for discrimination claims, defendant argues that Section 8 does not support wrongful termination claims based on an employer's retaliatory conduct. Defendant's argument lacks merit.

Courts have found Section 8 as an alternative source of public policy for wrongful termination claims.[34] Section 8 reflects fundamental and firmly established public policy against employment discrimination based on certain classifications including race and sex.[35]

---

[34] See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88-91; *Sistare-Meyer v. Young Men's Christian Assn.* (1997) 58 Cal.App.4th 10, 14-15; *Badih v. Myers* (1995) 36 Cal.App.4th 1289, 1296; *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App.4th 382, 387.

[35] See *Rojo v. Kliger, supra*, 52 Cal.3d at page 90 (sex); *Sistare-Meyer v. Young Men's Christian Assn., supra*, 58 Cal.App.4th at pages 14-15 (race); *Carmichael v. Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1132 (race and sex).

14

In *Badih v. Myers*,[36] the defendant claimed that, as an employer with fewer than five employees, he was not subject to liability under FEHA for the plaintiff's wrongful termination claim based on pregnancy discrimination. The plaintiff, however, argued that her wrongful termination claim was not only based on FEHA, but also the public policy set forth in Section 8. The court therefore determined whether pregnancy discrimination constituted a form of sex discrimination under Section 8. Although pregnancy discrimination was not a specifically enumerated category of prohibited discrimination under Section 8, the court, after reviewing certain statutes and court decisions, agreed that pregnancy discrimination should be treated as a form of sex discrimination. In citing the California Supreme Court's decision in *Rojo v. Kliger*,[37] the court held that because Section 8 expresses fundamental public policy against sex discrimination, it provided the public policy basis for maintaining a cause of action for wrongful discharge based on pregnancy discrimination.

As stated above, although defendant may agree that Section 8 provides an alternative source of public policy against discrimination, defendant challenges plaintiff's characterization of his claim as one based on discrimination, as opposed to retaliation. Defendant argues that, while Section 8 states a public policy against discrimination based on race and sex, it provides no policy in regards to employer retaliation. Defendant notes

---

[36] *Badih v. Myers, supra*, 36 Cal.App.4th 1289.

[37] *Rojo v. Kliger, supra*, 52 Cal.3d at pages 90-91.

15

that Section 8 neither explicitly mentions the term "retaliation," nor implicitly prohibits an employer from retaliating against an employee "for filing a charge with a government agency."

Quoting from *Sequoia Ins. Co. v. Superior Court*,[38] defendant states that "[A] constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law."[39] As noted by plaintiff, however, the quoted language is prefaced by the clause: "Although one should not assume that the employer's *precise act* (e.g., discharging an employee for refusing to commit a crime) must be specifically prohibited for the public policy exception to apply . . . ."[40] In *Sequoia*, the plaintiff failed to point to a specific provision of any law in support of his wrongful termination claim.

Here, plaintiff referred to Section 8's prohibition against employment discrimination based on race and sex. In his complaint, plaintiff alleged that defendant terminated his employment in retaliation for filing a claim of race and sex discrimination with the EEOC. As in *Badih v. Myers*,[41] while this form of discrimination is not

---

[38] *Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472.

[39] *Sequoia Ins. Co. v. Superior Court, supra*, 13 Cal.App.4th at page 1480.

[40] *Sequoia Ins. Co. v. Superior Court, supra*, 13 Cal.App.4th at page 1480.

[41] *Badih v. Myers, supra*, 36 Cal.App.4th 1289.

16

enumerated specifically in Section 8, employment discrimination often manifests itself in retaliatory conduct.

Indeed, one category of wrongful discharge claims occurs where an employer terminates an employee for "reporting an alleged violation of a statute of public importance."[42] One court explained: "[A] violation of the statute is *also* a violation of public policy, and if an employer fires an employee who complains to the authorities about such violation, then the termination is a termination in violation of public policy. And such termination, being in contravention of a fundamental public policy, is hence actionable as the tort of wrongful termination in violation of public policy."[43] Courts have allowed wrongful termination claims in the following circumstances: where an employer discharged an employee for complaining about the employer's use of defective parts;[44] where an employer terminated an employee in retaliation for supporting a coworker's sexual harassment claim;[45] where an employer fired employees in retaliation for reporting immigration violations;[46] where an employer fired an employee in

---

[42] *Gantt v. Sentry Insurance, supra*, 1 Cal.4th at page 1091; *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 632.

[43] *Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 661-662; see also *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra*, 3 Cal.App.4th at page 389.

[44] *Green v. Ralee Engineering Co, supra*, 19 Cal.4th at page 73.

[45] *Gantt v. Sentry Insurance, supra*, 1 Cal.4th at page 1085.

[46] *Jie v. Liang Tai Knitwear Co., supra*, 89 Cal.App.4th at page 657.

*[footnote continued on next page]*

17

retaliation for attempting to implement anti-discrimination policies,[47] and, as here, where an employer terminated an employee for filing complaints of race and sex discrimination with the EEOC.[48]

In *Rojo v. Kliger*,[49] the California Supreme Court noted that the plaintiffs alleged that they were terminated for refusing to submit to their employer's sexual advances and that they were terminated in retaliation for exercising their fundamental right to be free from sexual harassment.[50] The court indicated that under either theory, the plaintiffs' causes of action for wrongful discharge in violation of public policy were sufficient to survive demurrer.[51]

For these reasons, we reject defendant's attempt to draw a distinction between retaliation and discrimination. ". . . *Tameny* and its progeny confirm, implicitly and explicitly, that discharge of an employee in retaliation for resisting employer violations of laws that secure important public policies contravenes those policies, and gives rise to a

---

*[footnote continued from previous page]*

[47] *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra*, 3 Cal.App.4th at page 385.

[48] *Carmichael v. Alfano Temporary Personnel, supra*, 233 Cal.App.3d at page 1128.

[49] *Rojo v. Kliger, supra*, 52 Cal.3d 65.

[50] *Rojo v. Kliger, supra*, 52 Cal.3d at page 91.

[51] *Rojo v. Kliger, supra*, 52 Cal.3d at page 91.

common law action in tort."[52]  We hold that the trial court erred in sustaining defendant's

demurrer as to plaintiff's wrongful termination claim based on defendant's retaliation in

violation of Section 8's policy against race and sex discrimination.

### 7. Title VII

In addition to FEHA and Section 8, plaintiff also offered Title VII as an alternative

source of public policy against employment discrimination.

Defendant argues that, because it directly conflicted with the California

Legislature's intent at the time of plaintiff's termination, Title VII could not serve as the

policy basis for defendant's wrongful discharge claim.  Although defendant

acknowledges that courts have relied on federal law to support such claims, defendant

contends that no court has relied on federal authority that directly conflicted with

California law.

We begin our analysis with the relevant provisions of Title VII.  42 United States

Code section 2000e-2 states: "It shall be an unlawful employment practice for an

employer . . . ¶ . . . to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or

national origin . . . ."

---

[52] *Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., supra*, 3 Cal.App.4th at page 389.

19

42 United States Code section 2000e-3(a) provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

Lastly, 42 United States Code section 2000e-1(a) states: "This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."

These provisions indicate that, while federal law is consistent with state law in prohibiting retaliatory discharge for filing a charge of race and sex discrimination, federal law contradicts state law, as it existed at the time of plaintiff's termination, in applying this policy to religious entities.[53]

As discussed above, to support a wrongful termination claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the

---

[53] See *Kelly v. Methodist Hospital of So. California, supra*, 22 Cal.4th at pages 1118-1119.

*[footnote continued on next page]*

20

individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."[54] Without question, federal law condemning employment discrimination based on race and sex satisfies the last three requirements.

The question, however, is whether Title VII is an appropriate source of public policy. "The employer is bound, at a minimum, to know the fundamental public policies of the *state and nation* as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law."[55] Under circumstances as the one presented here, where the public policies of the state and the nation are in direct conflict, the precise issue is whether federal law that is inconsistent with state law can serve as the source of public policy for a state common law cause of action for wrongful termination.

Before evaluating this issue, we first note that in the absence of a conflict between state and federal policies, federal statutory and constitutional law may provide the policy basis for a wrongful termination claim.[56] While the claim is a state law cause of action,[57] there is no requirement that the public policy basis for the cause of action be derived

---

*[footnote continued from previous page]*

   54  See *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 894.

   55  *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1095 (emphasis added); see *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 889.

   56  See, e.g., *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 90.

   57  See *Rains v. Criterion Systems, Inc.* (9th Cir. 1996) 80 F.3d 339, 343-344.
   *[footnote continued on next page]*

solely from state law.[58]  Rather, federal law, and in particular, Title VII, may supply an

alternative public policy basis for a wrongful termination claim.[59]

In *Green v. Ralee Engineering Co.*,[60] the California Supreme Court held that

statutorily authorized federal administrative regulations on airline safety provided the

necessary public policy basis for plaintiff's wrongful termination claim.[61]  The court

noted that its conclusion was consistent with the rule that public policy be tethered to

specific statutory or constitutional provisions.[62]

In response to defendant's argument that the common law claim should not be

based on federal authority that neither prohibits the act of retaliatory termination, nor

provides for civil damages, the court found that the defendant's argument lacked merit

because employers are "responsible for knowing 'the fundamental public policies of the

state *and nation.*' [Citation.]"[63]  The court also noted that, in *Tameny*, the first case in

---

*[footnote continued from previous page]*

[58]  See *Jie v. Liang Tai Knitwear Co., Ltd.*, *supra*, 89 Cal.App.4th at page 665.

[59]  See *Rains v. Criterion Systems, Inc.*, *supra*, 80 F.3d at page 344; *Elliott v. LTD Direct Marketing, Inc.* (D. Ariz. 1997) 1 F.Supp.2d 1031, 1033, footnote 1.

[60]  *Green v. Ralee Engineering Co., supra*, 19 Cal.4th 66.

[61]  *Green v. Ralee Engineering Co., supra*, 19 Cal.4th at page 90.

[62]  *Green v. Ralee Engineering Co., supra*, 19 Cal.4th at pages 74, 90.

[63]  *Green v. Ralee Engineering Co., supra*, 19 Cal.4th at page 87.

which the court recognized the common law cause of action for wrongful termination, the claim was based in part on federal antitrust laws.[64] Thus, so long as the other requirements are satisfied, the public policy for a wrongful termination claim may be delineated in federal statutory, constitutional, and even regulatory provisions.[65]

In this case, although a conflict exists between state and federal law, we have found no authority restricting the use of federal law as public policy for a wrongful discharge claim in the face of conflicting state law. Nevertheless, defendant, during oral argument, contended that, in allowing plaintiff to assert a claim for wrongful discharge in violation of federal public policy that is contrary to clear state legislative intent, we are in effect infringing upon the Legislature's authority to define California's public policy. We disagree. California has not limited the definition of public policy solely to remedies provided by state statutory or regulatory provisions. In enacting FEHA, the state Legislature intended to supplement existing state and federal remedies for employment discrimination.[66]

In fact, nothing in FEHA or Title VII prevents a plaintiff from raising alternative theories for his wrongful termination claim. As stated above, "[t]he absence of an FEHA remedy would not negate the existence of a common law tort remedy if another law

---

[64] *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 88.

[65] *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 90.

[66] *Stevenson v. Superior Court, supra,* 16 Cal.3d at pages 891-892.

