GOLD & ASSOCIATES
235 Montgomery Street
Suite 747
San Francisco, CA 94104
Telephone: (415) 354-5400
Facsimile:  (415) 354-5405

Attorney for PLAINTIFF,
L.M. BOCCIGNONE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| L.M. BOCCIGNONE<br><br>*Plaintiff,*<br><br>v.<br><br>SUTTER HEALTHCARE (MILLS PENINSULA HEALTH SERVICES) BARBARA "BOBBI" FOSTER, CLAUDIA CHRISTENSEN AND Does 1 through 97, inclusive,<br><br>*Defendants.* | No.  CV 07-6243 (CRB)<br><br>**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS, UNTIL AFTER MOTION FOR REMAND TO STATE COURT IS ADJUDICATED, DEMAND FOR JURY TRIAL**<br><br>DATE:<br>TIME:<br>DEPT:   Courtroom 8<br>JUDGE: Charles R. Breyer<br><br>Second Amended Complaint Filed: November 14, 2007<br>Trial Date: No date set |

PLEASE TAKE NOTICE that PLAINTIFF L.M. BOCCIGNONE moves the Court for an Order to enlarge time to respond to Defendants' Motion to Dismiss by thirty-five (35) days or until such time as the Court may see fit, after this Honorable Court has both the opportunity to review and rule upon Plaintiff's Motion for Remand to State Court, to be filed December 31, 2007, twenty (20) days after said notice for removal was served and filed.  Said Ex Parte Motion is respectfully submitted in writing after both opposing counsel, Nancy McCoy for Defendant Barbara "Bobbi" Foster and Maureen McClain, for Defendant(s) Sutter Healthcare

**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS**

- 1 -

(MPHS) has declined to stipulate to enlarge time for Plaintiff to respond to the Defendant's "joint" Motion to Dismiss. Ms. McCoy would have agreed top reconsider her decision after a review of the motion for remand and a review of Defendant's planned motion for the third Amended complaint, but given present "timing" issues could not stipulate at this time.

Service of said State complaint and its' accompanying, thick, court file, (now Defendants exhibits in their Notice for Removal to Federal Court), was personally served by attorney Gold to insure a quiet and trouble free exchange at Defendant's designated site for service of process: Peninsula Hospital in Burlingame, CA.

Plaintiff's counsel Gold was directed by secretary, Karen Griffen, of the absent designated Agent for Service of Process, MPHS C.E.O. Robert Merwin, to MPHS Director of Risk Management, Mary Christensen. Upon Mary Christensen's direction service was quietly made upon Mills-Peninsula Health, and upon her recommendation, each named defendant came upstairs to quietly receive their service. Attorney Gold's only exchange to either named Defendant was "you are now served". Further, while Director Mary Christensen, did try to explain to counsel that MPHS and Sutter Health were separate legal entities, she did agree to accept service of a Fourth copy of documents on behalf of Sutter Health, of which MPHS is an "affiliate". No claim of improper service has been made by Defendants to date in State Court.

At that time, Plaintiff's counsel immediately offered to Director Mary Christensen, after the named Defendants had left the room, to meet and confer and/or stipulate to time needed to correct any errors in the pleading, specifically with opposing counsel Maureen McClain, in order to correct any errors in the writing, citing as an example, separating *MPHS* and *Sutter Health* into individual Defendants. The Second Amended Complaint was a hurried effort due to the Court Order Judge M. Weiner, see Exhibit A.

Regardless of this effort, and Plaintiff's Defendants removed said Complaint to Federal Court three days before their "Answer" was due, see Exhibit A, and after the proper service of California Judicial Council Form Interrogatories to Defendants Foster and C. Christensen. Ms. Foster abruptly quit her position with MPHS and with Sutter approximately two days after service of said discovery, now moot while this matter is in Federal Court. On December 4, 2007, Plaintiff's Second Set of Admissions, see Exhibit B, were served upon Defendant Chirstensen—a week later without meet and confer and with notice of Counsel's unavailability, the state matter was removed to Federal Court.

Opposing counsel made no effort to meet and confer with Plaintiff's counsel before filing both the Notice of Removal and/or the subsequent Motion to Dismiss; said pleadings were filed despite the fact that Plaintiff's counsel (who is a solo practitioner) sent defense counsel (a multi-attorney firm) a Notice of

**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS**

- 2 -

Unavailabilty, which it is Plaintiff's understanding that Ms. McClain said his Notices was "defective" due to "case law" presumably: *Carl v. Superior Court*, ___ Cal.App.4th ___ (Nov. 19, 2007) (slip op. 4), attached as Exhibit C.

