ROBERT H. GOLD (STATE BAR NO. 146136)
GOLD & ASSOCIATES
235 Montgomery Street, Suite 747
San Francisco, CA 94104
Telephone: (415) 354-5400
Facsimile:  (415) 354-5405

Attorney for Plaintiff M. Boccignone

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **M. Boccignone,**<br><br><br>*Plaintiff,*<br><br><br><br>V.<br><br><br><br>**MILLS PENINSULA HEALTH SERVICES (MPHS), SUTTER HEALTH (SUTTER), CLAUDIA CHRISTENSEN, BARBARA J. FOSTER and DOES 6-100,**<br><br>*Defendants.* | Case No. CV 07-6243 CRB<br><br>**(For Remand to San Mateo Superior Court )**<br><br>**FOURTH AMENDED COMPLAINT FOR:**<br><br>**1. NEGLIGENT MISREPRESENTATION, REGARDING REFUSAL TO REPAY STUDENT LOANS AS ORALLY PROMISED AS A *SIGN ON BONUS* (MPHS only)**<br><br>**2.  BREACH OF ORAL CONTRACT FOR FAILURE TO REPAY STUDENT LOANS AS PROMISED AS A *SIGN ON BONUS* (MPHS only)**<br><br>**3. SEX DISCRIMINATION, COUNT II (Pregnancy Discrimination, All Defendants)**<br><br>**4. SEX DISCRIMINATION, COUNT I, (Gender/Sex based Workplace Harassment, All Defendants)**<br><br>**5. FALSE LIGHT [Defamation] (All Defendants)**<br><br>**6. VIOLATION OF CALIFORNIA CIVIL CODE SEC. 56 et. Seq. (Publication of Medical Records, Presently MPHS and Sutter Health only)**<br><br>**7.  VIOLATION OF THE CALIFORNIA CONSTITUTION (All Defendants regarding violation of Causes of Action 1, 2 , 3, 4, 5 & 6)**<br><br>**8. INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (All Defendants, for Causes of Action 3, 4, 5, [presently] only MPHS and Sutter Health for Causes of Action 9 & 10)** |

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 1 -

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**9. RETALIATION REGARDING POST-TERMINATION REFERENCES (In violation of Labor Code Section 1050, from 8/31/06 through 06/06/07 regarding Post-Termination references to prospective employers)**

**10. Attorneys Fees & Costs (will cite case law in draft)**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1)      Late, one hot humid Saturday night, in August of 2006, Plaintiff was part of a medical team effort which Defendants claim resulted in life saving results regarding an elderly stroke victim. That team was led by Dr. Alan B. When *life threatening* as well as *life saving* drugs were being administered, that shift's *Charge Nurse*, (*Charge Nurse* is *the RN in charge* as well as *most knowledgeable* nurse on duty), Paula L., had left the patient care room before crucial medications were to be administered. Only other less experienced personnel, (a non-charge nurse, a respiratory therapist and Plaintiff, then a 20 month nursing school graduate, remained to assist Dr. B.). Although, momentary confusion and chaos did arise in the dramatic atmosphere, Dr. B, according to Defendants, saved the elderly stroke victim, a patient: "*Ae*"'s life. Both Defendant, then, MPHS Director of Emergency Services BARBARA J. FOSTER (hereinafter FOSTER) [now a retail clerk], testified to the same result, as her, now, co- Defendant, MPHS, then, Assistant Director of Employee Services CLAUDIA CHRISTENSEN, (hereinafter CHRISTENSEN) observed FOSTER's sworn testimony at the March 1, 2006 EDD Appeals hearing.

2)      This was the incident cited by Defendants which required Plaintiff to be abruptly terminated, on September 8, 2006—*with a termination letter not on Mills-Peninsula [MPHS] or Sutter Health letterhead*, dated September 7, 2006.

---

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

3)    Charge Nurse Paula L. had left her above shift, with a insuring a Charge Nurse was in place the then subsequent three and half hours, amidst a crowded ER (which including a dying 90 year old female as well as other complex issue patients.) Her departure also affecting the facility's ability to properly chart any new patient intakes and assessments.

4)    FOSTER, while CHRISTENSEN "observed", also testified under oath on March 1, 2006, after 5P. M., that Plaintiff had never harmed a patient, nor had been part of, or the subject matter of, *any lawsuit against anyone regarding her employment while at MPHS.*

5)    All Senior Staff at MILLS-PENINSULA HEALTH SERVICES, (hereinafter MPHS), such as CHRISTENSEN, have the e-mail address site: *@sutterhealth.org*; such as CHRISTENSEN's address CHRIST(_)@SUTTERHEALTH.ORG, See Exhibit A (E-Mail communication between C.N.A. Representative Shawn Bartlett and CHRISTENSEN.). Defendant SUTTER HEALTH, (hereinafter SUTTER) is an affiliated Corporate Management Group (form unknown to Plaintiff) for many affiliated hospitals in Northern California, usually (if not always) providing both Risk Management and Legal Counsel for these self-insured affiliates as well as often clouding ownership of the *For Profit* subsidiaries owned by SUTTER as well as the Affiliates' own For Profit real estate holdings, left over from the days when each affiliate had been a separate hospital with its own endowment (i.e.: when the Davies Family gave money for Davies Hospital at 45 Castro, now a CPMC Campus, or the soon to be shut former Children's Hospital in Laurel Heights in Street, San Francisco, to be replaced with a facility replacing San Francisco's Cathedral Hill Hotel on Eddy and Van Ness Avenue, with a facility oriented towards geriatric medicine, in a neighborhood now surrounded by expensive condominium like retirement communities.) SUTTER and maybe some affiliates, maintain insurance coverage for claims *above specific seven figure amount* for matters that can not be resolved internally *or through structured settlement.*

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

6)    It is alleged, given the number of public record lawsuits recorded in San Mateo and San Francisco Counties, that once MPHS reaches a particular debt limit of monies owed—due in part to structured legal settlements—like many an airline—it will file Chapter 11 bankruptcy. As happened with United, to whittle down both its legal settlement and union obligations.

7)    About five weeks before her discharge on September 8, 2006, on Friday, August 4, 2006, Plaintiff gave Defendant FOSTER a properly filled out *MPHS' form: REASONABLE ACCOMODATION REQUEST FORM* signed by her medical provider, Exhibit B.

8)    Although FOSTER and her then assistant, now the Director of Emergency Services, PENNY HUTCHINGS, acknowledged receiving said doctor's letter requesting temporary pregnancy disability accommodation, it was ignored by FOSTER AND HUTCHINGS from the date presented until the date discharged, in violation of California Government Code Section 12945 (b) (1) [FEHA violation.]  FOSTER and HUTCHINGS were apparently more concerned regarding harassing Plaintiff to quit then, to *take care for the health of her fetus.*

9)    Plaintiff's has **Six [6] basic claims described in the next three paragraphs: 1)** MPHS made an oral promise that if Plaintiff ceased seeking employment (before graduating from Nursing School) and agreed to work for MPHS upon graduation, and remained at MPHS at least one year, they would assist paying back almost all of her student loans.  a) **MPHS Negligently misrepresented that oral promise regarding the Sign On Bonus of Student Loan Repayment** as it was never explained to Plaintiff that a written disciplinary action, see Exhibit C, would negate her access to said program.  **Defendants also negligently failed to inform Plaintiff when she received a disciplinary action (incorrectly** as the attending doctor personally spoke to FOSTER and explained why he chose a 14 gauge needle to aspirate fluid from an injured 200 pound (+) 16 year old) **20 weeks later**, that this action would trigger the denial of repayment of Plaintiff's student loans; b) Not repaying said loans is also a breach of an oral contract, which in California (Cal. Code of Civil Procedure Sec. 339) has a two year statute of limitation: C.C.P. Sec. 339 (3)

Where the ground for rescission is fraud or mistake, ...time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

10)   **Claim 2) Plaintiff suffered workplace sex discrimination twice over: a) (i) when MPHS ignored its own REASONABLE ACCOMODATION REQUEST FORM** signed by Plaintiff's doctor, See Exhibit B.  This was in violation of California Government Code Sec. 12945.   **a) (ii) When MPHS made no effort to protect an employee's fetus** (later born two months premature at the same hospital—more than three months after her termination) by not transferring Plaintiff to a less dangerous position where her fetus wouldn't be exposed to X-ray's, and/or infectious diseases.   **a) (iii)** When on September 8, 2006 Plaintiff was fired without *Good Cause,* see EDD Ruling of March 16, 2007, Exhibit C.  Also see *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461 (2d Circuit, 1982) regarding full faith and credit, "dating back to 1790", from both (any) State high courts as to how Federal Courts regard State administrative law decisions. Plaintiff's termination violated California Government Code Sec. 12926(p), 12945 (a)-(b), 29 CFR Sec. 1604.1 -1604.11.   **b). Plaintiff's MPHS coworkers and supervisor sexually harassed her by publishing** (both pre-termination and post-termination) **her confidential medical record images of an ultra sound image of her <u>female sexual organ *and later her womb*</u> in order to harass Plaintiff** either while she was an employee or a patient at MPHS. (These actions, now scared quiet by MPHS personnel as RN and other layoffs at MPHS have continued during a nursing strike, triggered MPHS and/or SUTTER's self-regulating notice requirement under HIPPA to timely contact HHS Office of Civil Rights and accurately, at the time of the violation, to record the incident.)