23

created the right on which this action is predicated."[67]  Even if a plaintiff relies on a

policy that conflicts with FEHA, such conflict does not preclude plaintiff from submitting

an alternative policy ground.[68]  Unlike other states that either do not provide a common

law public policy exception to the at-will employment doctrine,[69] or do not allow a

common law claim to be based on statutory sources that provide their own remedies,[70]

California law allows a plaintiff to rely on alternative anti-discrimination remedies in

order to afford the plaintiff the maximum opportunity to vindicate his civil rights.[71]

In particular, under California law, despite FEHA's limitation on religious-entity

liability, FEHA was not intended to provide an exclusive remedy for civil rights

violations.[72]  "An examination of [FEHA] supports the view it lacks the

---

[67]  *Jennings v. Marralle, supra*, 8 Cal.4th at page 130.

[68]  See, e.g., *Badih v. Myers, supra*, 36 Cal.App.4th at page 1296.

[69]  See, e.g., *Leathem v. Research Foundation of the City University of New York* (S.D. N.Y. 1987) 658 F.Supp. 651, 654; *Borden v. Johnson* (1990) 196 Ga.App. 288, 289.

[70]  See, e.g., *Diberardinis-Mason v. Super Fresh* (E.D. Pa. 2000) 94 F.Supp.2d 626, 632, citing *Jacques v. Akzo Int'l Salt, Inc.* (1993) 422 Pa.Super. 419, 428-429; *Cormier v. Littlefield* (1998) 13 F.Supp.2d 127, 129; *Hughes v. Bedsole* (4th Cir. 1995) 48 F.3d 1376, 1383, footnote 6.

[71]  *Rojo v. Kliger, supra*, 52 Cal.3d at pages 74-75.

[72]  Government Code section 12993, subdivision (a); *Stevenson v. Superior Court, supra*, 16 Cal.4th at page 899; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 611-612.

24

comprehensiveness necessary to infer a legislative intent to displace all preexisting or alternative remedies for employment discrimination. For example, with the exception of cases involving harassment, the FEHA applies only to 'employers' of five or more persons, it excludes religious associations or nonprofit corporations, and it does not protect against discrimination on grounds of sexual orientation."[73] Plaintiffs are not bound by FEHA's limitations, but rather, are free to seek alternative sources of law to support their wrongful discharge claim.[74] Therefore, limitations, including those that define which employers are subject to liability for employment discrimination under FEHA, do not apply to common law causes of action for wrongful discharge in violation of public policy based on policy found elsewhere.[75]

As with the California Legislature, Congress has promoted liberal construction of its employment discrimination laws to afford the greatest protection to the victims of discrimination.[76] The remedies afforded under Title VII do not preempt a state law claim

---

[73] See *Rojo v. Kliger, supra,* 52 Cal.3d at page 80 (statutory citations omitted); see also *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 898, footnote 7.

[74] *Rojo v. Kliger, supra,* 52 Cal.3d at page 82, see *Carmichael v. Alfano Temporary Personnel, supra,* 233 Cal.App.3d at page 1132 (common law claim was not barred by FEHA's statute of limitations); *Badih v. Myers, supra,* 36 Cal.App.4th 1289, 1293, 1296 (common law claim was not barred by FEHA's requirement that qualifying employer regularly employ five or more persons).

[75] See *Badih v. Myers, supra,* 36 Cal.App.4th at page 1293.

[76] See *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 738; *Robinson v. Adams* (9th Cir. 1987) 847 F.2d 1315, 1319.

*[footnote continued on next page]*

for wrongful termination in violation of public policy.[77] The Congress specifically provided: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State . . . ."[78] The employment discrimination laws of California and the nation, therefore, provide alternative remedies to achieve the goal of combating inequality in the workplace.[79]

In allowing plaintiff to rely on public policy based on the law of the nation, as opposed to the state, another important consideration is whether the employer had adequate notice of such theory of liability. The requirement that the public policy be delineated in a statutory or constitutional provision balances the competing interests of "(1) providing the employer with proper warning it is violating fundamental public policies, (2) ensuring employees are protected against employer actions that contravene fundamental policy, and (3) guaranteeing to the public that employers' interests will not be protected at the expense of society's most important policies. [Citations.]"[80]

---

*[footnote continued from previous page]*

[77] *California Federal Sav. and Loan Ass'n. v. Guerra* (1987) 479 U.S. 272, 282-283; *Rains v. Criterion Systems, Inc., supra,* 80 F.3d at page 345.

[78] 42 United States Code section 2000e-7.

[79] *California Federal Sav. and Loan Ass'n. v. Guerra, supra,* 479 U.S. at pages 282-283; *Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 459.

[80] *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at page 84; see also *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 889.

*[footnote continued on next page]*

The federal anti-discrimination statutes provide employers with adequate notice. Title VII prohibits employment discrimination based on race and sex. Under 42 United States Code section 2000e-1(a), while religious-entity employers may base their employment decisions on religious preferences, they are not exempt from liability for discrimination based on other impermissible grounds including race and sex.[81] Because California religious-entity employers must comply with federal anti-discrimination laws, they have adequate notice that employment discrimination based on race and sex may subject them to possible liability under those laws.

Moreover, in this case, plaintiff's first charge with DFEH noted that he had filed a claim with both DFEH and the EEOC. Plaintiff's charge also listed his EEOC claim number. Plaintiff's second charge with DFEH provided the same information. Therefore, in this particular case, defendants had adequate notice of plaintiff's possible reliance on the provisions of both state and federal law.

For the foregoing reasons, we conclude that, although the public policies under FEHA and Title VII are in direct conflict in regards to the scope of the religious-entity exemption, a plaintiff may rely on Title VII as a source of public policy for his state common law cause of action for wrongful termination. This conclusion, albeit problematic by allowing a plaintiff to extract public policy from various statutes without

[footnote continued from previous page]

[81] See *E.E.O.C. v. Fremont Christian School* (9th Cir. 1986) 781 F.2d 1362, 1366.

complying with certain statutory requirements,[82] is nonetheless consistent with the purpose of both state and federal anti-discrimination laws. In enacting California's anti-discrimination laws, "the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination."[83] The same can be said of Congress's intent in enacting Title VII.[84] Policies against race and sex discrimination are among the state and nation's most fundamental and substantial public policies,[85] and therefore, multiple remedies, while at times overlapping or even conflicting, serve the purpose of maximizing plaintiff's opportunity to seek relief from discrimination based on such impermissible classifications.[86]

Accordingly, the trial court erred in sustaining defendant's demurrer on the ground that plaintiff could not apply Title VII as a public policy source for his wrongful termination claim.

### 8. Disposition

---

[82] See *Stevenson v. Superior Court, supra,* 16 Cal.4th at page 905 (exhaustion of administrative remedies does not apply); *Jie v. Liang Tai Knitwear Co., supra,* 89 Cal.App.4th at page 665 (statutory limitation on damages does not apply); see generally *Stevenson v. Superior Court, supra,* 16 Cal.4th 880, 911-925 (dis. opn. of Brown, J.).

[83] *Rojo v. Kliger, supra,* 52 Cal.3d at page 75.

[84] *Johnson v. Railway Express Agency, supra,* 421 U.S. at page 459.

[85] See *Gantt v. Sentry Insurance, supra,* 1 Cal.4th at page 1101.

[86] *Rojo v. Kliger, supra,* 52 Cal.3d at pages 74-75.

*[footnote continued on next page]*

We reverse the trial court's judgment of dismissal.  Plaintiff shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION

s/Gaut _____

J.

We concur:

s/Hollenhorst _____

Acting P. J.

s/Richli _____

J.

_____

*[footnote continued from previous page]*

29

EXHIBIT L

Mills-Peninsula Health Services
720 El Camino Real
Burlingame, CA 94010

## STATEMENT OF EARNINGS AND DEDUCTIONS

| SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|
| XXX-XX-1001 | 36013681 |

EMPLOYEE NAME

Lisa Maria  Boccignone

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | CHECK NUMBER |
|---|---|---|---|---|---|
| 08/27/2006 | 09/09/2006 | S-03 | S-03 | 09/07/2006 | 92430 |

| CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|
| 2,159.27 | 75,712.40 |

### EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| PTO Scheduled | 24.00 | 46.520 | 1,116.48 | 4,929.67 |
| Relief Charge | | | | 14.00 |
| Charge Time | | | | 20.00 |
| Preceptor Diff | | | | 35.00 |
| GTL-Imputed | | | | 68.00 |
| Educ Reimb Ntxbl | | | | 75.00 |
| Inservice Pay | | | | 131.67 |
| Weekend Diff | | | | 165.00 |
| Base Pay | 16.00 | 51.338 | 821.40 | 53,711.33 |
| PTO Pay Off | 4.63 | 46.521 | 215.39 | 646.54 |
| Weekend Diff | 4.00 | 1.500 | 6.00 | 5,732.41 |
| Overtime | | | | 3,524.08 |
| Doubletime | | | | 2,233.54 |
| Educ-Voluntary | | | | 1,738.02 |
| Holiday Worked | | | | 528.87 |
| MissedBK | | | | |

TOTAL EARNINGS  $2,159.27  $75,712.40

### DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 101.01 | 3,836.56 |
| Ca State Dis Tax | 15.55 | 602.83 |
| Federal Inc Tax | 291.20 | 10,924.26 |
| Soc Sec (OASDI) | 133.88 | 4,689.52 |
| Medicare (HI) | 31.31 | 1,096.74 |
| Lincoln TDA | | 15,000.00 |
| CNA Dues | 41.32 | 711.52 |

| | CURRENT | Y-T-D |
|---|---|---|
| TOTAL DEDUCTIONS | $614.27 | $36,861.43 |
| TOTAL NET PAY | $1,545.00 | $38,782.97 |

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| | | |

| | |
|---|---|
| 0.00 | TOTAL DIRECT DEPOSITS |
| $1,545.00 | CHECK AMOUNT |
| $1,545.00 | TOTAL NET PAY |

STATEMENT OF EARNINGS AND DEDUCTIONS

1720 El Camino Real
Burlingame, CA 94010

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | CHECK NUMBER |
|---|---|---|---|---|---|
| 02/26/2006 | 03/11/2006 | S-03 | S-03 | 02/28/2006 | 92130 |

*(handwritten: ESL ? , P16 ? , 2 Double backs 1 missed break @ MLK Pay)*

### EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 48.25 | 48.716 | 2,350.55 | 13,550.25 |
| GTL-Imputed | | | | 172.40 |
| Edu-Reimb Nutbl | | | 75.00 | 2,942.41 |
| PTO Sched/ed | 24.00 | 43.890 | 1,053.36 | 1,337.13 |
| Doubletime Diff | 4.25 | 87.779 | 373.06 | 1,182.11 |
| Weekend Diff | 24.50 | 1.500 | 36.75 | 1,557.15 |
| Premium Worked | | | | 1,075.57 |
| Holiday Worked | | | | 825.24 |
| Educ-Voluntary | | | | 351.12 |
| misceDedn | | | | 87.76 |

| | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|
| TOTAL EARNINGS | $3,813.72 | $21,641.62 |

| CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|
| 3,813.72 | 21,641.62 |

### DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 148.47 | 1,037.97 |
| Ca State Dis Tax | 30.51 | 172.40 |
| Federal Inc Tax | 418.78 | 2,942.41 |
| Soc Sec (OASDI) | 236.45 | 1,337.13 |
| Medicare (HI) | 55.30 | 312.72 |
| Lincoln TDA | 1,144.12 | 5,023.05 |
| CNA Dues | 38.84 | 194.20 |

| | CURRENT | Y-T-D |
|---|---|---|
| TOTAL DEDUCTIONS | $2,072.47 | $11,019.88 |
| TOTAL NET PAY | $1,741.25 | $10,604.74 |