Quoting Carl v. Superior Court, supra: (Section II, first and second complete paragraphs, page 4):

>  *We explain our reasons for summarily denying the petition in part because the common practice of filing a "notice of unavailability" in the superior court <u>now permeates the appellate court system</u> [emphasis added]. We [California Fourth District Appellate Court] receive them on a regular basis and at all times during the appeal process: <u>they come before the record is filed, they come while the matter is being briefed, and they have even come after a matter has been submitted for decision</u>. [emphasis added].*
>
>  *Tenderloin, of course, merely holds that a trial court may impose sanctions against an attorney who conducts litigation in bad faith and solely for the purpose of harassment. There, among other things, the sanctioned attorney purposely set discovery for times when he knew opposing counsel was on vacation and unavailable in order to gain an unfair, tactical advantage in the litigation….[T]here is no authority, moreover for the filing of such a notice in an appellate court.*

In the instant matter, Plaintiff's counsel had given notice, that he would be away for the Christmas holidays—a simple E-mail or phone call could have cleared up any misunderstanding regarding Plaintiff's counsel's notice, See Exhibit D.   The Removal to Federal Court was only three (3) days before the day defendants were ordered to "*Answer*" by San Mateo Superior Court Judge Marie Weiner, see Exhibit A.

Defendants have brought their Motion to Dismiss, without any attempt at meet and confer, in that temporal period of time when State Court Jurisdiction ceases, but Plaintiff has their legal right to file a Motion for remand within twenty (20) days of the service of the Notice of Removal, or December 31, 2007, New Years Eve.

Before Plaintiff has time to file their Motion for Remand, before Plaintiff has time to properly brief the motion for remand, even before a decision may be heard on the motion for remand, Defendants have filed their Motion to Dismiss, and have respectively, both, politely, refused to stipulate to enlarge time to allow Plaintiff their rights under the Rules of Federal Procedure to Make their Motion for Remand, as the State Court complaint contains no issues of diversity (Defendants have not raised any issues of diversity) nor does the complaint raise any questions of Federal law.  Plaintiffs have already agreed to, and will submit a proposed "Third Amended Complaint" addressing as many of the specific issues as Plaintiff can address without improperly giving up a true claim.

The Grounds for this motion are:

1. Defendant bases the Removal to Federal Court on the existence of a Collective Bargaining Agreement (CBA) under the Labor Management Relations Act Section 301, essentially stating that when Plaintiff became a member of California Nurses Association CAN) something if she chose not to do, she still had to pay an equivalent amount of dues money to a secondary source without any of the union representation benefits, see

- 3 -

Article III, of the CNA-MPHS Agreement, attached as Exhibit E, that she forever signed away her rights to bring any claim as a California citizen—in other words—MPHS is arguing that when one chooses to become a union member that union member by virtue of joining a Collective Bargaining Agreement disenfranchises themselves from the greater protections offered by the State, here California, in which they choose to live.

In the instant action, Plaintiff is a born and bred Californian.  Her father was a supervisor for a Southern California Municipality overseeing union workers and very aware, as management is always kept aware by local government, of what is and is not allowed under California law.  Plaintiff was recruited by a California Corporation, to move 500 miles north, which she did with the incentive of having her student loans paid off—not a contractual clause of the CNA Collective Bargaining Agreement.

Defendants now claim Federal protection, which has a higher standard of proof and lower remedies while at the same time MPHS and/or Sutter Health (99.999% entirely located within the state of California) enjoys such California state protections as artificially low, compared nationally, Medical Malpractice Tort Damages caps.

Both MPHS and CNA made no effort after September 20, 2007 to continue to resolve Plaintiff's claim through a grievance procedure.  Plaintiff was instructed by her union, and did, hire a lawyer. Article 26 **Association Rights,** Section (B) (3) states: *Nothing in this Section B shall prevent Registered Nurses from, in accordance with applicable law,* **representing themselves individually in their employment relations with MPHS** (in other words each R.N. can speak up for themselves).

The Grievance Procedure mentioned in CBA, Article 27, Exhibit G**,** was not followed by either counsel Frost and/or counsel McClain.  When Plaintiff filed her first, in pro per, form complaint for "false light" defamation, due to the one year statute of limitations time constraint in February, 2007, Sutter Health in house counsel (not believed to be the counsel referred to in the second amended complaint) withdrew from this matter.  On March 1, 2007, both named Defendants Christensen and Foster were sworn in by Administrative Appeals Judge Solvino (Plaintiff missed her earlier hearing due to the two months premature birth of her child, see letter from Dr. Katz, Exhibit H), in which Plaintiff and Defendant Foster both gave testimony, as Defendant Foster's Supervisor looked on as Defendant Foster also offered "unsigned" e-mails and other documents as evidence of their claims.  This action prompted the admissions requested of Defendant Christensen in Exhibit B, and perhaps Defendants remand to Federal Court when there is no issue of diversity and Defendants themselves only surreptitiously referred to the collective bargaining agreement as the basis of federal removal, see Exhibit I (letter of Rossanna Eltanal to Deputy Labor Commissioner Sheila Torres which Sutter in-house counsel stated