11)   Under the above fact pattern, as well as subsequent Medical and Personal Information "events", Plaintiff's California Civil Code Sec. 56 et. seq., cause of action has been triggered.  Plaintiff was never notified by Defendants, as required under California law, regarding

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 5 -

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

the above publications.  Defendants allegedly, deny these events [publications] ever occurred or would be defined as HIPAA violations.

12)  FOSTER also initiated an investigation into Plaintiff's sex life by questioning Plaintiff's co-workers on the topic at the place of work.  This investigation was supposed to conclude with a March 3, 2006 meeting between Plaintiff, union representative Shawn Bartlett and MPHS representative.  It is not known when in 2006, it did finally conclude.  There was a meeting of sorts with Plaintiff and her non attorney representatives, and Defendants CHRISTENSEN and FOSTER.  This meeting had no resolution, nothing was in writing nor entered into any record regarding the sex investigation, the sex investigation has been treated as if it never happened with out resolution to its' act of having occurred.  Exhibit A, demonstrates CHRISTENSEN's efforts at re-defining the characterization of MPHS Human Resource and/or Supervisory Meetings with Plaintiff.

13)  Besides contributing to both the False Light and Sexual Harassment causes of action, CHRISTENSEN, as seen in Exhibit A, **duplicitously and negligently** [to her employer MPHS/SUTTER] *constructively opted MPHS/SUTTER out of any Collective Bargaining Agreement (CBA)* **grievance resolution type of procedure, as early as February 27, 2006 by CHRISTENSEN incorrectly characterizing to Bartlett, Plaintiff's union** (so at the time legal representative) **that the scheduled March 3, 2006 meeting, was suddenly, not a disciplinary gathering but a** *patient care meeting, See Exhibit A.*  There never was a meeting with a written record or documentation or temporary resolution signed by Plaintiff as entered into her employee file, (But one *was originally planned as defined by the CBA).* **CHRISTENSEN,** Defendants' proclaimed "Labor Expert" in the instant matter, **either on her fiat, intentionally, or negligently chose not to utilize the CBA as early as February-March, 2006, (by her false statement regarding** *patient care meeting***) before the Plaintiff was terminated and long before** [six

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**months prior to] the matter was transferred over to Sutter Risk Services in Sacramento and/or before outside legal counsel was retained.**

14)    CHRISTENSEN's misrepresentation to Bartlett, see Exhibit A, either negligent or intentional, but made in *their* agreed upon chosen form of communication effectively ended Plaintiff's requirement to follow any CBA grievance procedure as MPHS Representative CHRISTENSEN, for whatever reason, misrepresented to a union [legal] representative the state of an ongoing interaction.   That illegal action by the interpret or of the contract invalidates the contract to any extent it needed to be followed—as CHRISTENSEN's misrepresentation made it impossible to continue within the confines of the CBA.   This type of action characterized Defendants future conduct towards Plaintiff until her termination.   **CHRISTENSEN OPTED DEFENDANTS MPHS & SUTTER out of the CBA, herein by her misleading acts.  She has jeopardized her employer's credibility given all her actions, undisputed facts, against Plaintiff as described herein, as MPHS & SUTTER HEALTH negotiate with C.N.A.**

15)    **Plaintiff, was soon after, forced to sign, *on March 16, 2006* a Performance Correction Notice*, dated February 15, 2006,* Exhibit D.**   It was at this time, a month after Plaintiff's miscarriage, FOSTER retroactively took away Charge Nurse Brian J. permission for the fatigued and depressed Plaintiff to nap in an empty ER during her graveyard shift break.   Plaintiff was issued *two* California Department Fair Employment and Housing Right to Sue Letters, both dated July 13, 2007, (when she filed her claims) regarding the separate sex discrimination claims (Pregnancy Discrimination and Workplace Sexual Harassment based on gender), see Exhibit E and Exhibit F.   Her termination letter dated: September 7, 2006 but given to Plaintiff on September 8, 2006, see Exhibit G, and MPHS Change of Status Memorandum signed by CHRISTENSEN AND FOSTER, Exhibit H.    **3) Claim for False Light** is a California tort arising out of her FOSTER's, investigation into Plaintiff's sex life outside the workplace, by quizzing Plaintiff's co-workers as

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

well as both pre-termination and post termination actions by MPHS employees when Plaintiff was either an employee and after termination, when she was a patient at MPHS.

16)   **4) Claim for violation of the California Constitutional as an employee cannot be discharged for reasons prohibited by law**, as described above regarding sex discrimination. **5)** Retaliation regarding post termination "false light" interference regarding Plaintiff's work references as well as post termination while a patient at MPHS by nurses at the maternity ward calling her names *which if true the nurses themselves would have then violated California law*. Also included in this claim are acts of contact and/or release of private information, done under the veil of her attorneys, by CHRISTENSEN towards Plaintiff personally, to intimidate Plaintiff to move away from her present address—acts up until January, 2008.   **6) Intentional and/or Negligent infliction of Emotional Distress** brought on by the Sex Discrimination/Harassment claims, False Light Claims, and post-termination acts by MPHS employees as described above against Plaintiff after September 8, 2006.

## STATEMENT OF FACTS

17)   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 16 of this Complaint as though fully set forth herein.

18)   Plaintiff was recruited by MPHS/SUTTER before graduating Nursing School. Plaintiff agreed not to seek employment elsewhere in exchange for a sign-on bonus (presumably after one year's employment at Mills–Peninsula Hospital) in exchange for assistance with her school loans, and other expenses associated debt from nursing school.

19)   Plaintiff began her employment at MPHS with glowing reviews and an over-friendly Supervisor, FOSTER, interacting with Plaintiff.  FOSTER had asked Plaintiff, given her unusual last name, during Plaintiff's first months of work, if she was the same *person with that last name* from Delma Pacific Hospital, 11 years earlier.  Plaintiff, as always, responded truthfully.

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

20)    Plaintiff's interaction FOSTER degraded from excellent reviews to arbitrary and undocumented –except by omission in the existing records--disciplinary actions in what appeared to be ER heroic tales of life saving events, such as that in paragraph 1).

21)    In early February, 2006, Plaintiff had a miscarriage *for a wanted pregnancy*.

22)    Shortly after that miscarriage, without her permission, sometime in the winter of 2006, the post medical treatment record, ultra sound image of Plaintiff's female sexual organ, was published on a public ER overhead screen. MPHS employees told Plaintiff they saw the image and were "informed" it was Plaintiff's female sexual organ.

23)    It is systemically impossible, given MPHS internal controls, for Defendants not to know the exact time, date and identity of the person (s) responsible, via their access code, to confirm or deny that these publications occurred, regardless whether defendants *themselves define the incidents as HIPAA violations*. It is alleged that avoidance of HIPAA violation reporting by Plaintiff may have been partly responsible for Defendants actions towards her; therefore there would be a criminal nature of false pretenses to having caused Plaintiff malicious harm, present herein.

24)    HIPAA, a federal criminal statute with no direct Civil Claim remedies is also unlike California Civil Code Section 56, et. seq.[The California Medical Records Confidentiality Act] in that unlike California State law, HIPAA as federal law, because of its' criminal nature (i.e: *People or HHS vs. MPHS*) therefore, it has no notice requirement to the victim themselves, see Privacy & Data Security Breaches, A Cal Law Roundtable in partnership with ACC America, September 19, 2007 (quoting Heath Care Data Breaches: Steps to take When Prevention Fails, by Rebecca Williams, James P. Walsh, and Thomas R. Burke and Charlene Brownlee, of Davis Wright Tremaine in Seattle) Exhibit I . Plaintiff is presently, working with HHS to investigate her own HHS violations with care not to incorrectly cast aspersions on other person or persons.