### DIRECT DEPOSIT DISTRIBUTION

| Description | Amount Number |
|---|---|
| Deposit Amount | |

| | |
|---|---|
| TOTAL DIRECT DEPOSITS | 0.00 |
| CHECK AMOUNT | $1,741.25 |
| TOTAL NET PAY | $1,741.25 |

# Schedules

**Employee N** Boccignone, Lisa Maria   **Employee ID:** 36013681   **Home Account** 227010/36122150/NONE/NONE

**Date Range:** Previous Pay Period   **Start Date:** 3/12/2006   **End Date:** 3/25/2006   **Today's Date:** 3/26/2006

| Date | In | Out | Pay Code | Total Adj. | Account | Work Rule | Shift Total |
|------|------|------|----------|-----------|---------|-----------|-------------|
| Fri 3/17 | 3:00 PM | 7:00 PM | | | 227010/////// | | 4:00 |
| Sat 3/18 | 7:00 PM | 7:00 AM | | | 227010/////// | | 12:00 |
| Sun 3/19 | 3:00 PM | 11:00 PM | | | 227010/////// | | 8:00 |
| Tue 3/21 | 7:00 PM | 11:00 PM | | | 227010/////// | | 4:00 |
| Wed 3/22 | 7:00 PM | 7:00 AM | | | 117010/////// | | 12:00 |
| Thu 3/23 | 3:00 PM | 11:00 PM | | | 117010/////// | | 8:00 |
| Thu 3/23 | 11:00 PM | 7:00 AM | | | 117010/////// | | 8:00 |
| Fri 3/24 | 7:00 PM | 7:00 AM | | | 227010/////// | | 12:00 |
| Sat 3/25 | 7:00 PM | 7:00 AM | | | 227010/////// | | 12:00 |

*[Handwritten annotations: "Consecutive Weekends", "Double back", "Double back", "Consecutive weekends", "80 hrs total"]*

# Hours Summary

| | | | |
|---|---|---|---|
| Employee Name: | Boccignone, Lisa Maria | Employee ID: 36013681 | 227010/36122150/NONE/NONE |
| Date Range: Previous Pay Period | Start Date: 3/12/2006 | End Date: 3/25/2006 | Today's Date: 3/26/2006 |

| Account | Pay Code | Hours | Amount | Wages |
|---|---|---|---|---|
| 117010/36122150/NONE/NONE/// | 130-Base Pay 100-2 | 7:45 | | |
| | 140-Base Pay 100-3 | 16:00 | | |
| | 239-Dbltime 220-1 | 3:30 | | |
| 227010/36122150/NONE/NONE/// | 110-Base Pay 100-1 | 0:30 | | |
| | 130-Base Pay 100-2 | 16:30 | | |
| | 139-Weekend 301-1 | 20:45 | | |
| | 140-Base Pay 100-3 | 15:45 | | |
| | 219-Overtime 210-1 | 7:45 | | |
| | 239-Dbltime 220-1 | 0:45 | | |

74.575

# Hours Detail

Empl... ...Name:  Employee ID:  Home Acc...
Base 3-07-11-06843-CRB Lisa Mariam 3601363  707010361  NONE/NONE  Page 47 of 79
Date R... ...ge:  Start Date:  End Date:  Fred 12/12/2007  Today's Date:
Previous Pay Period  3/12/2006  3/25/2006  3/26/2006

| Shift Date | Account/Work Rule | Start Time | Start Exc | Stop Time | Stop Exc | Entered Amount | Totaled Amount | Money Amount | 110-Base Pay 1 |
|---|---|---|---|---|---|---|---|---|---|
| Fri 3/17 | | 2:47 PM | E | 7:30 PM | L | 0:00 | 4:45 | | 0:15 |
| Sat 3/18 | | 6:51 PM | E | 7:23 AM | L | 0:00 | 11:45 | | |
| Sun 3/19 | | 2:57 PM | | 3:54 PM | E | 0:00 | 1:00 | | 0:15 |
| Tue 3/21 | | 7:01 PM | | 7:13 AM | L | 0:00 | 11:45 | | |
| Wed 3/22 | | 7:01 PM | | 7:14 AM | L | 0:00 | 11:45 | | |
| Thu 3/23 | | 3:10 PM | L | 7:41 AM | LL | 0:00 | 15:30 | | |
| Fri 3/24 | | 6:56 PM | | 7:23 AM | L | 0:00 | 12:00 | | |
| Sat 3/25 | | 6:54 PM | E | | M | 0:00 | 0:00 | | 0:00 |

*80.5hrs total*

*$3461.50 before taxes & deductions*

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

# STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Bocignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|
| 03/12/2006 | 03/25/2006 | S-03 | 03/31/2006 | 173067 |

| ESL | PTO | ST WH | | |
|---|---|---|---|---|
| 46.41 | 23.46 | S-03 | | |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y - T - D AMOUNT |
|---|---|---|---|---|
| Base Pay | 40.25 | 51.000 | 2,052.75 | 19,507.36 |
| Educ-Reimb Nxtl | | | | 75.00 |
| Educ-Voluntary | | | | 351.12 |
| Holiday Worked | | | | 822.24 |
| PTO Scheduled | | | | 1,580.04 |
| CTO Imputed | | | 4.25 | 21.25 |
| Base Pay | | 43.880 | 10.97 | |
| Doubletime | 0.25 | 94.160 | 23.54 | |
| Weekend Diff | 0.25 | 49.200 | 12.88 | 243.78 |
| Base Pay | 33.25 | 47.840 | 1,542.84 | 2,149.03 |
| Overtime | 15.50 | 69.255 | 1,073.46 | 1,984.51 |
| Doubletime | 4.50 | 94.622 | 425.80 | 1,166.50 |
| Weekend Diff | 20.00 | 8.250 | 165.00 | |
| MissedBK | 2.00 | 47.840 | 95.68 | 183.46 |

| | TOTAL EARNINGS | | $5,444.17 | $27,085.79 |
|---|---|---|---|---|

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $2,332.30 | Checking | ****4-14846 |

| $2,332.30 | TOTAL DIRECT DEPOSITS |
|---|---|

## DEDUCTIONS

| CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|
| 5,444.17 | 27,085.79 |

| DESCRIPTION | CURRENT AMT | Y - T - D AMT |
|---|---|---|
| Ca State Inc Tax | 254.22 | 1,292.19 |
| Ca State Dis Tax | 43.52 | 215.92 |
| Federal Inc Tax | 721.31 | 3,663.72 |
| Soc Sec (OASDI) | 337.54 | 1,574.67 |
| Medicare (HI) | 78.94 | 391.66 |
| Lincoln TDA | 1,633.25 | 6,656.30 |
| CNA Dues | 38.84 | 233.04 |

| TOTAL DEDUCTIONS | $3,107.62 | $14,127.50 |
|---|---|---|
| TOTAL NET PAY | $2,332.30 | $12,937.04 |

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

## STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 04/09/2006 | 04/22/2006 | S-03 | S-03 | 04/28/2006 | 177179 |

| ESL | PTO | | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|---|
| 49.81 | 8.55 | | | 3,189.47 | 34,891.25 |

### EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 24.00 | 51.000 | 1,224.00 | 25,191.30 |
| Educ Reimb Ntxbl | | | | 75.00 |
| Weekend Diff | | | | 165.00 |
| Educ-Voluntary | | | | 825.24 |
| Holiday Worked | | | | 2,099.81 |
| Doubletime | | | | 2,711.60 |
| Overtime | | | | 329.75 |
| GTL-Imputed | 20.00 | 1.500 | 4.25 | 331.79 |
| Weekend Diff | 20.00 | 1.750 | 30.00 | 35.00 |
| Reserve-Diff | 27.80 | 43.890 | 35.00 | 2,800.18 |
| PTO Scheduled | 12.00 | 47.840 | 1,220.14 | |
| Base Pay | 2.00 | 51.000 | 574.08 | |
| MissdBK | | | 102.00 | 285.46 |

| | TOTAL EARNINGS | $3,189.47 | $34,891.25 |
|---|---|---|---|

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $1,504.14 | Checking | ****-1-14846 |

| $1,504.14 | TOTAL DIRECT DEPOSITS |
|---|---|

### DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 107.44 | 1,599.94 |
| Ca State Dis Tax | 25.48 | 278.29 |
| Federal Inc Tax | 308.48 | 4,531.19 |
| Soc Sec (OASDI) | 197.75 | 2,150.61 |
| Medicare (HI) | 46.25 | 504.84 |
| Lincoln TDA | 956.84 | 8,397.54 |
| CNA Dues | 38.84 | 310.72 |

| TOTAL DEDUCTIONS | $1,681.08 | $18,381.53 |
|---|---|---|
| TOTAL NET PAY | $1,504.14 | $16,479.97 |

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

# STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 05/07/2006 | 05/20/2006 | S-03 | S-03 | 05/26/2006 | 181279 |

| ESL | PTO | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|
| 53.42 | 12.22 | | 3,787.03 | 45,213.94 |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 40.00 | 51.000 | 2,040.00 | 32,028.64 |
| Base Diff | | | | 35.00 |
| Educ Reimb Ntxbl | | | | 75.00 |
| Inservice Pay | | | | 131.67 |
| Weekend Diff | | | | 185.60 |
| Educ Voluntary | | | | 351.12 |
| Holiday Worked | | | | 825.24 |
| Overtime | 16.00 | 1.500 | 4.25 | 5,182.89 |
| GTL-Imputed | 1.00 | 24.000 | 24.00 | 405.79 |
| Weekend Diff | 20.00 | 43.890 | 43.89 | |
| Base Pay | 12.00 | 47.840 | 956.80 | 3,326.86 |
| PTO Scheduled | 1.50 | 43.890 | 526.68 | 2,240.22 |
| Doubletime | 1.00 | 93.807 | 146.51 | 438.46 |
| MissedBK | | 51.000 | 51.00 | |

| | | | CURRENT | Y-T-D |
|---|---|---|---|---|
| TOTAL EARNINGS | | | $3,787.03 | $45,213.94 |

## DIRECT DEPOSIT DISTRIBUTION

| Description | Account Number | Deposit Amount |
|---|---|---|
| Checking | *****4-14846 | $1,728.47 |

| TOTAL DIRECT DEPOSITS | $1,728.47 |
|---|---|

## DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 148.34 | 2,071.56 |
| Ca State Dis Tax | 30.27 | 380.81 |
| Federal Inc Tax | 413.05 | 5,879.48 |
| Soc Sec (OASDI) | 234.79 | 2,798.61 |
| Medicare (HI) | 54.91 | 654.51 |
| Lincoln TDA | 1,136.11 | 12,094.75 |
| CNA Dues | 38.84 | 388.40 |

| TOTAL DEDUCTIONS | $2,054.31 | $24,248.12 |
|---|---|---|
| TOTAL NET PAY | $1,728.47 | $20,927.57 |

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

# STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccipone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED W/H | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|
| 05/21/2006 | 06/03/2006 | S-03 | 06/09/2006 | 183315 |

| FSL | PTO | ST W/H | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|
| 55.12 | 6.88 | S-03 | 3,551.73 | 48,765.67 |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 40.00 | 51.000 | 2,040.00 | 35,025.44 |
| Preceptor Diff | | | | 75.00 |
| Educ Reimb (taxb) | | | | 131.67 |
| Inservice Pay | | | | 165.00 |
| Weekend Diff | | | | 351.12 |
| Educ-Voluntary | | | | |
| Base Pay | | 47.840 | 956.80 | 3,853.54 |
| PTO Scheduled | 20.00 | 43.850 | 526.68 | 429.79 |
| Weekend Diff | 12.00 | | 24.00 | 142.50 |
| GTL-Imputed | 16.00 | 1.500 | 4.25 | 5,112.29 |
| Overtime | | | | 2,240.29 |
| Doubletime | | | | 825.24 |
| Holiday Worked | | | | 438.46 |
| MissedBK | | | | |

| | CURRENT | Y-T-D |
|---|---|---|
| TOTAL EARNINGS | $3,551.73 | $48,765.67 |

## DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 131.02 | 2,202.58 |
| Ca State Dis Tax | 28.38 | 389.19 |
| Federal Inc Tax | 371.87 | 6,251.35 |
| Soc Sec (OASDI) | 220.21 | 3,018.62 |
| Medicare (HI) | 51.50 | 706.01 |
| Lincoln TDA | 1,065.52 | 13,160.27 |
| CNA Dues | 38.84 | 427.24 |

| | CURRENT | Y-T-D |
|---|---|---|
| TOTAL DEDUCTIONS | $1,907.34 | $26,155.46 |
| TOTAL NET PAY | $1,640.14 | $22,567.71 |

## DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $1,640.14 | Checking | ****4-14846 |

| | |
|---|---|
| $1,640.14 | TOTAL DIRECT DEPOSITS |

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

## STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 06/04/2006 | 06/17/2006 | S-03 | S-03 | 06/23/2006 | 185337 |

| ESL | PTO | | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|---|
| 56.61 | 6.69 | | | 3,106.58 | 51,872.25 |

### EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 28.00 | 51.000 | 1,428.00 | 37,778.48 |
| Precepcor Diff | | | | 25.00 |
| Educ/Reimb/Ncog | | | | 75.00 |
| Inservice Pay | | | | 131.67 |
| Medical Diff | | | | 165.00 |
| Educ Voluntary | | | | 351.12 |
| Base Pay | 16.00 | 47.840 | 765.44 | 4,138.83 |
| Base Pay | 12.75 | 43.890 | 559.60 | 459.79 |
| PTO Scheduled | 6.50 | 43.901 | 285.36 | 14.00 |
| Weekend Diff | 20.00 | 1.500 | 30.00 | 20.00 |
| Charge Time | 8.00 | 2.500 | 20.00 | 46.75 |
| Relief Charge | 8.00 | 1.750 | 14.00 | 5,152.69 |
| GTL-Imputed | | | 4.25 | 2,240.27 |
| Overtime | | | | 825.25 |
| Doubletime | | | | 438.46 |
| Holiday Worked | | | | |
| MiscdBK | | | | |

| | | CURRENT | Y-T-D |
|---|---|---|---|
| TOTAL EARNINGS | | $3,106.58 | $51,872.25 |

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $1,473.04 | Checking | ****4-14846 |

| | Deposit Amount | |
|---|---|---|
| $1,473.04 | | |

| TOTAL DIRECT DEPOSITS | $1,473.04 |
|---|---|

### DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 102.04 | 2,304.62 |
| Ca State Dis Tax | 24.81 | 414.00 |
| Federal Inc Tax | 293.97 | 6,545.32 |
| Soc Sec (OASDI) | 192.61 | 3,211.43 |
| Medicare (HI) | 45.05 | 751.06 |
| Lincoln TDA | 931.97 | 14,092.24 |
| CNA Dues | 38.84 | 466.08 |

| | CURRENT | Y-T-D |
|---|---|---|
| TOTAL DEDUCTIONS | $1,629.29 | $27,784.75 |
| TOTAL NET PAY | $1,473.04 | $24,040.75 |

Time Detail

Use the browser's Print command to print this page.

**Time Period:** Previous Pay Period
**Dates:** 6/18/2006 - 7/01/2006

**Printed:** 7/05/2006

**Name:**
Boccignone, Lisa Maria    **ID:** 36013681    **Pay Rule:** MPH CNA 12-40
**Primary Account(s):**    4/23/2006 - forever   360/36022/1/360227010/0/36036130265/2

| Date | Apply To | In Punch | In Exc | Out Punch | Out Exc | $Amt | Adj/Ent Amount | Totaled Amount | Cum. Tot. Amount | Absence |
|------|----------|----------|--------|-----------|---------|------|---------------|----------------|------------------|---------|
| Sun 6/18 | | 14:55 | | 7:28 | LE | | | 15.5 | 15.5 | |
| Mon 6/19 | | | | | | | | | 15.5 | |
| Tue 6/20 | | | | | | | | | 15.5 | |
| Wed 6/21 | | 18:56 ///360117010/// | | 7:01 | | | | 11.5 | | |
| Wed 6/21 | 814-BREAK PENALTY-SH 1 | | | | | | 1.0 | | 28.0 | |
| Thu 6/22 | | 18:56 | | 7:50 | LV | | | 12.25 | | |
| Thu 6/22 | MISSED MEAL | | | | | | 1.0 | | 41.25 | |
| Fri 6/23 | | | | | | | | | 41.25 | |
| Sat 6/24 | | | | | | | | | 41.25 | |
| Sun 6/25 | 732-EDUCATION NP-SH 1 | | | | | | 12.0 | | 53.25 | |
| Mon 6/26 | 732-EDUCATION NP-SH 1 | | | | | | 12.0 | | 65.25 | |
| Tue 6/27 | 732-EDUCATION NP-SH 1 | | | | | | 12.0 | | 77.25 | |
| Wed 6/28 | | | | | | | | | 77.25 | |
| Thu 6/29 | | | | | | | | | 77.25 | |
| Fri 6/30 | | 18:56 ///360117010/// | | 7:23 | LV | | | 12.0 | | |
| Fri 6/30 | MISSED BREAK | | | | | | 1.0 | | 90.25 | |
| Sat 7/01 | | 18:58 | | 7:23 | LV | | | 12.0 | 102.25 | |
| **Totals** | | | | | | 0.00 | 39.0 | 63.25 | 102.25 | |

*(handwritten annotation:)* double shift

*(handwritten annotation, right margin:)* Should be 16 hrs only one 1/2 hr break

**Account Summary**

| Account | Pay Code | Money | Hours |
|---------|----------|-------|-------|
| (x)360/36022/1/360117010/0/36036130265/2 | | | |
| | 100-BASE-SH 2 | | 8.0 |
| | 100-BASE-SH 3 | | 15.5 |
| | 301-WEEKEND DIFF-1 | | 8.0 |
| 360/36022/1/360227010/0/36036130265/2 | | | |
| | 100-BASE-SH 2 | | 15.5 |
| | 100-BASE-SH 3 | | 20.5 |

|  |  |
|---|---|
| 220-DOUBLETIME-SH 1 | 3.75 |
| 301-WEEKEND DIFF-1 | 19.5 |
| 732-EDUCATION NP-SH 1 | 36.0 |
| 814-BREAK PENALTY-SH 1 | 1.0 |
| MISSED BREAK | 1.0 |
| MISSED MEAL | 1.0 |

## Pay Code Summary

| Pay Code | Money | Hours |
|---|---|---|
|  |  | 23.5 |
| 100-BASE-SH 2 |  | 36.0 |
| 100-BASE-SH 3 |  | 27.5 |
| 301-WEEKEND DIFF-1 |  | 3.75 |
| 220-DOUBLETIME-SH 1 |  | 36.0 |
| 732-EDUCATION NP-SH 1 |  | 1.0 |
| 814-BREAK PENALTY-SH 1 |  | 1.0 |
| MISSED BREAK |  | 1.0 |
| MISSED MEAL |  |  |
| **Totals** | 0.00 | 129.75 |

$557 9.25
before taxes

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

# STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | | | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|---|---|---|
| Lisa Maria Boccignone | | | | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 06/18/2006 | 07/01/2006 | S-03 | S-03 | 07/07/2006 | 187360 |

| ESI | PTO | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|
| 58.50 | 15.58 | | 4,979.36 | 56,851.61 |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 36.00 | 51.000 | 1,836.00 | 40,738.72 |
| Relief Charge | | | | 14.00 |
| Charge Pay | | | | 20.00 |
| Precep Diff | | | | 35.00 |
| Educ Reimb Nrnbl | | | | 780.00 |
| Inservice Pay | | | | 131.60 |
| Weekend Diff | | 1.500 | 4.25 | 165.00 |
| Holiday Worked | | | 41.25 | 825.24 |
| PTO Scheduled | | 43.880 | 1,580.04 | 5,138.83 |
| Overtime | 27.50 | | 1,124.84 | 5,115.69 |
| GTL-Imputed | 36.00 | | 93.89 | 51.00 |
| Weekend Diff | 23.50 | | 453.89 | 501.04 |
| Educ-Voluntary | 3.75 | 93.781 | | 1,931.16 |
| Base Pay | 1.00 | 73.580 | | 2,589.91 |
| Doubletime | | | | 482.35 |
| MissedBK | | | | |

| TOTAL EARNINGS | $4,979.36 | $56,851.61 |
|---|---|---|

## DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 278.46 | 2,583.08 |
| Ca State Dis Tax | 39.80 | 453.80 |
| Federal Inc Tax | 744.30 | 7,339.62 |
| Soc Sec (OASDI) | 308.72 | 3,520.15 |
| Medicare (HI) | 72.20 | 823.26 |
| Lincoln TDA | 807.76 | 15,000.00 |
| CNA Dues | 38.84 | 504.92 |

| TOTAL DEDUCTIONS | $2,440.08 | $30,224.83 |
|---|---|---|
| TOTAL NET PAY | $2,535.03 | $26,575.78 |

## DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $2,535.03 | Checking | *****4.14846 |

| TOTAL DIRECT DEPOSITS | $2,535.03 |
|---|---|



Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

**STATEMENT OF EARNINGS AND DEDUCTIONS**

| EMPLOYEE NAME | | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|---|
| Lisa Maria Boccignone | | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 07/02/2006 | 07/15/2006 | S-03 | S-03 | 07/21/2006 | 189409 |

| | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|
| | | | 61,457.63 |

**EARNINGS**

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 46.25 | | 2,500.28 | 44,519.64 |
| Relief Charge | | | | 14.00 |
| Charge Time | | | | 20.00 |
| Precept Diff | | | | 75.00 |
| Educ Reimb Ntbl | | | | 131.67 |
| Inservice Pay | | | | 166.00 |
| Base Pay | 19.75 | | 1,001.52 | |
| Weekend Diff | 4.00 | | 279.12 | 4,324.91 |
| Holiday Worked | 4.00 | | | 1,129.50 |
| PTO Scheduled | 4.00 | | 186.08 | 2,238.01 |
| Overtime | 1.50 | | 149.09 | 837.04 |
| Doubletime | 24.00 | | 36.00 | 55.25 |
| Weekend Diff | | | 4.25 | 1,931.16 |
| GTL-Imputed | | | | 482.35 |
| Educ-Voluntary | | | | |
| MiscedBK | | | | |

| | | TOTAL EARNINGS | $4,606.02 | $61,457.63 |
|---|---|---|---|---|

**DEDUCTIONS**

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 328.17 | 2,911.25 |
| Ca State Dis Tax | 36.82 | 490.62 |
| Federal Inc Tax | 943.94 | 8,283.56 |
| Soc Sec (OASDI) | 285.57 | 3,805.72 |
| Medicare (HI) | 66.79 | 890.05 |
| Lincoln TDA | | 546.24 |