**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS**

- 4 -

1. during a believed to be tape recorded session that he was told that said letter "was sent to your offices" meaning Plaintiff's counsel. The letter is dated October 18, 2007, sent via Fedex. It is clear that there is no "cc" to Plaintiff's counsel, although there is a "bcc" [blind carbon copy] to Mr. Frost, who most likely is not familiar with the antiquated term "bcc". In Exhibit J, opposing counsel makes no reference to Exhibit I, sent for a hearing, in which both Sutter in-house counsel and opposing counsel participated for that D.L.S.E. October 23, 2007 hearing to which no resolution has yet been filed.

As for the ERISA claims, Plaintiff has made no monetary claim that her employer caused her financial loss due to withholding benefits during her time of employment, and there has never been any claim to date for Plaintiff's prematurely born child. The significance of being the Employer/Health Insurer/Healthcare Provider is A question of fact, not law, as to whether or not California's Medical Confidentiality Laws, Civil Code Section 56, was breached more than the publication of the interior of Plaintiff's uterus and the publication of her child's amniocentis.

In his November 14, 2006, facsimile correspondence to Plaintiff's Counsel (redacted beyond the first identifying paragraph to remove any possible confidential information from being exposed) Sutter Health Legal Counsel Jeffrey Frost acknowledges past telephone conversations and correspondence, and that he, as Sutter Health counsel, represents Sutter Health regarding my "client's termination", See Exhibit F. The rest of the letter is redacted to follow California Evidence Code Section 1152.

. California Labor Code Section 923 allows for "self-organizing" regarding negotiations and/or "*protection*" against one's employer. Until now, Defendants denied plaintiff her CBA remedies at every step; suddenly Defendants want to raise the CBA because Federal Court is less expensive, and is a more employer-friendly forum for this hospital which fired Plaintiff (a nurse who had received many good work evaluations) when she was five months pregnant. Defendants' hands are not clean because they thwarted CBA remedies, and Defendants should be estopped from using the CBA as a shield against State Court.

2. Plaintiff won an Administrative Appeal. An Administrative Law Judge at E.D.D. held that Plaintiff was not fired for "good cause," basing the decision on, inter alia, Defendants' complete lack of credible evidence supporting their claim. It is possible that this matter was removed to Federal Court as Admissions were due at the time of removal, and one of the Requests for Admissions asked one named defendant to admit that they were aware that another named defendant had not spoken the truth, under oath, at that said E.D.D. hearing. This issue will be addressed further in the Motion For Remand.

**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS**

- 5 -

3. The Motion For Remand to State Court will also explain in better detail, with exhibits, Defendants' attempts to commit a California Misdemeanor by inhibiting a former employee's right to obtain other "new" employment, as explained to her in great detail in correspondence from the State of California Department of Labor regarding retaliation claims.

4. Plaintiff went out of her way not to state a Federal Cause of action in the State Complaint, as Defendant(s) Sutter Health and/or its affiliate MPHS refused to participate in any grievance procedure which Defendants now claim as both their and Plaintiff's nexus preemption under the Labor Management Relations Act (LMRA) section 301, which is not relevant, herein as Plaintiff will show in their motion for remand that Defendants went along with Plaintiff's "self-organizing" efforts for more than one year regarding efforts to settle her claims without any union representation and/or participation. It is hypocritical to now rely on a CBA that was before ignored by Defendants, and that action, prompted Plaintiff to Self-organize under Labor Code Section 923, with private counsel, for her own, and her baby's, "protection". All of Plaintiff's claims are based upon the California Constitution and California law. Plaintiff's will either amend or strike any issue regarding the employer also being the Plaintiff's "insurer" in their o be presented Third Amended (State) complaint.

5. Plaintiffs will also present modern law detailing ERISA preemption exceptions that presently exist since 2000 which Defendants did not refer to in their Notice of Removal.

Counsel for Defendants have not yet been informed of the filing of this Ex Parte motion (but will be so informed before 5PM, December 26, 2007 by telephone, by Attorney Gold) to continue the Motion to Dismiss as Plaintiff's counsel understands it may have to be heard at the convenience of both the Court and Defense Counsel, hopefully before the response to the Motion to Dismiss is due, on or about, January 2, 2008.

Dated: December 26, 2007              GOLD & ASSOCIATES


                                      By:          /s/
                                          ROBERT GOLD
                                      Attorney for Plaintiff L.M. Boccignone

**EX PARTE MOTION TO ENLARGE TIME TO OPPOSE MOTION TO DISMISS**

- 6 -

Case 3:07-cv-06243-CRB    Document 15    Filed 01/02/2008    Page 8 of 8