25)    On or about February 24, 2006 through March 3, 2006, Plaintiff was suspended without pay from work. FOSTER, it is alleged, was told by a Pacific Islander-American Security Guard that on a late dark night he perceived (irrelevant to her job performance or patient safety) Plaintiff and her boyfriend *more than hugging* in the boyfriend's truck. This was in a non-security

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747·
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

camera enclosed, isolated parking area behind Peninsula hospital.  Much of the past parking area no longer exists due to new construction at Peninsula Hospital.

26)   FOSTER, hearing that Plaintiff *had sex*, allegedly flew into in an investigatory rage, suspending Plaintiff from work, and began questioning her co-workers at the workplace.  Its alleged FOSTER was also upset that so soon after her miscarriage, Plaintiff still wanted a pregnancy.

27)   It is also alleged that Plaintiff's Supervisor FOSTER was seeking to so sully Plaintiff's reputation, *so as to make it appear that she was the type of woman who would not object*, (and therefore would constructively permit*), to her female sexual organs to be published in FOSTER's  ER Department*.  This would have avoided a HIPAA self-regulatory requirement notice.

28)   It is  alleged that this investigation, whether a negligent or intentional act, had as its goal *to so embarrass Plaintiff, that she would quit*.  Among the reasons for this action are that contrary to other RN's, specifically Paula L referred above, Plaintiff was a well-trained nurse.  She was eager and would at times, unknowingly, *as her supervisors term it*  "over chart".

29)   Regarding FOSTER retroactively denying permission to Plaintiff to nap on a break in an empty ER, now a month and a week after her miscarriage, the Court in *Singleton v. United States Gypsum Company*, 140 Cal. App. 4th 1547 (2006) stated: *there was evidence that* [the] *'plaintiff was disparately treated' because of his sex and that it was clear that the coworkers intended to harass Plaintiff.  What happened among the workers was not "male –on-male" horseplay," "but the acting out of the* <u>*co-worker's anger*</u> [Emphasis added] [Here, FOSTER, and in actions described below, CHRISTENSEN's even more so, as she is the designated Labor Expert, acted out of anger.]  The Court held: *...there is no requirement that the motive behind the sexual harassment must be sexual in* nature.

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

---

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

*30)*   Plaintiff from mid-March, 2006 to the end of August, 2006 did her best to meet a barrage of unfounded Performance Correction Notices (which are not the same as written Grievance Procedure Documents and/or Hospital Incident Reports as referred to in the CBA.) Plaintiff always in FOSTER's office, crying, asking Foster how [Plaintiff], could *correct herself, see Exhibits D & J.*

*31)*   Plaintiff did not then know, as only recently revealed during *non-confidential* communication between parties counsel, that FOSTER only too well remembered that Plaintiff had 11 years earlier, at Delma Pacifica Hospital, reported that a friend of the *then 40-something* FOSTER, a Middle Eastern doctor in his late 30's, had put his hand down Plaintiff's smock to *cop a feel of her then 21 year old breasts.* Under California law, after Whether FOSTER remembered how frantic that doctor was after Delma Pacifica let him go she did not say.  Plaintiff came to her office crying about her situation.  Whether FOSTER offered mentoring or helpful feedback from FOSTER will be determined in deposition testimony.

*32)*   It is unknown whether FOSTER felt empathy for that doctor's frantic plight or envy towards a younger female receiving that male's attention.  FOSTER has repeated her perceived perception of on-going *lewd behavior* by then 21 year old female victim to the present day, (In the mid 1990's incident she was groped from behind, as the doctor kicked the door shut with his foot), 11 years later; Counsel Nancy L. McCoy excitedly uttered in the hallways of the courthouse *"you should hear how* [FOSTER] *describes what happened back then!"*  Ms. McCoy, then, unaddressed by the other two male counsels, also excitedly interrupted said other counsel and loudly inquired (regarding the underlying reason MPHS gave EDD for the sudden termination): *"what was she* [Plaintiff] *doing handling those Meds?*   This echoes Foster accusingly asking the 21 year old Plaintiff what were YOU doing in there when the doctor grabbed her from behind and kicked the door close with his leg.  An old adage: *"while men often treat women badly, women almost always treat other women worse."*

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 11 -

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

*33)* Both defense counsels were blank-faced when informed, Charge Nurse Paula L. was absent as Dr. Brody administered the meds to "Ae"; other percipient witnesses were present.

34) Regarding the above exchange, Plaintiff may request stipulations as to the above statements being made by Ms. McCoy in order to avoid calling either Ms. McCoy at a trial as a witness, *not in regard to any attorney-client communication*, but regarding her excited utterances, stated in a public space, as described in paragraph 33 above. Mr. Polsky would be asked to also sign the same stipulation as to what he heard, in order to avoid calling him as a witness regarding McCoy's excited utterances. It's hoped a stipulation would not effect either representation herein.

35) On or about, August 04, 2006, Plaintiff gave FOSTER *a MPHS form*, signed by her medical provider, MD, regarding Plaintiff's temporary pregnancy disability accommodation. It stated that neither Plaintiff, (the mother), nor the fetus should be exposed to infectious diseases, x-rays, and or lift anything over 30 pounds, [paraphrase] Exhibit B.

36) FOSTER and PENNY HUTCHINGS stated they didn't know how to comply, and **ignored the letter ordering pregnancy disability accommodation. BARBARA J. FOSTER and PENNY HUTCHINGS were indifferent to the well-being of Plaintiff's fetus; which was later born two months premature.**

37) **Plaintiff and her Fetus, for at least, more than three weeks, were off and on, exposed to X-rays, Rocky Mountain Spotted Fever** and other illnesses and/or stressful circumstances that may have contributed to said fetus being born two months premature.

38) **Plaintiff was always clear with FOSTER and HUTCHINGS that *she wanted to keep her baby*.** She also made this intention known to other MPHS supervisors and Directors.

39) FOSTER, since the undocumented (non-grievance) July, 2005 meeting only grew angrier after her aborted sex investigation into Plaintiff's private life, and continued to punish Plaintiff with more obtuse or falsely stated Performance Correction Notices in 2005 and 2006, after what began as an uncontested by Defendants, very good first six months, see Exhibits D & J.

40)    Plaintiff since her termination has had night mares and has been unhappy with her life and has had bouts of what she would describe as depression.  She is fearful of MPHS and their administrative staffs as prospective employers, who have already offered her a position, almost always rescind said offers after contacting MPHS.  Plaintiff has never been able again to obtain another ER or similar nursing position.  Her last job was gruesome graveyard shift of caring for terminally ill babies—the same age as her own baby  The only job offered to her after calls were made to MPHS, it was impossible to keep given the needs of her own prematurely born child.

41)    On August 28, 2006, Plaintiff finished (then unknown to her what would be her last ever ER Shift at MPHS's, (*which is why she accepted the job offer at MPHS to be an ER nurse,*) at Peninsula Hospital, and went to have her amniocenteses taken at Mills Hospital.

42)    On either Tuesday or Wednesday, September 5, 2008 or September 6, 2008, Plaintiff, her non-attorney representatives (same as those cited in paragraph 12), met to discuss the ER "situation" described in Paragraph 1—in which FOSTER was not allowed to speak and CHRISTENSEN stated that they were leading towards "termination".  Plaintiff's non attorney representatives requested an expedited response.  On Friday, September 8, 2006, at a meeting with FOSTER and CHRISTENSEN, Plaintiff's non attorney representatives, and Plaintiff, to her surprise was handed a termination letter, dated September 7, 2006, Exhibit G.  Plaintiff has no personal knowledge of any communication dated on or about September 14, 2006 to or forms CHRISTENSEN regarding her termination.   The termination letter was not on SUTTER or MPHS or any Medical or non Medical Department of MPHS letter head, see Exhibit G.

43)    On March 16, 2007, an EDD Appeals Judge ruled that MPHS's evidence regarding *fabricated inferences* to life and death events at MPHS' s ER, as told through the sole sworn testimony of FOSTER, as CHRISTENSEN, also sworn-in looked on, was viewed "*with distrust*", see Exhibit C.  Defendants did not appeal this decision to the California Superior Court where an attorney, the California Evidence Code, and California Business and Professions Code

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Section 6106 would have been applicable (as California Rules of Professional Conduct are also applicable in Federal Court regarding California licensed attorneys.)

44)   Shortly before the above March 1, 2007, hearing took place, on or about February 7, 2007, Plaintiff, in Pro Per, filed a defamation claim against FOSTER to protect her *one-year* statute of limitations. It is not known when Foster became aware of said complaint; however as soon as her attorneys knew of it, they were immediately ethically and legally bound to obtain a signed waiver of conflicts from FOSTER in order to represent both her *and her employer*. This is true, regardless if she was being represented by Sutter's Risk Services Counsel and/or hired outside counsel, pursuant to the California State Bar Ethics Hotline references regarding this specific issue as provided to Plaintiff's counsel by said service.