| | TOTAL DEDUCTIONS | $1,702.61 | $31,927.44 |
|---|---|---|---|
| | TOTAL NET PAY | $2,899.16 | $29,474.94 |

**DIRECT DEPOSIT DISTRIBUTION**

| | Deposit Amount | Description | Account Number |
|---|---|---|---|
| | $2,899.16 | Checking | *****4-14846 |

| | TOTAL DIRECT DEPOSITS | $2,899.16 |
|---|---|---|

Mills-Peninsula Health Services
1720 El Camino Real
Burlingame, CA 94010

# STATEMENT OF EARNINGS AND DEDUCTIONS

| EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|---|
| Lisa Maria Boccignone | | XXX-XX-1001 | 36013681 |

| PAY PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | | | ADVICE NUMBER |
|---|---|---|---|---|---|
| 07/16/2006 | 07/29/2006 | S-03 | | | 191441 |

| ESL | PTO | | ST WH | PAY DATE | |
|---|---|---|---|---|---|
| 61.81 | 21.74 | | S-03 | 08/04/2006 | |

| | | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|
| | | | 3,864.69 | 65,322.32 |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 35.00 | 50.710 | 1,774.85 | 47,638.46 |
| Rel Charge | | | | 14.00 |
| Charge Time | | | | 20.00 |
| Preceptor Diff | | | | 35.00 |
| Educ Reimb Nxbl | | | | 78.00 |
| Inservice Pay | | | | 131.67 |
| Weekend Diff | | | | 165.00 |
| Base Pay | 24.00 | 54.060 | 1,297.44 | |
| Doubletime | 4.50 | 98.240 | 292.96 | 3,131.98 |
| PTO Scheduled | 4.50 | 49.534 | 222.94 | 4,534.26 |
| Overtime | 1.50 | 72.380 | 108.57 | 5,406.68 |
| Base Pay | 1.00 | 46.520 | 46.52 | |
| Weekend Diff | 20.50 | 1.500 | 30.75 | 567.79 |
| GTL-Imputed | | | 4.25 | 1,931.16 |
| Educ-Voluntary | | | | 1,129.50 |
| Holiday Workes | | | | 482.35 |
| MissedBK | | | | |

| | | TOTAL EARNINGS | $3,864.69 | $65,322.32 |
|---|---|---|---|---|

## DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 259.22 | 3,170.47 |
| Ca State Dis Tax | 30.88 | 521.50 |
| Federal Inc Tax | 738.37 | 9,019.93 |
| Soc Sec (OASDI) | 239.61 | 4,045.33 |
| Medicare (HI) | 56.04 | 946.09 |
| Lincoln TDA | | 15,000.00 |
| CNA Dues | 41.32 | 587.56 |

| TOTAL DEDUCTIONS | $1,383.44 | $33,290.88 |
|---|---|---|
| TOTAL NET PAY | $2,497.00 | $31,971.94 |

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $2,497.00 | Checking | *****14846 |

| $2,497.00 | TOTAL DIRECT DEPOSITS |
|---|---|

STATEMENT OF EARNINGS AND DEDUCTIONS

Ins-Peninsula Health Services
720 El Camino Real
urlingame, CA 94010

| EMPLOYEE NAME | SOCIAL SECURITY NUMBER | EMPLOYEE NUMBER |
|---|---|---|
| Lisa Maria Boccignone | XXX-XX-1001 | 36013681 |

| PERIOD BEGINNING | PAY PERIOD ENDING | FED WH | ST WH | PAY DATE | ADVICE NUMBER |
|---|---|---|---|---|---|
| 08/13/2006 | 08/26/2006 | S-03 | S-03 | 09/01/2006 | 195516 |

| ESL | PTO | | CURRENT GROSS AMOUNT | YTD GROSS AMOUNT |
|---|---|---|---|---|
| 64.91 | 26.85 | | 3,920.81 | 73,553.13 |

## EARNINGS

| DESCRIPTION | HOURS | RATE | CURRENT AMOUNT | Y-T-D AMOUNT |
|---|---|---|---|---|
| Base Pay | 32.00 | 54.060 | 1,729.92 | 53,711.33 |
| Relief Charge | | | | 14.00 |
| Charge Time | | | | 20.00 |
| Preceptor Diff | | | | 35.00 |
| Educ Reimb Ntxbl | | | | 75.00 |
| Inservice Pay | | | | 131.67 |
| Holiday Pay | | | | 165.00 |
| Weekend Diff | | | | 1,738.02 |
| Holiday Worked | | | | 2,233.54 |
| Educ-Voluntary | | | | 5,732.41 |
| Overtime | | | 4.25 | 68.00 |
| GTL-Imputed | 24.00 | 1.500 | 36.00 | 646.54 |
| Weekend Diff | 20.00 | 50.710 | 1,014.20 | |
| Base Pay | 15.00 | 46.520 | 697.80 | 4,929.67 |
| PTO Scheduled | 4.00 | 98.030 | 392.12 | 3,524.08 |
| Doubletime | 1.00 | 46.520 | 46.52 | 528.87 |
| MissdBR | | | | |
| | | | | |
| **TOTAL EARNINGS** | | | **$3,920.81** | **$73,553.13** |

## DEDUCTIONS

| DESCRIPTION | CURRENT AMT | Y-T-D AMT |
|---|---|---|
| Ca State Inc Tax | 264.44 | 3,735.55 |
| Ca State Dis Tax | 31.33 | 587.28 |
| Federal Inc Tax | 752.08 | 10,633.06 |
| Soc Sec (OASDI) | 243.09 | 4,555.64 |
| Medicare (HI) | 56.85 | 1,065.43 |
| Lincoln TDA | | 15,000.00 |
| CNA Dues | 41.32 | 670.20 |
| | | |
| **TOTAL DEDUCTIONS** | **$1,389.11** | **$36,247.16** |
| **TOTAL NET PAY** | **$2,527.45** | **$37,237.97** |

### DIRECT DEPOSIT DISTRIBUTION

| Deposit Amount | Description | Account Number |
|---|---|---|
| $2,527.45 | Checking | ****4-14846 |

| $2,527.45 | TOTAL DIRECT DEPOSITS |
|---|---|

# KRONOS – TIME AND ATTENDANCE EXCEPTIONS

| Date and Day | Problem — Forgot to swipe IN @ Time | Forgot to swipe OUT @ Time | PTO/EL BL/JD | Missed Meal — Day | PM | Noc | DCH/ RCH | COMMENTS | Charge Nurse Initial for missed meal |
|---|---|---|---|---|---|---|---|---|---|
| SUN 12 | | | | | | | | | |
| MON 13 | | | | | | | | | |
| TUE 14 | | | | | | | | | |
| WED 15 | | | | | | | | | |
| THUR 16 | | | | | | | | | |
| FRI 17 | 15-19 | 4½ HRS | | @lunch | | | | 4½ @ break | |
| SAT 18 | 19 - 0730 | 12 hrs | | ½ lunch | | | | 12° | |
| SUN 19 | 15 - 16 | Over Staffed | | Double Time | | | | Worked to lake early | |
| MON 20 | 1900-6730 | pen | 12° | ½ lunch | | | | 12° | |
| TUES 21 | 1900-6 | | | | | | | | |
| WE 22 | 1900-0730 | pen | 120 | ½ lunch | | | | 120 | |
| THUR 23 | 1500-6730 | Mins/pa | Double/Double brk | ½ lunch | | | | 16 ½ lunch | |
| FRI 24 | 1900-07³⁰ | pen | consecutive weekends | | | | | 120 ½ lunch | |
| SAT 25 | 1900-07³⁰ | pen | consecutive weekends | | | | | 120 ½ lunch | |

Employee Signature _(signature)_

Please read: Complete above if you forgot to swipe IN and OUT; or if you forgot to change cost center when you FLOATED. Following guideline, document any missed lunch breaks or rest periods.

BOCCIGNONE, LISA MARIA
117010

# KRONOS – TIME AND ATTENDANCE EXCEPTIONS

| Date and Day | Problem Forgot to swipe IN @ Time | Forgot to swipe OUT @ Time | PTO/EL BL/JD | Missed Meal Day | PM | Noc | DCH/ RCH | COMMENTS | Charge Nurse initial for missed meal |
|---|---|---|---|---|---|---|---|---|---|
| SUN 2 | 1900 — | 0730 | 12° | | | | | | |
| MON 3 | | | | | | | | | |
| TUE 4 | holiday pay 1900 | 6730 | Holiday PAY | | 12° | | | | |
| WED 5 | 19°° | 0730 | 12° | | | | | | |
| THUR 6 off | | | | | | | | | |
| FRI 7 off | | | | | | | | | |
| SAT 8 off | | | | | | | | | |
| SUN 9 off | | | | | | | | | |
| MON 10 off | | | | | | | | | |
| TUES 11 off | 0900 | 1530 | extra shift R/TS, EA calls | | | | | | |
| WE 12 | a — | 0730 | 12° | | | | | | |
| THUR 13 off | | | | | | | | | |
| FRI 14 00 | — | 0730 | 12° | NO Mealno CindIn | | | | | BB |
| SAT 15 :00 | — | 0730 | 12° | | | | | | BB |

**Please read:** Complete above if you forgot to swipe IN and OUT; or if you forgot to charge cost center when you FLOATED. Following guideline, document any missed lunch breaks or rest periods.

Employee Signature _Lisa Maria Boccignone KN_

BOCCIGNONE, LISA MARIA
117010

Accrual Balances and Projections

Use the browser's Print command to print this page.

Date Selected: 7/01/2006
Name: Boccignone, Lisa Maria

Printed: 7/01/2006
ID: 36013681

| Accrual Code | Accrual Type | Period Ending Balance | Furthest Projected Taking Date | Projected Takings | Projected Credits | Projected Balance | Balance w/o Proj. Credits |
|---|---|---|---|---|---|---|---|
| EDL | Hour | 78.5 | 7/01/2006 | 0.0 | 0.0 | 78.5 | 78.5 |
| ESL | Hour | 56.62 | 7/01/2006 | 0.0 | 0.0 | 56.62 | 56.62 |
| PTO | Hour | 6.68 | 7/01/2006 | 0.0 | 0.0 | 6.68 | 6.68 |

Time Detail

Use the browser's Print command to print this page.