45)   On July 31, 2007, Plaintiff amended her complaint to include the pregnancy discrimination claim (sex discrimination) as well as to now name as defendant, MPHS/SUTTER the employer (mistakenly named and corrected below) as well as CLAUDIA CHRISTENSEN.

46)   On or about December 7, 2007, FOSTER either resigned or was asked to resign from MPHS, after CHRISTENSEN had been properly served Admissions from Plaintiff, which asked to her admit or deny, what would be the most logical defense to, her contradicting sworn testimony at the above referenced March 1, 2007 EDD Appeals Hearing.

47)   Prior to removing Plaintiff's complaint which intentionally raised no Federal Questions of Law, Plaintiff served CHRISTENSEN with Admissions, regarding whether or not *she was aware* of FOSTER's testimony prior to the EDD hearing.

48)   Rather than answer the timely filed discovery, above, the matter was removed to Federal Court three days before O.S.C. Judge, the Hon. Marie Weiner had ordered Defendants to answer the Complaint, see Exhibit K.

49)   It is hereby alleged that Defendants timed their removal, to both harass and vex Plaintiff herself, who was planning to be with her infant and her parents in the latter's Southern

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 14 -

California residence, as well s to harass Plaintiff's counsel's who had lawfully, previously, provided noticed to be away during the new year's holiday.

50)    It is hereby alleged, without any meet and confer efforts, which the response to the Removal was due to be filed on New Years Eve, December 31, 2007.  Defendants had received proper attorney-to-attorney notification of Plaintiff's counsel wishing to be unavailable from late December through New Years Day, *still valid in California Courts*.

51)    Defendants, in their Removal action frivolously attempted ***to strip Plaintiff of her rights as a California citizen, of protections provided to her by the California Legislature***.

52)    When filing her Complaint, Plaintiff, was ignorant of the true names of Defendants, herein, she has tried to properly designate "Doe" defendants in Second Amended Complaint by their fictitious names of Does Number One (1), Two (2), Three (3), Four (4) and Five (5).  Presently, Plaintiff, having discovered *truer* name, replaces Defendant SUTTER HEALTHCARE (MPHS) with Does 4 to be named MILLS-PENINSULA HEALTH SERVICES (hereinafter MPHS) and Doe 5, SUTTER HEALTH (hereinafter SUTTER.)

53)    On July 12, 2006 Mark W., RN a nurse at MPHS had his deposition taken in the case of *SCHMUCK v. MPHS, et al* (San Mateo County Case CIV 450802.  On August 17, 2006, V. T., RN had their deposition taken in the case of *SCHMUCK v, MPHS, et al*.  The crux of these depositions had to do with a poor intake assessment regarding a patient who was released from an MPHS ER *in 2004*, and then within a day, subsequently suffered a brain bleed (which may lead to stroke, among other ailments and/or death.)   The questioning focused among other issues, on the intake/assessment of the Charge Nurse at MPHS ER's, in an objective manner.

54)    It is industry practice for legal defense firms to turnaround deposition summaries back to insurance adjusters, or herein to the self-insured MPHS/SUTTER risk management personnel within 20 days of the two deposition dates.  (This has to do with law firm cash flow and billing as well as good legal service.)  Given the end of the then end of summer holiday and the

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 15 -

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Labor Day Weekend, it is likely that it was not until Tuesday, September 5, 2006, when someone at MPHS or Sutter risk management services personnel reviewed said deposition summaries. Among the Recipients of said deposition summaries would be MPHS executive Delores Gomez who it is alleged is or was a long time acquaintance, if not friend, of FOSTER.

55)    While patient "Ae" in paragraph 1) *did not die*—and her procedure *may have been* life-saving—Plaintiff alleges due to a distracted Charge Nurse's poor intake assessment, and that Charge Nurse may be Paula L. who later went home leaving the ER without a Charge Nurse for more than three hours, the procedure described above may have **been unnecessary—*let alone, life saving*.** As no one died, nor, presumably, permanently disabled, and no wage loss, it's unlikely a lawsuit would follow a mistaken procedure, as only the patient—not her family witnessed "Ae"'s dire pain. Included in her family at the ER was her husband and son, Drs. "Ae".

56)    Still, it is alleged that MPHS managerial staff may have needed to quickly find a scapegoat, because among the "stroke victim's" then present family waiting at the ER, was an ER physician who may or may not have had privileges (or be employed by a Sutter affiliate) and may have soon deduced that the procedure was unnecessary-regardless of its' lack of lawsuit capacity. Paula L., the Charge Nurse on duty that night, contributed E-mails to FOSTER's *evidence* to the EDD hearing found, like Dr. B's E-mail, to be seen with "distrust".

57)    All times herein mentioned, each and every defendant was the agent and/or employee of each and every other defendant, and in so doing the things alleged each defendant was acting within the course and scope of such agency and employment, and in so doing the acts herein, it is alleged each defendant was acting with the consent, permission, and/or authorization of each of the remaining defendants. All defendant actions herein alleged were approved or ratified by the officers/supervisors of each defendant or their supervisors.

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**JURISDICTION AND VENUE**

58)    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint as though fully set forth herein.

59)    Jurisdiction and venue are proper in San Mateo County Superior Court because: all parties are wholly or partially domiciled within the territorial limits of this Court's jurisdiction, Defendants regularly does business through Defendant MPHS within the territorial limits of this Court's jurisdiction, the acts giving rise to the instant action have **_all_** occurred within the territorial limits of the San Mateo Superior Court's jurisdiction, and many, if not all, of the witnesses are located within the territorial limits of San Mateo County Superior Court's jurisdiction as well as a fall under the protection from violation of California Constitution, Article I, Section 8, *the breaking of California laws*.  Furthermore, Plaintiff suffered damages in an amount sufficient to sustain this Court's unlimited jurisdiction.

**FIRST CAUSE OF ACTION**

**(NEGLIGENT MISREPRESENTATION)**

**(Defendant MPHS)**

60)    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60 of this Complaint as though fully set forth herein.

61)    Defendants represented to Plaintiff that MPHS provided a "Sign-On Bonus" regarding assisting brand new Registered Nurses, such as herself, to repay their student loans if they did not seek employment elsewhere.  At all times, plaintiff believed she was offered a Sign-On bonus in exchange for accepting employment with MPHS and not seeking work elsewhere during California RN shortage.  When that promise came due, although she received a congratulatory correspondence for a year's employment, from MPHS CEO Robert Merwin, See

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 17 -

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Exhibit L and she was denied the benefit of the Sign On Bonus bargain, See Exhibit M. It is undisputed that the CBA makes no mention of the Sign On Bonus.

62)    Plaintiff denied said Sign-On Bonus due to, among other reasons, a *written disciplinary action* (previous to which the attending doctor told FOSTER it was his decision to use a 14 gauge needle to aspirate fluid from a 200 pound football player) as well as other actions found to be held in "distrust" by the EDD Appeals Judge, see *Kremer*, supra, for full faith and credit by the 2nd Circuit Court of Appeal regarding a denied stated administrative agency (similar to DFEH) regarding a denied claim based on religion.

63)    Instantly, before Defendants had reason to terminate Plaintiff (reneging on loans, her personal HIPAA violations by MPHS, as well as Plaintiff's perceived belief that MPHS supervisory staff covered up a MPHS 's employee's mistake possibly leading to the diabetic demise of a patient); Plaintiff had no notice that her oral promise wasn't to be honored. She only received notice to the contrary 20 weeks after the *non* written disciplinary action occurred.

64)    Further, Plaintiff had been told no disciplinary action would be taken for any inadvertent act before July, 2006—the subject matter of much of the above referenced non "written disciplinary action" used to deny her student loan repayment promise. She was told: "*not to worry it as it was common for new nurses to have these issues and occurrences*"[paraphrase.].

65)    Defendants cite a written disciplinary action as disqualifying her from the sign-on bonus, Exhibit M. Plaintiff only recalls being verbally accused of inadequate job performance during a 2005 shift when, doing her job, she unknowingly, by chartered that there were more than fifteen patients *and only three Registered Nurse at the ER (and no Charge Nurse)*. That ratio issue is a violation of California Code of Regulations, Title 22, § 70217.

66)    MPHS needed to get rid of Plaintiff due to her "newbie" naive strict adherence to nursing regulations, as well as co-workers having published her confidential medical records images of her female genitalia, which would allow Plaintiff or her attorney to file a HIPAA

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSMILE: (415) 354-5405

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

violation complaint with HHS.  If filed by attorney, complaint is filed under "G" for Gold, pursuant to Ileana Peters, Privacy Specialist, HHS, Washington D.C.