Printed: 7/01/2006

**Time Period:** Current Pay Period
**Dates:** 6/18/2006 - 7/01/2006

**Name:** Boccignone, Lisa Maria    **ID:** 36013681    **Pay Rule:** MPH CNA 12-40
**Primary Account(s):** 4/23/2006 - forever  360/36022/1/360227010/0/36036130265/2

| Date | Apply To | In Punch | In Exc | Out Punch | Out Exc | $Amt | Adj/Ent Amount | Totaled Amount | Cum. Tot. Amount | Absence |
|------|----------|----------|--------|-----------|---------|------|----------------|----------------|------------------|---------|
| Sun 6/18 | | 14:55 | | 7:28 | LE | | | 15.5 | 15.5 | |
| Mon 6/19 | | | | | | | | | 15.5 | |
| Tue 6/20 | | | | | | | | | 15.5 | |
| Wed 6/21 | | 18:56 | | 7:01 | | | | 11.5 | 27.0 | |
| | | ///360117010/// | | | | | | | | |
| Thu 6/22 | | 18:56 | | 7:50 | LV | | | 12.25 | | |
| Thu 6/22 | MISSED MEAL | | | | | | 1.0 | | 40.25 | |
| Fri 6/23 | | | | | | | | | 40.25 | |
| Sat 6/24 | | | | | | | | | 40.25 | |
| Sun 6/25 | | | | | | | | | 40.25 | |
| Mon 6/26 | | | | | | | | | 40.25 | |
| Tue 6/27 | | | | | | | | | 40.25 | |
| Wed 6/28 | | | | | | | | | 40.25 | |
| Thu 6/29 | | | | | | | | 0.0 | | |
| Fri 6/30 | | 18:56 | | | | | | | | |
| | | ///360117010/// | | | | | | | | |
| Fri 6/30 | MISSED BREAK | | | | | | 1.0 | | 41.25 | |
| Sat 7/01 | | | | | | | | | 41.25 | |
| **Totals** | | | | | | 0.00 | 2.0 | 39.25 | 41.25 | |

## Account Summary

| Account | Pay Code | Money | Hours |
|---------|----------|-------|-------|
| (x)360/36022/1/360117010/0/36036130265/2 | | | 4.0 |
| | 100-BASE-SH 2 | | 7.5 |
| | 100-BASE-SH 3 | | |
| 360/36022/1/360227010/0/36036130265/2 | | | 11.5 |
| | 100-BASE-SH 2 | | 12.5 |
| | 100-BASE-SH 3 | | 3.75 |
| | 220-DOUBLETIME-SH 1 | | 7.5 |
| | 301-WEEKEND DIFF-1 | | 1.0 |
| | MISSED BREAK | | 1.0 |
| | MISSED MEAL | | |

## Pay Code Summary

| Pay Code | Money | Hours |
|----------|-------|-------|
| 100-BASE-SH 2 | | 15.5 |

|  | | |
|---|---|---|
| 100-BASE-SH 3 | | 20.0 |
| 220-DOUBLETIME-SH 1 | | 3.75 |
| 301-WEEKEND DIFF-1 | | 7.5 |
| MISSED BREAK | | 1.0 |
| MISSED MEAL | | 1.0 |
| **Totals** | 0.00 | 48.75 |

Time Detail

Use the browser's Print command to print this page.

Printed: 6/22/2006

**Time Period:** Previous Pay Period
**Dates:** 6/04/2006 - 6/17/2006

**Name:** Boccignone, Lisa Maria    **ID:** 36013681    **Pay Rule:** MPH CNA 12-40
**Primary Account(s):** 4/23/2006 - forever   360/36022/1/360227010/0/36036130265/2

| Date | Apply To | In Punch | In Exc | Out Punch | Cut Exc | $Amt | Adj/Ent Amount | Totaled Amount | Cum. Tot. Amount | Absence |
|------|----------|----------|--------|-----------|---------|------|----------------|----------------|------------------|---------|
| Sun 6/04 | | 18:54 | | 7:23 | LV | | | 12.0 | 12.0 | |
| Mon 6/05 | 600-PTO SCHD-SH 1 | | | | | | (6.5) | | 18.5 | |
| Tue 6/06 | | 7:48 | | 15:14 | | | | 7.0 | 25.5 | |
| Wed 6/07 | | 8:00 | | 14:21 | | | | 5.75 | 31.25 | |
| Thu 6/08 | | | | | | | | | 31.25 | |
| Fri 6/09 | | | | | | | | | 31.25 | |
| Sat 6/10 | | | | | | | | | 31.25 | |
| Sun 6/11 | | | | | | | | | 31.25 | |
| Mon 6/12 | | | | | | | | | 31.25 | |
| Tue 6/13 | | | | | | | | | 31.25 | |
| Wed 6/14 | | 18:58 | | 7:23 | LV | | | 12.0 | 43.25 | |
| | | ///360117010/// | | | | | | | 43.25 | |
| Thu 6/15 | | | | | | | | | | |
| Fri 6/16 | | 18:56 | | [23:00] | | | | | | |
| Fri 6/16 | | [23:00] | | 23:28 | | | | | | |
| | | ///360117010/// | | | | | | | | |
| Fri 6/16 | | 23:28 | | 7:25 | LV | | | 12.0 | | |
| | MPH CNA 12-40 DESIGNATED CHARGE | | | | | | | | | |
| Fri 6/16 | 308-RELIEF CHARGE | | | | | 8.0 | | | | |
| Fri 6/16 | MISSED BREAK | | | | | 1.0 | | | 64.25 | |
| Sat 6/17 | | 18:55 | | 3:23 | EV | | | 8.0 | 72.25 | |
| **Totals** | | | | | | 0.00 | 15.5 | 56.75 | 72.25 | |

## Account Summary

| Account | Pay Code | Money | Hours |
|---------|----------|-------|-------|
| (x)360/36022/1/360117010/0/36036130265/2 | | | |
| | 100-BASE-SH 2 | | 4.0 |
| | 100-BASE-SH 3 | | 16.0 |
| | 301-WEEKEND DIFF-1 | | 8.0 |
| | 310-CHARGE TIME | | 8.0 |
| 360/36022/1/360227010/0/36036130265/2 | | | |
| | 100-BASE-SH 1 | | 12.75 |
| | 100-BASE-SH 2 | | 12.0 |
| | 100-BASE-SH 3 | | 12.0 |
| | 301-WEEKEND DIFF-1 | | 12.0 |
| | 308-RELIEF CHARGE | | 8.0 |
| | 600-PTO SCHD-SH 1 | | 6.5 |

*[Handwritten annotations in right margin: "36 hrs", "ed leave", "PLO", "reversed", "6 50"]*

MISSED BREAK                                          1.0

## Pay Code Summary

| Pay Code | Money | Hours |
|---|---|---|
| 100-BASE-SH 2 | | 16.0 |
| 100-BASE-SH 3 | | 28.0 |
| 301-WEEKEND DIFF-1 | | 20.0 |
| 310-CHARGE TIME | | 8.0 |
| 100-BASE-SH 1 | | 12.75 |
| 308-RELIEF CHARGE | | 8.0 |
| 600-PTO SCHD-SH 1 | | 6.5 |
| MISSED BREAK | | 1.0 |
| **Totals** | 0.00 | 100.25 |

# KRONOS – TIME AND ATTENDANCE EXCEPTIONS

| Date and Day | Problem Forgot to swipe IN @ Time | Forgot to swipe OUT @ Time | PTO/EL BL/JD | Missed Meal Day | PM | Noc | DCH/ RCH | COMMENTS | Charge Nurse Initial for missed meal |
|---|---|---|---|---|---|---|---|---|---|
| SUN 4 | 1500- | 0730 Den | | 12⁰ | | | | | |
| MON 5 | 12 hrs | ED Leave | | 12⁰ | | | | | |
| TUE 6 | 12 hrs | ED Leave | | 12⁰ | | | | | |
| WED 7 | 12 hrs | ED Leave | | 12⁰ | | | | | |
| THUR 8 | off | | | | | | | | |
| FRI 9 | off | | | | | | | | |
| SAT 10 | off | | | | | | | | |
| SUN 11 | off | | | | | | | | |
| MON 12 | off | | | | | | | | |
| TUES 13 | off | | | | RO | RO DrO | | | |
| WE 14 | 1900 - | 0730 | M.115 | | RO | DrO | | | |
| THUR 15 | off | | | | | | | | |
| FRI 16 | 1400-23⁰⁰ | 23- 0730 Den | | RO NO Break | | | | no dinner, no | RelifCharge |
| SAT 17 | 1900- 0730 Den | | | 80 | | | | | |

Employee Signature _____ RN

LISAMari's BOCCIGnone RN

· 360·1360·1

Accrual Balances and Projections

Use the browser's Print command to print this page

Date Selected: 8/06/2006
Name: Boccignone, Lisa Maria

Printed: 8/06/2006
ID: 36013681

| Accrual Code | Accrual Type | Period Ending Balance | Furthest Projected Taking Date | Projected Takings | Projected Credits | Projected Balance | Balance w/o Proj. Credits |
|---|---|---|---|---|---|---|---|
| EDL | Hour | 42.5 | 8/06/2006 | 0.0 | 0.0 | 42.5 | 42.5 |
| ESL | Hour | 61.82 | 8/06/2006 | 0.0 | 0.0 | 61.82 | 61.82 |
| PTO | Hour | 21.73 | 8/06/2006 | 0.0 | 0.0 | 21.73 | 21.73 |

$7 \times 8 =$

55.30 hrs pto
_34.50 hrs pto 20.8

27.30 hrs

Accrual Balances and Projections

Use the browser's Print command to print the page

Date Selected: 5/01/2006
Name: Boccignone, Lisa Maria

Printed: 8/06/2006
ID: 36013681

| Accrual Code | Accrual Type | Period Ending Balance | Furthest Projected Taking Date | Projected Takings | Projected Credits | Projected Balance | Balance w/o Proj. Credits |
|---|---|---|---|---|---|---|---|
| EDL | Hour | 0.0 | 6/27/2006 | 36.0 | 0.0 | 42.5 | -36.0 |
| ESL | Hour | 49.82 | 5/01/2006 | 0.0 | 0.0 | 49.82 | 49.82 |
| PTO | Hour | 8.55 | 7/04/2006 | 34.5 | 0.0 | 11.58 | -25.95 |

Time Detail

Use the browser's Print command to print this page

**Time Period: Range of Dates**
**Dates: 5/01/2006 - 8/06/2006**

Printed: 8/06/2006

**Name:** Boccignone, Lisa Maria     **ID:** 36013681     **Pay Rule:** MPH CNA 12-40

**Primary Account(s):**   4/23/2006 - forever   360/36022/1/360227010/0/36036130265/2

| Date | Apply To | In Punch | In Exc | Out Punch | Out Exc | $Amt | Adj/Ent Amount | Totaled Amount | Cum. Tot. Amount | Absence |
|------|----------|----------|--------|-----------|---------|------|----------------|----------------|------------------|---------|
| Mon 5/01 | | | | | | | | | 0.0 | |
| Tue 5/02 | | | | | | | | | 0.0 | |
| Wed 5/03 | | | | | | | | | 0.0 | |
| Thu 5/04 | | | | | | | | | 0.0 | |
| Fri 5/05 | | | | | | | | | 0.0 | |
| Sat 5/06 | | | | | | | | | 0.0 | |
| Sun 5/07 | | 18:58 | | 7:23 | LV | | | 12.0 | 12.0 | |
| Mon 5/08 | | | | | | | | | 12.0 | |
| Tue 5/09 | | 18:58 | | 8:22 | LV | | | 12.75 | 24.75 | |
| Wed 5/10 | | 18:59 | | 8:17 | LV | | | 12.75 | 37.5 | |
| Thu 5/11 | | | | | | | | | 37.5 | |
| Fri 5/12 | | 13:00 | | 14:00 | | | | 1.0 | 38.5 | |
| Sat 5/13 | | | | | | | | | 38.5 | |
| Sun 5/14 | | | | | | | | | 38.5 | |
| Mon 5/15 | | | | | | | | | 38.5 | |
| Tue 5/16 | | | | | | | | | 38.5 | |
| Wed 5/17 | | 18:54 | | 7:25 | LV | | | 12.0 | | |
| Wed 5/17 | 814-MEAL PENALTY-SH 3 | | | | | | 1.0 | | 51.5 | |
| Thu 5/18 | | | | | | | | | 51.5 | |
| Fri 5/19 | 600-PTO SCHD-SH 1 | | | | | | 12.0 | | 63.5 | |
| Sat 5/20 | | 18:59 | | 7:23 | LV | | | 12.0 | 75.5 | |
| Sun 5/21 | | 18:55 | | 7:23 | LV | | | 12.0 | 87.5 | |
| Mon 5/22 | | | | | | | | | 87.5 | |
| Tue 5/23 | | | | | | | | | 87.5 | |
| Wed 5/24 | | 19:01 | | 7:23 | LV | | | 12.0 | 99.5 | |
| | | ///360117010/// | | | | | | | | |
| Thu 5/25 | | 18:58 | | 7:23 | LV | | | 12.0 | 111.5 | |
| Fri 5/26 | | | | | | | | | 111.5 | |
| Sat 5/27 | | | | | | | | | 111.5 | |
| Sun 5/28 | | | | | | | | | 111.5 | |
| Mon 5/29 | | | | | | | | | 111.5 | |
| Tue 5/30 | | 18:54 | | 7:23 | LV | | | 12.0 | 123.5 | |
| Wed 5/31 | | | | | | | | | 123.5 | |
| Thu 6/01 | | | | | | | | | 123.5 | |
| Fri 6/02 | 600-PTO SCHD-SH 1 | | | | | | 12.0 | | 135.5 | |
| Sat 6/03 | | 18:53 | | 7:23 | LV | | | 12.0 | 147.5 | |
| Sun 6/04 | | 18:54 | | 7:23 | LV | | | 12.0 | 159.5 | |
| Mon 6/05 | 600-PTO SCHD-SH 1 | | | | | | 6.5 | | 166.0 | |