## SECOND CAUSE OF ACTION

### (BREACH OF ORAL CONTRACT)

### (Defendant MPHS)

67)    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint as though fully set forth herein.

68)    Defendants represented to Plaintiff that MPHS provided a "Sign-On Bonus" regarding assisting brand new Registered Nurses, such as herself, to repay their student loans if they did not seek employment elsewhere.

69)    At all times, plaintiff believed she **was offered a Sign-On bonus in exchange for** accepting employment with MPHS **and not seeking work elsewhere during California RN shortage.**  When that promise came due, although she received a congratulatory correspondence for a year's employment, from MPHS CEO Robert Merwin, See Exhibit L and she was denied the benefit of the Sign On Bonus bargain, See Exhibit M.  It is undisputed that the CBA makes no mention of the Sign On Bonus.

## THIRD CAUSE OF ACTION

### (SEX DISCRIMINATION)

### (Count I Pregnancy Discrimination)

### (All Defendants)

70)    Plaintiff's by reference contained in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

71)    Pregnancy discrimination is discrimination against a female employee on the basis of her sex.

Pregnancy discrimination is also an act against the mothers of babies and infants. Instantly, it is alleged Defendants FOSTER and CHRISTENSEN, were more concerned about their ability to scheduled employees **at all times** and their employees *work performance,* without having to consider or regard their employees' very young children's' needs.

72)  Plaintiff had, without her permission, the ultra sound of her female sexual organ published on the overhead monitor of the ER Department.   Later, either before or after her termination, Plaintiff had without her permission the image of her womb published on the hospital and especially the ER Departments computer monitor information delivery system.

73)  FOSTER, not happy that she had to end her sex investigation on or around March 2, 2006 retroactively withdrew permission, given on or about February 15, 2006 **on or about March 16, 2006**, a month later, regarding Plaintiff taking a nap on her break not so long after her February, 2006 miscarriage.  FOSTER then gave Plaintiff a "final written warning" on or about March 16, 2006, for *sleeping on the job*, (days after her miscarriage) in order to build a file, to appear to have good cause to terminate Plaintiff, see Exhibits, D, J & M.

74)  FOSTER when asked at the March 1, 2006 EDD Appeal Hearing: "isn't fatigue a normal symptom of women who have a miscarriage after the first couple of weeks? replied: "*uh.,* see Exhibit N

75)  When asked: "*you don't think when women have miscarriages and they have blood and the fetus come out they have fatigue and emotional depression for the first couple of weeks after the have miscarried*? to which FOSTER replied: "*yes, I agree with that*", see Exhibit N.

76)  After Plaintiff gave FOSTER MPHS's own REASONABLE ACCOMODATION REQUEST FORM signed by her doctor, for temporary accommodation due to pregnancy disability it went ignored.  It specified no lifting over 30 pounds, exposure of the fetus to x-rays and, especially, no exposure to infectious diseases, see Exhibit B.

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

77)    Contrary to the specific pregnancy accommodation letter, Plaintiff and her fetus *were often exposed to x-rays and infectious diseases, such as* Rocky Mountain Spotted Fever and Dengue Fever.

78)    Defendants owed Plaintiff <u>a higher duty to know what to have Plaintiff's fetus exposed to as licensed California medical professionals</u>.  Therefore Defendants possessing a higher degree of medical knowledge as they are in the medical care providing industry should be held to a higher standard when they chose to wantonly and recklessly endanger her and her fetus.

79)    Defendants aware of her pregnancy disability had an affirmative duty under California's Fair Employment and Housing Act (hereafter FEHA) regarding pregnancy-related temporary disability to initiate a dialogue with Plaintiff, at least upon the written notice from her doctor on August 4, 2006.  MPHS a 500 plus bed medical facility, once a full trauma center, could have accommodated this pregnant nurse.

80)    It is not known if MPHS self-required by HIPAA regulations notified HHS Office of Civil Rights of the 2006 confidential medical record publication violations.  <u>It is known that the publications were without Plaintiff's actual, and/or constructive permission.</u>

### FOURTH CAUSE OF ACTION

### (SEXUAL DISCIMINATION)

### (WORKPLACE HARASSMENT)

### (All Defendants)

*81)*    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82 of this Complaint as though fully set forth herein.

82)    Employer liability for sexual harassment by a Supervisor *depends on whether or not the perpetrator of the harassment had supervisory authority over the victim.* See: Harassment in the Workplace, Employment Roundtable, Stacey Mark, and Page 12 October 16, 2003.  Mark continues:

---

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 21 -

When the employee is subjected to harassment by a co-worker, a negligence standard applies...**The employer will be liable if it knows or [doesn't take] remedial action regarding the co-worker's harassment**.

83)    In the Ninth Circuit, prevailing law regarding liability for supervisor harassment has often been excused when the fact pattern is one where a *complainant knows they are being sexually harassed* and therefore can engage in a normal complaint process, which is already in place, such as in *Lappin v. Laidlaw Transit, Inc.,* 179 F. Supp.2d 1111 (N. D. Cal. 2001), or *Kohler v. Inter-Tel Technologies,* 244 F.3d 1167 (9th Cir. 2001).  In that instance, Plaintiff may seek their administrative remedy within the corporate structure.

84)    The above fact pattern is what happened to the then 21 year old Plaintiff (without benefit of counsel, just the assistance of an outraged male supervisor and her father a supervisor of union workers who has had to watch 30 years of anti-discrimination videos from his county employer to avoid just the kind things which occurred to his daughter) was convinced by the men in her life (her Supervisor and her father) to complain about the doctor groping her breast from behind—as he kicked the door shut.  Plaintiff, then, at Delma Pacifica Hospital, only understood that she was subject to unwanted "touching of her breasts".  It was her parents, still in Southern California, that had her make sure that *that* doctor could not harm another young female.

85)    FOSTER was part of Delma Pacifica's executive administrative committee reviewing the incident brought to them by Plaintiff's upset male supervisor, S. K.   FOSTER's immediate reaction was to blame the female Plaintiff and accusingly ask her: *What were YOU doing there*?  This "manner" followed FOSTER's years later, when she commenced an investigation into Plaintiff's sex life outside work (2006) at the workplace, a few weeks after she had miscarried, and the post medical treatment image of her sexual organs were  published in FOSTER's then ER Department.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

86)    After Plaintiff's discharge there were two (or three) letters and/or e-mails from SUTTER Risk Services Counsel to Plaintiff. Originally, before Defendants maximized Plaintiff's damages by the continued actions mentioned above (pre and post employment), Plaintiff's counsel was originally concerned about just getting Plaintiff pre-natal health insurance and job reinstatement. The above facts and claims either (timely) unfolded as MPHS/SUTTER counsel made no attempt at resolution, ADR, or after the matter was turned over to long standing outside counsel. It was obvious by CHRISTENSEN's actions alone and MPHS/SUTTER's control of their client's post termination of Plaintiff harassment that they knew that by CHRISTENSEN's by own misrepresentative actions, she had constructively opted MPHS and/or SUTTER out of the CBA and any administrative effort to resolve this matter. The CBA has no post termination resolution procedure, especially none fitting the instant matter's fact pattern.

87)    In *Singleton v. United States Gypsum Company*, ibid. (2006) the Court ruled: *"whether the taunts of the coworkers created a hostile environment 'because of sex'* [there, homosexuality; here, pregnancy] *or simply because they were attempting to sabotage* [him] *at work for other reasons* [citing *Oncale v. Sundowner Offshore Services, 535 U.S. 75 (1998)], there was evidence that 'plaintiff was disparately treated' because of his* [here, her] *sex and that it was clear that the coworkers intended to harass Plaintiff.* [Emphasis added.]

88)    Plaintiff has the appropriate Right To Sue Letters from DFEH regarding her California Sex Discrimination Claims, Exhibits E and F. Plaintiff's charges filed with DFEH are deemed constructively filed with EEOC, although a DFEH Right To Sue Letter does not exhaust [all] Title VII's claims, *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 326, 102 Cal Rptr 2nd 13, 20.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

89)    In an Amicus Brief from the California Employment Lawyers Association (CELA) from *Salazar v. Paratransit*, 103 Cal.App. 4th 131, CELA writes regarding "an employer [who] knowingly permits a third party to sexually harass one of its employees violates California Government Code Section 12940(a) *as that Employer Maintains Different Terms and Conditions of Employment Based Upon a Worker's Sex*."

90)    Herein, due to the respective security codes apparatus at MPHS it is impossible for Defendants MPHS and/or SUTTER  not to know the identities of any third party non-employees, other than the named Defendants, who may have violated Plaintiff's HIPAA rights and sexually harassed her by publishing female sex specific images.