| Date | Description | In | Out | | | | Total |
|---|---|---|---|---|---|---|---|
| Tue 6/06 | | 7:48 | 15:14 | | | 7.0 | 173.0 |
| Wed 6/07 | | 8:00 | 14:21 | | | 5.75 | 178.75 |
| Thu 6/08 | | | | | | | 178.75 |
| Fri 6/09 | | | | | | | 178.75 |
| Sat 6/10 | | | | | | | 178.75 |
| Sun 6/11 | | | | | | | 178.75 |
| Mon 6/12 | | | | | | | 178.75 |
| Tue 6/13 | | | | | | | 178.75 |
| Wed 6/14 | | 18:58 | 7:23 | LV | | 12.0 | 190.75 |
| | | ///360117010/// | | | | | |
| Thu 6/15 | | | | | | | 190.75 |
| Fri 6/16 | | 18:56 | [23:00] | | | | |
| Fri 6/16 | | [23:00] | 23:28 | | | | |
| | | ///360117010/// | | | | | |
| Fri 6/16 | | 23:28 | 7:25 | LV | | 12.0 | |
| | MPH CNA 12-40 DESIGNATED CHARGE | | | | | | |
| Fri 6/16 | 308-RELIEF CHARGE | | | | 8.0 | | |
| Fri 6/16 | MISSED BREAK | | | | 1.0 | | 211.75 |
| Sat 6/17 | | 18:55 | 3:23 | EV | | 8.0 | 219.75 |
| Sun 6/18 | | 14:55 | 7:28 | LE | | 15.5 | 235.25 |
| Mon 6/19 | | | | | | | 235.25 |
| Tue 6/20 | | | | | | | 235.25 |
| Wed 6/21 | | 18:56 | 7:01 | | | 11.5 | |
| | | ///360117010/// | | | | | |
| Wed 6/21 | 814-BREAK PENALTY-SH 1 | | | | 1.0 | | 247.75 |
| Thu 6/22 | | 18:56 | 7:50 | LV | | 12.25 | |
| Thu 6/22 | MISSED MEAL | | | | 1.0 | | 261.0 |
| Fri 6/23 | | | | | | | 261.0 |
| Sat 6/24 | | | | | | | 261.0 |
| Sun 6/25 | 732-EDUCATION NP-SH 1 | | | | 12.0 | | 273.0 |
| Mon 6/26 | 732-EDUCATION NP-SH 1 | | | | 12.0 | | 285.0 |
| Tue 6/27 | 732-EDUCATION NP-SH 1 | | | | 12.0 | | 297.0 |
| Wed 6/28 | | | | | | | 297.0 |
| Thu 6/29 | | | | | | | 297.0 |
| Fri 6/30 | | 18:56 | 7:23 | LV | | 12.0 | |
| | | ///360117010/// | | | | | |
| Fri 6/30 | MISSED BREAK | | | | 1.0 | | 310.0 |
| Sat 7/01 | | 18:58 | 7:23 | LV | | 12.0 | 322.0 |
| Sun 7/02 | | 18:53 | 8:45 | LV | | 13.25 | 335.25 |
| Mon 7/03 | | | | | | | 335.25 |
| Tue 7/04 | | 18:53 | 7:23 | LV | | 12.0 | 347.25 |
| | MPH CNA 12-40 MAX PTO PAY | | | | | | |
| Wed 7/05 | | 18:52 | EV 7:23 | LV | | 12.25 | 359.5 |
| Thu 7/06 | | | | | | | 359.5 |
| Fri 7/07 | | | | | | | 359.5 |
| Sat 7/08 | | | | | | | 359.5 |
| Sun 7/09 | | | | | | | 359.5 |
| Mon 7/10 | | 8:53 | 15:29 | LV | | 6.0 | 365.5 |
| Tue 7/11 | | | | | | | |

| Day | | In | Out | Code | | | | |
|---|---|---|---|---|---|---|---|---|
| Wed 7/12 | | 18:58 | 7:26 | LV | | | 12.0 | 377.5 |
| Thu 7/13 | | | | | | | | 377.5 |
| Fri 7/14 | | 18:55 | 7:23 | LV | | | 12.0 | 389.5 |
| Sat 7/15 | | 18:59 | 7:26 | LV | | | 12.0 | |
| Sat 7/15 | MISSED BREAK | | | | | 1.0 | | |
| Sat 7/15 | MISSED MEAL | | | | | 1.0 | | 403.5 |
| Sun 7/16 | | 18:53 | 23:53 | LV | | | 5.0 | |
| Sun 7/16 | MISSED BREAK | | | | | 1.0 | | |
| Sun 7/16 | MISSED MEAL | | | | | 1.0 | | 410.5 |
| Mon 7/17 | | | | | | | | 410.5 |
| Tue 7/18 | | | | | | | | 410.5 |
| Wed 7/19 | | 19:01 | 7:34 | LV | | | 12.0 | 422.5 |
| | | ///360117010/// | | | | | | |
| Thu 7/20 | | 18:59 | 7:23 | LV | | | 12.0 | 434.5 |
| Fri 7/21 | | 14:56 | 19:00 | | | | | |
| | | MPH CNA 08-80 REST BETWEEN SHIFT | | | | | 8.5 | 443.0 |
| Fri 7/21 | | 19:00 | 0:03 | LV | | | | |
| | | MPH CNA 12-40 | | | | | 8.0 | |
| Sat 7/22 | | 14:54 | 23:24 | LV | | | | |
| | | ///360117010/// | | | | | | 452.0 |
| Sat 7/22 | MISSED BREAK | | | | | 1.0 | | 460.0 |
| Sun 7/23 | | 14:59 | 23:28 | LV | | | 8.0 | |
| | | ///360117010/// | | | | | | 460.0 |
| Mon 7/24 | | 18:56 | 7:23 | LV | | | 12.0 | 472.0 |
| Tue 7/25 | | | | | | | | 472.0 |
| Wed 7/26 | | | | | | | | 472.0 |
| Thu 7/27 | | | | | | | | 472.0 |
| Fri 7/28 | | | | | | | | 472.0 |
| Sat 7/29 | | | | | | | | 472.0 |
| Sun 7/30 | | | | | | | | 472.0 |
| Mon 7/31 | | 18:54 | 7:23 | LV | | | 12.0 | 484.0 |
| Tue 8/01 | | 18:53 | 7:23 | LV | | | 12.0 | 496.0 |
| Wed 8/02 | | | | | | | | 496.0 |
| Thu 8/03 | | | | | | | | 496.0 |
| Fri 8/04 | | | | | | | | 496.0 |
| Sat 8/05 | | | | | | | 0.0 | 496.0 |
| Sun 8/06 | | 6:54 | | | | | | |
| Totals | | | | | 0.00 | 84.5 | 411.5 | 496.0 |

## Account Summary

| Account | Pay Code | Money | Hours |
|---|---|---|---|
| (x)360/36022/1/360117010/0/36036130265/2 | | | 34.5 |
| | 100-BASE-SH 2 | | 47.5 |
| | 100-BASE-SH 3 | | 1.5 |
| | 210-OVERTIME-SH 1 | | 31.5 |
| | 301-WEEKEND DIFF-1 | | 8.0 |
| | 310-CHARGE TIME | | |
| 360/36022/1/360227010/0/36036130265/2 | | | 20.75 |
| | 100-BASE-SH 1 | | 107.75 |
| | 100-BASE-SH 2 | | 182.75 |
| | 100-BASE-SH 3 | | 2.0 |
| | 210-OVERTIME-SH 1 | | 10.75 |
| | 220-DOUBLETIME-SH 1 | | |

|  |  |
| --- | --- |
|  | 92.5 |
| 301-WEEKEND DIFF-1 | 8.0 |
| 308-RELIEF CHARGE | 4.0 |
| 510-HOLIDAY WRKD-SH 2 | 34.5 |
| 600-PTO SCHD-SH 1 | 36.0 |
| 732-EDUCATION NP-SH 1 | 1.0 |
| 814-BREAK PENALTY-SH 1 | 1.0 |
| 814-MEAL PENALTY-SH 3 | 5.0 |
| MISSED BREAK | 3.0 |
| MISSED MEAL | |

## Pay Code Summary

| Pay Code | Money | Hours |
| --- | --- | --- |
|  |  | 142.25 |
| 100-BASE-SH 2 |  | 230.25 |
| 100-BASE-SH 3 |  | 3.5 |
| 210-OVERTIME-SH 1 |  | 124.0 |
| 301-WEEKEND DIFF-1 |  | 8.0 |
| 310-CHARGE TIME |  | 20.75 |
| 100-BASE-SH 1 |  | 10.75 |
| 220-DOUBLETIME-SH 1 |  | 8.0 |
| 308-RELIEF CHARGE |  | 4.0 |
| 510-HOLIDAY WRKD-SH 2 |  | 34.5 |
| 600-PTO SCHD-SH 1 |  | 36.0 |
| 732-EDUCATION NP-SH 1 |  | 1.0 |
| 814-BREAK PENALTY-SH 1 |  | 1.0 |
| 814-MEAL PENALTY-SH 3 |  | 5.0 |
| MISSED BREAK |  | 3.0 |
| MISSED MEAL |  | |
| **Totals** | 0.00 | 632.0 |

**EXHIBIT M**

### Response to the Disciplinary investigation of Lisa Marie Boccignone

In response to the document that was presented on our February 28 meeting I believe that the case that has been brought against me is not adequate for termination. In looking at my case there are several incidents that are discussed and this document will address each of those parts.

I recognized that I had been using my phone inappropriately and after redirection I complied with Ms. Foster's order to halt the text messaging while on duty. This is also confirmed by Ms. Foster therefore I feel that no corrective action can be taken in regards to this allegation as I have not been text messaging since that time.