91)    FOSTER's sex investigation, can be seen as a furthering of an action dating back 11 years when all FOSTER was concerned about was a lawsuit from Plaintiff regarding her being sexually assaulted.  Plaintiff does not recall consulting an attorney about that matter.

92)    It may interest the Court that the CELA brief above also states that:

The California Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act of 1964 (Title VII) adopt identical language in barring workplace discrimination.  Under both statutes, an employer may not discriminate against an employee in any "terms, conditions or privileges of employment." Gov't Code Section 12940 [et seq.],     42 U.S.C. § 2000e-2(a) (1)


93)    CELA goes on to state, when comparing California and Federal law:

Because the two schemes rely upon identical language, the court should interpret the scope of prohibited conduct consistently. Accordingly, the phrase "terms, conditions and privileges of employment" should mean the same thing under FEHA as it means under Title VII. *Mixon v. FEHC*, 192 Cal.App.3d 1306, 1316-1317 (1987) (California courts rely upon federal discrimination law to interpret analogous provisions under state law)

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08
for Remand to California Superior Court,
San Mateo County**
- 24 -

Whether the underlying harassment stems from race, religion, sex or other protected characteristic, federal courts recognize that workers experiencing severe and pervasive harassment are subject to different "terms, conditions and privileges of employment" from others not experiencing the same sort of workplace hostility. (citations)

**California also regards "harassment" to be a form of discrimination,** *Murillo v. Rite Stuff Foods, Inc.,* 65 Cal.App.4th 833, 848 (1998) ("once discriminatory conduct in the form of sexual harassment meets this requirement, the wrong and the injuries occasioned by it are complete..."). **Moreover, California goes beyond federal law in specifically prohibiting "harassment" separate and apart from prohibiting "discrimination."** Gov't Code § 12940(j)

In enacting Government Code Section 12940(j), however, the [California] Legislature did not **create** liability for harassment in this State. Indeed, the Legislature expressly stated that this FEHA amendment was "declaratory of... existing law,...Fisher v. San Pedro Peninsula Hosp., 214 Cal.App.3d 590, 605-606 (1989) (sexual harassment implicates FEHA Sections 12940(a), (f), (i) and (j)), as they existed at that time).

94)    Instantly most employer affirmative defenses, as FOSTER well knew from her past work experiences as a supervisory professional, fall under *Lappin v. Laidlaw Transit, Inc.,*179 F. Supp.2d 1111 (N.D.Cal. 2001):

in which the employer had a sexual harassment policy and complaint procedure, but plaintiff reported [only] one physical fight or altercation between herself and one alleged harasser and never represented that the incident was sexual in nature. The employer immediately initiated an investigation that involved interviews of all witnesses and a meeting between all the parties, after which it issued a warning to the alleged harassers. The court concluded that the employer could not be liable for harassment based on what plaintiff reported and the warning was "an appropriate response under the circumstances"

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

---

**(Proposed) FOURTH AMENDED COMPLAINT (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

*Lapin*, supra, is almost identical to what both Plaintiff and Defendant FOSTER experienced in the aftermath of her sexual assault at Delma Pacifica where FOSTER was one of the Administrators, 11 years ago and when FOSTER best covered that respective medical facility's liability. See: Harassment in the Workplace - Employment Roundtable October 16, 2003, By Stacey Mark Page 12 of 19, (c) Ater Wynne LLP 2003.

95)    Instantly, the usual affirmative defenses available for Supervisor Sexual Harassment and/or third party sexual harassment are not available as they are only embodied in the principle that **an employer can avoid liability in situations where it acts promptly to remedy harassment**.

96)    Instantly, Plaintiff did not know at the time the harassment that *it was sexual* in nature (as it was not as overt as was the Delma Pacifica doctor touching her breast..)    It was only after July 13, 2007, when plaintiff and her counsel met with the State of California DFEH office Consultant, explaining in detail her fact pattern above, and the odd patterns of behavior of FOSTER, including sitting emotionless, as Plaintiff came to her office crying, asking what "*she needed to do make everything right at work*" [paraphrase.]  The Consultant, a JD as well as a PhD, explained that the three events: 1) ultra sound of her female sexual organ published, 2 ) investigation into her sex life by FOSTER and 3) and image of her womb  published sometime between August 28, 2006 and mid December, 2006–were *all issues involving female genitalia.*

97)    The above was first notice of the sexual nature of the harassment now clearly perceived by Plaintiff as, it is perceived by DFEH.  DFEH issued two separate Right to Sue letters, Exhibits E and F, regarding theses separate Sex Discrimination claims.

98)    Plaintiff, by late August, 2006 and until the end of the autumn, 2006, was only concerned with the health and welfare of her premature baby.  She only realized the "sexual" harassment element of her workplace harassment as compared to workplace "bad behavior", as described in *Singleton*, supra, about ten months after she left MPHS.

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

GOLD & ASSOCIATES

235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

99)   Herein, it was common knowledge about the hospital about the publication of the female sexual organ and her womb, and FOSTER herself conducted the aborted sex investigation. The employer had constant knowledge of the events and may have wished not to report them as one of the individuals responsible for the publication may have also been responsible for a diabetic patient's demise at MPHS.   Regardless, FOSTER took no immediate remedial action, and in fact, by her own actions only encouraged by her example, others to commit actions of sexual harassment (leading to HIPAA violations) which, Plaintiff now sees as workplace and likely pre & post-termination "hazing" given FOSTER's, CHRISTENSEN's and MPHS anger at Plaintiff, as described in *Singleton*, supra, above.

100)   Regarding harassment, plaintiff must first prove the employer knew *or should have known of the* [co-worker] *harassment and failed to take prompt corrective action*.   Given the electronic coding at MPHS, it is systemically a pre-determined knowledge.   In cases of supervisor harassment, "it is the employer [that] bears the burden of proof.   Consequently, regardless of whether the alleged harasser is a supervisor or a co-worker, the best way to avoid liability is take prompt and effective remedial action.   Harassment in the Workplace - Employment Roundtable October 16, 2003, By Stacey Mark Page 12 of 19, © Ater Wynne LLP 2003.

## FIFTH CAUSE OF ACTION

### (FALSE LIGHT)

### (All Defendants)

101)   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 102 of this Complaint as though fully set forth herein.

102)   On or about, February 11, 2006, about nine days after she miscarried their child, while on break during her graveyard night shift, Plaintiff was visited at work by her boyfriend.

---

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08
for Remand to California Superior Court,
San Mateo County**

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

Plaintiff and her boyfriend were sitting in the cab of his truck in the hospital's dark, secluded parking lot, socializing and eating a very late dinner.

103)  Plaintiff alleges that she and her boyfriend had been *peeped* at inside *his* truck by a Samoan American MPHS Security Guard who did not get so close as they could see him from the inside of said truck's front "cab".   Said guard, perhaps with a cell phone camera, or perhaps through the lens of his mind, informed FOSTER that Plaintiff was having *sex on her break*.

104)  In February, 2006, FOSTER telephoned Plaintiff and placed her on administrative leave.  No reason was given to Plaintiff, but many co-workers from doctors to RN's told her that FOSTER was asking questions about Plaintiff's sex life outside the job, at the workplace.

105)  Later that same day, RN Linda C. telephoned Plaintiff and informed Plaintiff that that Security Guard was peeped into the truck cab where Plaintiff and her boyfriend were eating and getting over the miscarriage of their baby.   RN Linda said that the Guard had either said or shown something to FOSTER which she had interpreted as heterosexual interaction (occurring on Plaintiff's own time.)

106)  FOSTER, then spent nearly two weeks requesting from Plaintiff's MPHS co-workers hearsay/gossip on her personal *off work* activities of a sexual nature from both subordinates and doctors at the hospital.  Many people were offended by FOSTER's questions and actions.   These questions, embarrassing to any reasonable prudent person; led to the hazing atmosphere amongst the "graveyard shift" RN's and administrative staff towards Plaintiff's and the publication of her amniocentesis in late summer/autumn 2006, as well as Plaintiff's abrupt termination when it was realized that as the co-workers [not split apart in different shifts] could not be controlled.

107)  The *incident report* regarding the parking lot peeping has never been produced.

//

**(Proposed) FOURTH AMENDED COMPLAINT (edited for errors since 2-29-08 on 03-03-08
for Remand to California Superior Court,
San Mateo County**
- 28 -

108) Plaintiff, publicly humiliated and placed in a false light by overt acts and acts of omission by all Defendants; including the of questioning of numerous doctors and other staff by FOSTER as if she was on single minded "mission" attempting to diminish respect for Plaintiff as a human being, and force this HIPAA *victim* to quit and leave northern California before HHS had to be notified of her records being published, See Exhibit I. Resultant of this wanton and reckless and frivolous attitude of MPHS's supervisory personnel towards Plaintiff was the creation of the allowed hazing atmosphere at MPHS similar to what was described in *Singleton*, supra.