In the night in question of me sleeping on the job, I had admitted to doing so only after I had received permission from my charge nurse. Patient care was not jeopardized and because a person with authority had granted me that time per my request we do not think that it is fair to punish me for this action as well. Additionally, I had been late from a break on another occasion to which I was advised by Paula Lungi that this was not acceptable. I took responsibility and stated that it would not happen again. Further, no disciplinary warning was given as a result of these actions from that time.

The patient care issues that have been brought forth seem to have been put into a context that makes me seem to not care about the patient's interest yet this is not true. For instance, the February 15th incident when I was being assaulted by a demented patient when I had been accused of misconduct. I recognize that my choice of words ("Don't hit me, I am trying to help you but I can hit you back") would not be the proper way in handling this type of situation. Yet the fact remains that I was scared and that I panicked. I contend that this was a mistake and that this incident should be used as a learning tool rather than a point of which I am punished.

As to the incident of the diaper being pulled off of a patient to the point that the patient was left in excruciating pain, I contend that this was simply not true. I always try to care for the patient in the tenderest and most effective way possible.

The lewd act that has been referred to in the document from Ms. Foster only references rumors and innuendos therefore I feel that until there is hard evidence of my involvement in any lewd act then there are no grounds for punishment. Furthermore, I vehemently deny that any of the rumors that have been spread are even remotely true.

Although I have been given redirection from my supervisor in the past, I have made efforts to correct the action. Throughout the document, Ms. Foster writes that when given a directive that I do comply showing that I can take direction.

Please consider that I am concerned with my practice as a Registered Nurse and I do strive to get better. Part of this is learning from my mistakes. I would like to hold another meeting so that I can come up with ways so that my Union representative and I can meet and confer with your office in order to find ways so that I can succeed at Mills Peninsula.

**Christensen, Claudia**

| | |
|---|---|
| **From:** | Christensen, Claudia |
| **Sent:** | Monday, February 27, 2006 1:06 PM |
| **To:** | 'sbartlett@calnurses.org' |
| **Subject:** | FW: RN disciplinary action |

-----Original Message-----
From: Christensen, Claudia
Sent: Friday, February 24, 2006 3:17 PM
To: 'Shawn Bartlett'
Cc: Morgan, Genel; Campagna, Linda
Subject: RE: RN disciplinary action


Shawn,
I have a room (Foundation conference room) and the necessary people for Tuesday, February
28.
3pm Paula Lunghi
4pm Lisa Maria Boccignone
Thank you for being available on short notice.
Have a good weekend.
Claudia

-----Original Message-----
From: Shawn Bartlett [mailto:sbartlett@calnurses.org]
Sent: Friday, February 24, 2006 1:20 PM
To: Christensen, Claudia
Subject: RE: RN disciplinary action


Claudia

I am available anytime after 12 on Tuesday. Wednesday is not possible.


Please advise.

Shawn
This message (including any attachments) contains confidential information
intended for a specific individual and purpose, and is protected by law. If
you are not the intended recipient, you should delete this message. If you
are not the intended recipient, any disclosure, copying, or distribution of
this message, or the taking of any action based on it, is strictly
prohibited.

-----Original Message-----
From: Christensen, Claudia [mailto:ChristC4@sutterhealth.org]
Sent: Friday, February 24, 2006 10:02 AM
To: Shawn Bartlett
Cc: Morgan, Genel; Campagna, Linda; Foster, Bobbi
Subject: RN disciplinary action

Good morning Shawn....Linda and Genel too.

I would like to schedule a meeting on Monday, Tuesday or Wednesday for the
following issues.

Paula Lunghi (ER RN) - harassment complaint made by a fellow employee (also
CNA member)
and

1

Available times
Monday morning before 11am
Tuesday after 10 am
Wednesday anytime

Please let me know what works for you by later today.
We will be placing Lisa Marie on administrative leave so I do not want to put
this off past Wednesday.
Genel has told me that she will represent Paula and Linda has represented
Lisa Maria in the past.

Thank you,
Claudia

**EXHIBIT N**

**Health Services**
A Sutter Health Affiliate

ROBBINS, HARVARD    723    23MAR69  F  36
*46435442*    E    ERS
6AUG05

# UALITY ASSURANCE OCCURRENCE REPORT

**ON COMPLETING THIS FORM**
ROUTE TO:
▷ DEPARTMENT MANAGER
▷ RISK MANAGEMENT
▷ OUTCOMES MANAGEMENT

**36039**

Privileged and Confidential: For the exclusive use of the Quality
Assurance / Risk Management Program (Evidence Code 1157)

## OCCURRENCE INFORMATION
DO NOT MAKE COPIES
DO NOT FILE IN PATIENT RECORD

| DATE OF OCCURRENCE | TIME | LOCATION OF OCCURRENCE | DEPT./DIV. | UNIT DEPT. | ROOM NO. | OTHER |
|---|---|---|---|---|---|---|
| 08/06/05 | | ER | ER | | 11 | |

PERSON INVOLVED
☐ PATIENT  ☐ VISITOR  ☐ STUDENT
☐ OUTPATIENT  ☑ MED STAFF  ☐ OTHER
ADDRESS (if not a pt.)

NAME OF PERSON INVOLVED (if no addressograph)
MD Brody

| MEDICAL RECORD NO. | AGE 36 | SEX ☐ M ☐ F |

CITY    STATE    ZIP CODE    PHONE NUMBER

## OCCURRENCE CATEGORY

☐ Pt's Property
☐ Medication
☐ IV Infusion / Transfusion
☐ Fall
☑ Tx / Procedure
☑ Physician Related
☑ Communication
☐ Complaint
☐ Skin Breakdown
☐ Complication / Unexpected Event
☐ Diet Related
☐ Against Medical Advice
☐ Pt. Placement
☐ Consent Related
☐ Code Blue
☐ Equipment / Medical Device
☐ Violent Gesture
☐ Inappropriate Behavior
☐ Perinatal Problem
☐ Return to OR
☐ Security Related
☐ Safety Related
☐ Adverse Reaction
☑ Other  Verbal orders
lack of communa
understaff

## BRIEF OBJECTIVE STATEMENT OF FACTS

I was taking care of Pt.                              on 08/06-
07/2005. She is a non-communicative person with severe cerebral
palsy, who came in with her family C̄ C.C. ABD pain. Because
* her history C̄ this facility MD Brody gave orders to medicate her
for pain q 30 minutes C̄ 1mg dilaudid. He gave me verbal orders for Versed
when she was to go to CT in the attempts to obtain a
clear images. I was also told that the PO contrast was
necessary and if she could not drink it, put it in by NG
tube.            was able to drink almost all of the contrast
but soon after experienced projective vomit. (USE OTHER SIDE IF NECESSARY)

| WITNESS NAME | EMPLOYEE ☐ YES ☐ NO | PHONE/EXT | ADDRESS / DEPT. |
|---|---|---|---|
| Chris DeGuzman | | 5446 | ER |

SUPERVISOR NOTIFIED  ☐ YES ☐ NO    NAME OF SUPERVISOR
Bobbi Foster

| DATE | TIME |
|---|---|
| 08/07/05 | 0600 |

## PATIENT FALLS
(narcotics, sedatives, psychotropics, diuretics)

| BED POSITION | BEDRAILS IN USE | PT'S MENTAL STATUS | MEDS WITHIN LAST 3 HOURS | MED | TIME |
|---|---|---|---|---|---|
| ☐ HIGH ☐ LOW | ☐ R. UPPER ☐ L. UPPER ☐ R. LOWER ☐ L. LOWER | ☐ ALERT ☐ CONFUSED ☐ UNCONSCIOUS | | MED | TIME |

ACTIVITY
☐ BR ONLY  ☐ UP W/ASSIST
☐ BRP  ☐ UP AD LIB

RESTRAINTS
☐ ON ☐ OFF ☐ NOT ORDERED

CALL LIGHT WITHIN REACH
☐ YES ☐ NO ☐ N/A

## PHYSICIAN NOTIFICATION

PHYSICIAN NOTIFIED ☐ YES ☐ NO
DR. Brody

| DATE | TIME |
|---|---|
| 08/06/05 | 01:10 |

NAME OF EXAMINING PHYSICIAN (IF DIFFERENT)

EXAM
TREATMENT
TESTS
☐ YES
☐ NO

IF YES, NATURE OF TESTS / TREATMENT

## PREPARED / REVIEWED

PREPARED BY
Lisa Maria Battaglione

POSITION
RN

| DATE | TIME |
|---|---|
| 08/10/05 | 2000 |

REVIEWED BY

POSITION

127779 (1/03)

QUALITY SURANCE OCCURRENCE
TO BE COMPL   BY DEPARTMENT MANAGER / DESI   E
Case 3:07-cv-06043-CRB   Document 6-3   Filed 12/12/2007   Page 79 of 79
Privileged and Confidential: For the exclusive use of the C   ity
Assurance / Risk Management Program (Evidence Code 1157)

**DO NOT MAKE COPIES**

## CCURRENCE SEVERITY

o error, potential only ☐ Error, no harm ☐ Increased monitoring, no harm ☐ Change in condition, no harm ☐ Intervention/increased LOS ☐ Permanent harm ☐ Death

## ORRECTIVE ACTIONS

| LICIES AND PROCEDURES | DATE | EQUIPMENT / SUPPLIES / CONDITION | DATE | OTHER |
|---|---|---|---|---|
| Evaluated | | ☐ Evaluated | | ☐ No action at this time |
| Recommended change | | ☐ Recommend change | | ☐ Other _____ |
| Changed | | ☐ Changed | | |
| Developed | | ☐ Make additional / new purchase | | |
| Enforced | | ☐ Removed / Repaired / Corrected | | |
| ONITOR / INSTRUCTION / COUNSELING | | | | |
| Discuss at staff meeting | | ☐ Inservice education | | ☐ Recommend return demonstration |
| Individual counseling # _____ | | ☐ Recommend QA/QI monitor | | ☐ Temporary restriction of duties/privileges |

## DDITIONAL FOLLOW-UP AND COMMUNICATION

t was an extremly stressful & busy night c̄ only 3RNS, 1MD
no more than 15 patents. I had recieved so many verbal orders
from MD Brody that, I thought giving her Zofran 4mg would be
K since he wanted her CT c̄ PO & IV contrast. I informed
D Brody that I gave her the Zofran and he said, I should have
hecked c̄ him first. Do to the amount of narcotics in this womans
body, MD Brody wanted to be informed if anything went wrong, so
and as a precaution I put her on a portable cardiac monitor. MD
Brody said the portable monitor was not necessary - but for her
afty I felt it was. The CT went well, the pt was safe & returned
to the ED. She continued to have progectile vomiting & MD
brody asked me if I gave her Phenergan 12.5mg IVP = I told
him "no" since he did not order it at 0300 (08/07/05)
I gave her the phenergan and the episodes of vomiting stopped
I continued to monitor & reassess her until she was D/C'd @ 05:20
c̄ a foley in place to be removed @ her PMD's in 2 days. I spoke to
Chris De Guzman, Brian Johnson, & MD Brody & Bobbi Foster about this
event - and @ the time I did not write an incident
report as I believed it to be handled at the nursing level.
I learnd 3 lessons ① never assume anything even if I think it
is in the best interests of the patient ② always ask first before
ny thing and ③ always put the patient first

| DEPARTMENT MANAGER SIGNATURE | DOES RISK MANAGEMENT NEED TO BE NOTIFIED IMMEDIATELY? ☐ YES ☐ NO | DATE | TIME |
|---|---|---|---|