109) After Plaintiff's employment by Defendants was terminated, Plaintiff had been offered nursing employment at Kaiser Permanente in South San Francisco, but the employment offer was rescinded on September 15, 2006, *after* Kaiser had telephoned MPHS and received a negative employment reference from MPHS. This was long before either Sutter Risk Services Counsel or outside counsel entered the matter and contacted Plaintiff's counsel. Plaintiff alleges that either FOSTER or CHIRSTENSEN, or both, were responsible for several job offers being wrongly rescinded and limiting Plaintiff's continuous effort to mitigate her damages.

110) On March 1, 2006 and September 7, 2006 FOSTER made allegations that Plaintiff was not a competent nurse, yet FOSTER assigned Plaintiff as a Preceptor (supervisory capacity) and/or Charge Nurse during the pay periods April 9-April 22, 2006, May 7-May 20, 2006, May 21-June 3, 2006, June 4-June 17, 2006, June 18-July 1, 2006, July 2-July 15, 2006, July 16-July 29, 2006, August 13-August 26, 2006, and August 27-September 9, 2006. Plaintiff never received California Nursing and/or Medical Board *certification to be a* Charge Nurse.

111) After Plaintiff's employment by Defendants was terminated, Plaintiff was offered R.N. positions in San Francisco, and at other Bay Area hospitals or medical facilities, but the employment offers, as before, were almost always rescinded after the prospective employers telephoned Defendants and received negative employment references. It is believed all callers regarding Plaintiff were referred to CHRISTENSEN or FOSTER.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

112) Only two out of nearly ten job offers were extended after calls to MPHS. Of the two, one ended when there were not enough shifts *after her baby was born*, and the other was where she was laid off due to scheduling issues regarding graveyard night time shift "*daycare*" for her premature infant, as her position was to care for terminally ill babies. It had a poor psychological effect on Plaintiff, who loves her child, and does not want to imagine her child in the same position. This Law school *Palsgraf* et al scenario adds to Plaintiff's damages.

113) As a direct and proximate result of the continuing false light began on or about February 24, 2006, Plaintiff has suffered *a future* wage loss due to the damages regarding her professional reputation in an amount to be proved at trial.

114) As a direct and proximate result of the false negative employment references, Plaintiff continues to suffer wage loss in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF CIVIL CODE SECTION 56 et seq., CALIFORNIA'S

### CONFIDENTIALITY OF MEDICAL INFORMATION ACT

### (As To Defendants Sutter Health and MPHS only)

115) Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 116 of this Complaint as though fully set forth herein.

116) Defendants ratified, permitted, and/or did not stop their employees from accessing Plaintiff's medical records without her consent, and displaying Plaintiff's ultrasound picture of her female sexual organ, on an overhead ER Screen and later, her womb on computer monitors to be viewed by staff, patients, and potentially the general public. Said ultrasound pictures and of her womb were likely displayed with Plaintiff's name and other identifying personal information given standard hospital procedure in California.

**(Proposed) FOURTH AMENDED COMPLAINT (edited for errors since 2-29-08 on 03-03-08
for Remand to California Superior Court,
San Mateo County**
- 30 -

117) Defendants also ratified, permitted, and/or did not stop their employees from accessing Plaintiff's medical records (without Plaintiff's consent) to find out her room in the maternity ward when she was hospitalized in MPHS—and no longer an employee of MPHS. She had no desire to be visited by Paula L. or PENNY HUTCHINGS after her child's birth.

118) Defendants and their employees, through the above stated acts, violated the Confidentiality of Medical Information Act. See California Civil Code §§ 56-56.16.

### SEVENTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSTITUTION)

### (All Defendants)

119) Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 120 of this Complaint as though fully set forth herein.

120) Sex discrimination is prohibited within Article 1, Section 8 of the California Constitution. Section 8 embodies California's public policy that (despite the general rule that a contracted employee or an employee at-will can be terminated for no reason or for arbitrary and/or irrational reasons) *an employee cannot be discharged for reasons prohibited by law*, See *Phillips v. St. Mary Reg'l Medical Ctr.*, 96 Cal. App. 4th 218, 116 Cal. Rptr. 2d 770.

121) Plaintiff claims that Defendant terminated her employment in violation of public policy as set forth in the California Constitution, Article I, Section 8, which provides:

A person may not be disqualified from ... pursuing a business, profession, vocation, or employment because of *sex*....

122) Pregnancy discrimination, a cause of action set forth above, is a species of sex discrimination, and is therefore prohibited by Article I, Section 8. Section 8 is the embodiment of the California public policy that (despite the general rule that a contracted employee or an

(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08
for Remand to California Superior Court,
San Mateo County
- 31 -

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

employee at-will can be terminated for no reason or for arbitrary and/or irrational reasons) *an employee cannot be discharged for reasons prohibited by California or Federal law.*

### EIGHTH CAUSE OF ACTION

**THE INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(All Defendants, for Causes of Action 3, 4, 5, [presently] only MPHS and Sutter Health for Causes of Action 9 & 10)**

123)  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 124 of this Complaint as though fully set forth herein.

124)  Plaintiff alleges that Defendants' actions, as pled, were either conducted intentionally or with such grievous wanton and reckless disregard for both her personal rights and public policy to rise to the level of intentional actions.  As a partial, likely, result of Defendants actions she gave birth two months prematurely as well as has suffered serious bouts of depression most likely caused by the then, until employed by MPHS experience, of having such an unlawful employment experience, which included being gossiped about (false light) by her supervisor and co-workers, discriminated and harassed for being a female *by almost entirely other females*, and being discriminated against for being pregnant and accused of actions which either attending doctors have claimed were not her fault and/or used by a medical establishment to avoid blame, such as in the case of patient "Ae".

125)  Plaintiff alleges that Defendants' actions, as pled above, conducted themselves so negligently and with such grievous wanton and reckless disregard for both her personal rights and public policy to rise to the level of infliction of negligent emotional distress.  As a partial, likely, result of Defendants actions she gave birth two months prematurely as well as has suffered serious bouts of depression most likely caused by the negligent violation of Plaintiff's civil rights.

**GOLD & ASSOCIATES**
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

126)  It should be noted that the premature birth of Plaintiff's daughter ***did not cause any physical injury to Plaintiff***. The injury to the baby is still be to be yet determined.

### NINTH CAUSE OF ACTION

### RETALIATION REGARDING POST- TERMINATION REFERENCES

**(In violation of Labor Code Section 1050, from 8/31/06 through 08/07 regarding Post-Termination references to prospective employers)**

127)  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 128 of this Complaint as though fully set forth herein.

128)  Plaintiff alleges that Defendants' Post-Termination employment references violate California Labor Code Section 1050, see Exhibit O.

129)  Plaintiff alleges that post termination acts, such as name calling while she was recovering from the premature birth of her daughter (who was in an incubator), unwanted visits from Paula L. and Penny Hutchings, after which both Plaintiff and parents, noticed a change of attitude from the Maternity Ward nurses towards Plaintiff.  If the "name calling" were true, then MPHS would be guilty of violating California law.

130)  Plaintiff's possibly post termination publication of her womb (if post termination) as a retaliatory act by co-workers given the atmosphere allowed to be created by MPHS as described in *Singleton*, ibid.

131) CHRISTENSEN violating her own knowledge as a *Labor Expert*, and sending post termination information not through the US Mail, as allowed under California law, but by a Federal Express Deliveryman with useless checks that did not denominate yearly periods of employment, and needed to be lawfully corrected, Plaintiff still received a 2007 W-2, instead of the corrected 2005 and 2006 -2's as required by IRS code and as requested to Defense Counsel.  It is alleged this harassment, and CHRISTENSEN's false statement in her letter to Plaintiff,

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

- 33 -

regarding "your counsel", see Exhibit P, were acts to both intimidate Plaintiff (which succeeded) and a vain hope of turning her non physical injury DFEH discrimination/California Constitution/Negligent Misrepresentation claims into a Worker's Compensation Claim.

132) CHRISTENSEN again violating her own knowledge as a Labor Expert, allowed confidential information, which included Plaintiff's home address, telephone number, social security number, names of her doctors and her former MPHS insurance code as unnecessary exhibits to her declaration in the instant matter which she knew to be published. The act of leaving MPHS un-redacted is a HIPAA violation alone, separate from any actions to correct the error by her outside counsel.

133) The above act alone displays either an intentional infliction of emotional distress and/or a gross wanton and reckless disregard for the possible outcome of such actions, as occurred to the murdered actress, by a DMV address provided stalker, Rebecca Schaeffer, in the 1980s

134) It should be noted that sending the Federal Express Deliveryman to Plaintiff occurred within weeks of CHRISTENSEN having to sign a waiver of conflicts to allow counsel to represent both her and her employer, and she was named as a Defendant when the First Amended Complaint was filed on July 31, 2007. Although her letter is dated August 24, 2007, she waited until what she thought was a year and a day after Plaintiff last worked, on August 28, 2006—but not terminated until nearly ten/eleven days later.

## TENTH CAUSE OF ACTION

### REQUEST FOR ATTORNEYS FEES

135) Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 136 of this Complaint as though fully set forth herein.

136) The most modern test for not granting attorneys' fees is *Sharp v. Avco Financial Services, Inc.*, 2002, (Not Officially Published) WL 1376089, California Ct. App. June 25, 2002: (Herein mere social invitations did not equate to sexual harassment. It is necessary that the

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

Plaintiff prove that the reasons for termination were "pre-textual" [a term of art defense counsel objected to in their Motion to Dismiss, when Plaintiff innocently used said term in the earlier *pre-termination retaliation* claim.  (see Sexual Harassment in the Workplace, Alba Conte, Third Edition 2008-1 Cumulative Supplement, Section 12.06 [B], pages 595-598.  Instantly, Plaintiff in Causes of Action Three through Seven has established that Defendants had many motives to dismiss Plaintiff—none of which related to her job performance.  When Defendant FOSTER, six months past the termination had an opportunity to bring evidence, witnesses (even on telephone standby as did Plaintiff) she only had copies of E-mails from parties with less than neutral motives: Penny Hutchings, the absentee Charge Nurse Paula L., Dr. B. who may have misdiagnosed a patient from a poor intake/assessment; and several RN's all of whom have their own agenda.

137)  While this case may appear as a "whodunit", in *the Plaintiff, was terminated*,  in the ER *with misdated, non letterhead termination letter*, BUT NOT BECAUSE SHE DID SOMETHING WRONG.  Plaintiff either was right to unknowingly chart MPHS violations, or to do as the respective doctors told her, or simply, as she worked the most unwanted shifts—for a nurse with no seniority, earning  the highest hourly pay, for her 36 hours  for a junior RN (four 12 hour shifts are the equivalent of a 40 hour work week) which likely made the auditors unhappy.

138)  When someone panicked between September 5, 2006 and September 7, 2006, Plaintiff was the scapegoat to be dismissed.  There are many reasons, which could be why Plaintiff was needed to be seen fired, but not upon the pretexts as explained at the March 1, 2007, EDD hearing of what happened on August 28, 2006 when medication was administered, ordered by a MD, and with the Charge Nurse, who had originally been in charge of that patient room, absent.; not the pretext of the episode with patient "Ae".  Charge Nurse Paula L left an ER with a dying elderly patient (who only had her Filipino care-giver present and who died later that morning) without a Charge Nurse for three and half hours before 8AM.  A Charge Nurse from a different department had to be brought in from a different department for the next shift which Plaintiff was

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court,**
**San Mateo County**

scheduled and allegedly Paula L. was schedules. (This issue can easily be resolved available payroll records and time cards during discovery as well as the deposition of the bald, middle aged Nursing Supervisor who has been witnessed co-mingling with FOSTER at "BJ's".

139) In *Avco*, ibid. the Court stated: that [paraphrase] the reasons for termination must be pre-textual, and the frivolous nature of the lawsuit (herein a frivolous defense, see Defendant's Motion to Dismiss. Early letters from Sutter Counsel from the Spring, 2007 which they marked "Confidential under Evidence Code Section 1152" without a prior agreement from Plaintiff, may also need to be established by the trial Court as whether or not they can be used as part of the foundation for the granting of attorneys fees as they can be seen as misleading and lacking in any effort to Meet and Confer prior to litigation and therefore justify the award of attorneys fees. The creation of a hostile work environment and the non-frivolous nature of the lawsuit (the opposite of what most published legal Scholars recommend—which will be presented as evidence at trial: *Never invade the personal life of an employee outside the workplace; if there is a CBA, always go through with the grievance procedure*". Although first published nearly 12 years ago, still good advice.

140) Quoting Alba Conte, Sexual Harassment in the Workplace, ibid, page 590, discussing *Lappin v. Laidlaw Transit inc.*, 179 F. Supp. 2d 1111 (N. D. Cal 2001): [paraphrase] to be awarded attorneys fees under a violation of the California Constitution and/or the intentional infliction of emotional distress, a party must first establish a prima facie case of sex discrimination. Unlike Lappin, supra, there is no physical injury present in the instant matter (nor medical bills.) However, Conte writes: "Vicarious liability may be imposed on an employer when the employer engaged in '*positive misconduct*," including ratification of the tortuous conduct of the employee"[here FOSTER, CHRISTENSEN, likely Paula L. and Dr. B., and whomever used their access codes to publish Plaintiff's confidential medical images in 2006 or afterwards.

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**(Proposed) FOURTH AMENDED COMPLAIN (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**

141) Plaintiff does not claim that she reached the level of depression and/or emotional distress due to any one single act of Defendant, but as explained above, both during her employment, and in her post termination life, whether as a patient giving birth, or as a private citizen, Plaintiff was hounded by the acts as described above—including not being allowed to go return to her chosen profession, an ER nurse.

142) Foundation for attorneys fees under California Government Code Sec. 12965 et. seq. and Cal. Civ. Code Sec. 56 et seq. will solidify as Plaintiff and her witnesses testify, and as named Defendants and other the MPHS employees, present and past, including those named above, as with FOSTER at the EDD Appeals hearing are just seen with distrust.  Plaintiff estimates her attorneys fees as of March 1, 2008 to be approximately $57,450.00, not including the $12,800.00 requested for the costs of the petition for Remand and (then anticipated costs given defense counsel's litigious history to date.)

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as follows:

**ON THE FIRST AND SECOND CAUSE OF ACTION NEGLIGENT MISPRESENTATION AND BREACH OF ORAL CONTRACT:**

    a.    $55,000.00, plus attorneys' fees;

**ON THE THIRD CAUSE OF ACTION (PREGNANCY DISCRIMINATION):**

    a.    $470,000.00 in special damages);

    b.    $940,000.00 in general damages;

**ON THE FOURTH CAUSE OF ACTION (SEXUAL HARASSMENT AT THE WORKPLACE and CALIFORNIA CIVIL CODE SECTION 56 et seq. VIOLATIONS):**

    a.    $470,000.00 in special damages;

    b.    $235,000.00 in general damages;

**ON THE FIFTH (FALSE LIGHT) CAUSES OF ACTION:**

    a.    Special and/or general damages in an amount to be proved at trial;

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

**AS TO ALL OTHER CAUSES OF ACTION AND NOT EXCLUDING THE ABOVE WHEN APPLICABLE**:

a.    $750,000.00;

b.    Attorneys' fees and costs (as of March 1, 2008 approximately $75,000.00. Estimate until day of trial, after Summary Judgment, Motion to Bifurcate and Motions in Limine, approximately ten depositions (plaintiff, Christensen, Foster, Merwin, Paula L., Brody, Frost, Dr. Ae, Dr. T., Dr. M, RN BJ, and possibly an expert witness regarding the Human Resources Procedure in California, an another regarding the medical procedure performed on patient Ae on August 28, 2006—to determine if procedure was necessary and rule out a "pre-textural" reason for Plaintiff's termination [after trial Judge has reviewed in camera Ae's medical record to be released redacted for expert review.) estimated to be at this time $150,000.00 plus costs and fees;

c.    All other costs of suit incurred herein;

d.    Exemplary damages based upon gross, wanton and reckless behavior as to be proven at trial (to be based on the gross value of the assets of Defendants MPHS and Sutter Health (including its For Profit Pharmacy chain, its commercial real estate "swallowed" endowments.) and

e.    Such other and further relief as the Court may deem proper.


**JURY TRIAL DEMANDED**

Plaintiff demands jury trial.

Respectfully submitted,

Dated: February 29, 2008                    _____/s/_____

Robert H. Gold, Esq.
Attorney for Plaintiff

GOLD & ASSOCIATES
235 MONTGOMERY STREET, SUITE 747
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 354-5400
FACSIMILE: (415) 354-5405

---

**(Proposed) FOURTH AMENDED COMPLAINT (edited for errors since 2-29-08 on 03-03-08 for Remand to California Superior Court, San Mateo County**